

**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

# Florida Family Automobile Insurance Policy

GEICO Casualty Company

# YOUR POLICY INDEX

Page                                                                                    Page

**SECTION I - LIABILITY COVERAGES**    4
**Your Protection Against Claims From Others**

Definitions
Losses We Will Pay For You
Duty to Defend
Additional Payments We Will Make Under
  The Liability Coverages
Exclusions
Persons Insured: Who Is Covered
Financial Responsibility Laws
Out of State Coverage
Limits Of Liability
Other Insurance
Conditions
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II: PART I - PERSONAL INJURY**    9
**PROTECTION AND PART V - AUTOMOBILE**
**MEDICAL PAYMENTS**
**Personal Injury Protection (Part I)**
Definitions
Payments We Will Make
Exclusions
Limits Of Liability; Application Of Deductible;
  Other Insurance
Policy Period-Territory
Conditions
    Notice; Action Against The Company; Proof Of
    Claim And Medical Reports; Independent Medical
    Examinations; Payment Of Claim Withheld;
    Examination Under Oath; Reimbursement And
    Subrogation; Special Provision For Rented Or
    Leased Vehicles; Reasonable Belief Of Fraud;
    Nonreimbursible Claims; Additional Conditions
**Additional Personal Injury Protection (Part II)**
**Modification Of Policy Coverages (Part III)**
**Provisional Premium (Part IV)**
**Automobile Medical Payments Coverage**
**(Part V)**

**SECTION III – PHYSICAL DAMAGE COVERAGES**    20
**Your Protection For Loss Or Damage To Your**
**Car**

Definitions
**PART I – COMPREHENSIVE AND COLLISION**
Losses We Will Pay
    Comprehensive(Excluding Collision)
    Collision
Additional Payments We Will Make Under The
  Physical Damage Coverage
Exclusions: Section III - Part I Does Not Apply
Limit Of Liability
Other Insurance

Conditions
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
**PART II - EMERGENCY ROAD SERVICE**
Losses We Will Pay
Exclusions
Obtaining Service
Continuation of Coverage
**PART III - RENTAL REIMBURSEMENT**
**PART IV - MECHANICAL BREAKDOWN**
Mechanical Breakdown Insurance
Definitions
Exclusions
Other Insurance
Conditions
Automatic Termination

**SECTION IV - UNINSURED MOTORIST COVERAGE**    28
**Protection For You And Your Passengers For**
**Injuries Caused By Uninsured And Hit-And-Run**
**Motorist**
**PART I - UNINSURED MOTORIST COVERAGE**
**STACKED**
Definitions
Losses We Pay
Exclusions
Limits of Liability
Other Insurance
Disputes Between Us and an Insured
Trust Agreement
Conditions
    Notice
    Assistance and Cooperation of the Insured
    Proof of Claim
    Action Against Us
    Payment of Loss
**PART II - UNINSURED MOTORIST COVERAGE**
**NON-STACKED**
Definitions
Losses We Pay
Exclusions
Limits of Liability
Other Insurance
Disputes Between Us and an Insured
Trust Agreement
Conditions
    Notice
    Assistance and Cooperation of the Insured
    Proof of Claim
    Action Against Us
    Payment of Loss

Page

**SECTION V - GENERAL CONDITIONS**       35
**The Conditions Apply To All Coverages In This Policy**
Definitions
Territory - Policy Period
Premium
Payment
Changes
Assignment
Cancellation By The Insured
Cancellation By Us
Cancellation By Us Is Limited
Renewal
Non Renewal
Mediation Of Claims
Other Insurance
Action Against Us
Dividend Provision
Declarations
Fraud and Misrepresentation
Examination Under Oath
Terms Of Policy Conformed To Statutes
Choice of Law
Disposal Of Vehicle
Joint and Individual Interest
Claims Adjustment Tools and Technology
**SECTION VI - AMENDMENTS AND**          38
**ENDORSEMENTS**
Special Endorsement
United States Government Employees

### AGREEMENT

**We, the Company named in the Declarations Page attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the Declarations Page attached to this policy and if *you* pay *your* premium when due, we will do the following:**

---

### SECTION I - LIABILITY COVERAGES

**Bodily Injury Liability And Property Damage Liability**
**Your Protection Against Claims From Others**

---

#### DEFINITIONS

The words bolded and italicized in Section I of this policy are defined below.

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness. However, bodily injury does not include the transmission of, or threat of transmission of, a communicable disease or sickness.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
   However, a ***farm auto*** does not include:
   a. step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
   b. a golf cart;
   c. a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;
   d. a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle; or
   e. an all-terrain vehicle (ATV) designed for off-road use.

4. ***Insured*** means a person or organization described under **PERSONS INSURED**.

5. ***Non-owned auto*** means a ***private passenger auto***, ***farm auto***, ***utility auto*** or ***trailer*** not owned by, furnished or available for regular use of either ***you*** or ***your relative***, other than a ***temporary substitute auto***. ***You*** or ***your relative*** must be using the ***non-owned auto*** or ***trailer*** with the permission of, or reasonably believed to be with the express or implied permission of, the owner. A ***private passenger auto***, ***farm auto***, ***utility auto*** or ***trailer*** rented or leased for more than 30 days, including the same vehicle or other vehicles consecutively rented or leased for more than 30 days, will be considered as furnished or available for regular use. Two or more ***private passenger autos***, ***farm autos***, ***utility autos*** or ***trailers*** consecutively rented or leased, one after the other, for more than 30 consecutive days will be considered as furnished for regular use.

6. ***Owned auto*** means:
   a. A vehicle described in this policy for which a premium charge is shown for these coverages;
   b. A ***trailer*** owned by ***you***;
   c. A ***private passenger auto***, ***farm auto*** or ***utility auto***, ownership of which ***you*** acquire during the policy period or for which ***you*** enter into a lease during the policy period for a term of six months or more, if
      i. It replaces an ***owned auto*** as defined in a. above; or
      ii. We insure all ***private passenger autos***, ***farm autos*** and ***utility autos*** owned by ***you*** on the date of the acquisition, and ***you*** ask us to add it to the policy no more than 30 days later. If ***you*** ask us to insure it more than 30 days after ***you*** become the owner, any coverage we provide will begin at the time and date ***you*** request coverage;
   d. A ***temporary substitute auto***.

7. ***Peer-to-peer vehicle sharing*** means the authorized use of a motor vehicle by an individual other than the vehicle's owner through a ***peer-to-peer vehicle sharing program***.

8. ***Peer-to-peer vehicle sharing program*** means a business platform that enables ***peer-to-peer vehicle sharing*** by connecting motor vehicle owners with drivers for financial consideration.

9. ***Peer-to-peer vehicle sharing program agreement*** means the terms and conditions established by the ***peer-to-peer vehicle sharing program*** which are applicable to a ***shared vehicle owner*** and a ***shared vehicle driver*** and which govern the use of a ***shared vehicle*** through a ***peer-to-peer vehicle sharing program***.

10. ***Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.
    However, a ***private passenger auto*** does not include:
    a. step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;
    b. a golf cart;
    c. a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;
    d. a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle; or

e.  an all-terrain vehicle (ATV) designed for off-road use.

**11.** ***Property damage*** means physical damage to, destruction of, or loss of use of, tangible property.

**12.** ***Relative*** means a person residing in the same household as ***you***, and related to ***you*** by blood, marriage or adoption, and includes a ward, stepchild, or foster child.

**13.** ***Ride-sharing*** means the use of any vehicle to provide transportation of persons in connection with a ***transportation network company*** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s), including the time the user is on the way to pick up any passenger(s), or is transporting any passenger(s).

**14.** ***Shared vehicle*** means a motor vehicle that is available for sharing through a ***peer-to-peer vehicle sharing program***.

**15.** ***Shared vehicle driver*** means an individual who has been authorized by the ***shared vehicle owner*** to drive the ***shared vehicle*** under the ***peer-to-peer vehicle sharing program agreement***.

**16.** ***Shared vehicle owner*** means the registered owner, or a natural person or an entity designated by the registered owner, of a motor vehicle made available for sharing to ***shared vehicle drivers*** through a ***peer-to-peer vehicle sharing program***.

**17.** ***Temporary substitute auto*** means a ***private passenger auto***, ***farm auto*** or ***utility auto*** or ***trailer***, not owned by ***you*** or ***your relative***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This vehicle will no longer qualify as a ***temporary substitute auto***:

a.  Five (5) days after the ***owned auto*** is deemed by us to be a total loss, and

b.  We pay the applicable limit of liability under Section III.

**18.** ***Trailer*** means a vehicle designed to be towed by a ***private passenger auto***, ***farm auto*** or ***utility auto***. If the vehicle is being used primarily for business or commercial purposes, it is a trailer only while used with a ***private passenger auto***, ***farm auto*** or ***utility auto***. ***Trailer*** also means a farm wagon or farm implement used with a ***farm auto***.

**19.** ***Transportation network company*** means an entity, company or organization facilitating and/or providing transportation services using a computer or digital network, application or platform to connect or match passengers with drivers for compensation or a fee.

**20.** ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
However, a ***utility auto*** does not include:

a.  step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area;

b.  a golf cart;

c.  a motor-driven recreational vehicle designed for off-road use and capable of cross-country travel without the benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain;

d.  a multitrack vehicle, an amphibious machine, or a ground effect air cushion vehicle; or

e.  an all-terrain vehicle (ATV) designed for off-road use.

**21.** ***Vehicle sharing delivery period*** means the period of time during which a ***shared vehicle*** is being delivered to the location of the ***vehicle sharing start time***, if applicable, as documented by the governing ***peer-to-peer vehicle sharing program agreement***.

**22.** ***Vehicle sharing period*** means the period of time that commences either at the ***vehicle sharing delivery period*** or, if there is no ***vehicle sharing delivery period***, at the ***vehicle sharing start time*** and that ends at the ***vehicle sharing termination time***.

**23.** ***Vehicle sharing start time*** means the time when the ***shared vehicle*** is under the control of the ***shared vehicle driver***, which time occurs at or after the time the reservation of the ***shared vehicle*** is scheduled to begin, as documented in the records of a ***peer-to-peer vehicle sharing program***.

**24.** ***Vehicle sharing termination time*** means the earliest of the following events:

a.  The expiration of the agreed-upon period of time established for the use of a ***shared vehicle*** according to the terms of the ***peer-to-peer vehicle sharing program agreement*** if the ***shared vehicle*** is delivered to the location agreed upon in the ***peer-to-peer vehicle sharing program agreement***;

b.  The time the ***shared vehicle*** is returned to a location as alternatively agreed upon by the ***shared vehicle owner*** and ***shared vehicle driver***, as communicated through a ***peer-to-peer vehicle sharing program***, which alternatively agreed-upon location must be incorporated into the ***peer-to-peer vehicle sharing program agreement***; or

c.  The time the ***shared vehicle owner*** takes possession and control of the ***shared vehicle***.

**25.** ***War*** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

26. **You** and **your** means only the individual(s) named in the **Declarations Page** as **Named Insured** and their spouse if a resident of the same household.

**You** and **your** does not include any individual(s) named in the **Declarations Page** as:

a. **Additional Drivers**;

b. **Additional Driver**; or

c. any other individual(s).

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an **insured** becomes legally obligated to pay because of:

1. **Bodily injury**, sustained by a person, and

2. **Property damage**,

arising out of the ownership, maintenance or use of the **owned auto** or a **non-owned auto**.

## DUTY TO DEFEND

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy.

Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. Investigative costs for services we specifically request for an **insured**. We do not pay for fees or costs assessed against an **insured** pursuant to statute, court order, court rule or otherwise.

2. Legal services provided by an attorney we retain to represent an **insured** and any other legal services we retain to represent an **insured**.

3. We only pay post-judgment interest that begins to accrue after the entry of a final judgment against an **insured**, subject to all of the following:

   a. We only pay post-judgment interest on that part of the judgment that is against an **insured** and only for those damages that are covered under this Section;

   b. We only pay post-judgment interest calculated on that part of the judgment against an **insured** that is within the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, we only pay post-judgment interest calculated on that part of the remaining applicable limit of liability under this Section;

   c. We only pay post-judgment interest calculated up until the time we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and

   d. We do not pay post-judgment interest if we have not been given notice of suit or the opportunity to defend the **insured**.

4. We pay the premiums for appeal bonds in a suit we appeal or the premiums for bonds to release attachments, subject to all of the following:

   a. The amount bonded shall not exceed the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, the amount bonded shall not exceed the remaining applicable limit of liability under this Section;

   b. The amount bonded shall only be for those damages that are covered under this Section;

   c. We do not pay premiums for bonds if we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and

   d. We have no duty to apply for or furnish these bonds.

5. We will upon request by an **insured**, provide reimbursement for the following items:

   a. An **insured's** loss of earnings up to $200 a day for each day an **insured** attends hearings and trials at our request.

   b. An **insured's** reasonable expenses for travel, meals and lodging, to attend hearings and trials at our request.

   c. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto**, not to exceed $250 per bail bond. We have no duty to apply for or furnish these bonds.

   d. An **insured's** reasonable costs up to $500 incurred when that **insured** provides and renders first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.

   e. An **insured's** other reasonable costs incurred at our request. This does not include fees or costs assessed against an **insured** pursuant to statute, court order, court rule or otherwise.

## EXCLUSIONS

Section I does not apply to any claim or suit for damage if one or more of the following exclusions listed below applies:

1. We do not cover any **bodily injury** to any **insured** or any member of an **insured's** family residing in the **insured's** household.

   This exclusion does not apply if **you** or **your relative** is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is neither **you** nor **your relative**.

2. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle or **trailer** while being used for:

   a. **ride-sharing**;

   b. carrying persons or property for compensation or a fee; or

   c. retail or wholesale delivery, including but not limited to the pickup, transport or delivery of magazines, newspapers, mail or food.

   However, this exclusion does not apply to ordinary car pools. An ordinary car pool is one where:

   i. An **insured** receives no payment for using a vehicle for a car pool ride; or

   ii. An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

   An ordinary car pool does not include a car pool established, set up or planned through a **transportation network company**.

3. We do not cover any person who intentionally causes **bodily injury** or **property damage**.

4. We do not cover **bodily injury** or **property damage** that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.

5. We do not cover **bodily injury** or **property damage** arising from the operation of farm machinery.

6. We do not cover **bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured**. However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

7. We do not cover **bodily injury** to a fellow employee of an **insured** (other than **you**) injured in the course of their employment if the **bodily injury** arises from the use of an auto in the business of their employer, and if benefits are payable under a workmen's compensation policy.

8. We do not cover an **owned auto** while used by a person (other than **you** or a **relative** or **your** or **your relative's** partner, agent or employee) when they are employed or otherwise engaged in the **auto business**.

9. We do not cover a **non-owned auto** while maintained or used by a person while they are employed or otherwise engaged in any **auto business**.

10. We do not cover damage:

    a. To property owned, transported, or used by an **insured**; or

    b. To property rented to or in the charge of an **insured**. This exclusion 10.b. does not apply to a residence or private garage.

11. We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.

12. We do not cover:

    a. The United States of America or any of its agencies;

    b. Any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

13. We do not cover any liability assumed under any contract or agreement.

14. We do not cover **bodily injury** or **property damage** arising out of:

    a. the **insured's** participation in and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or

    b. the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

15. We do not cover punitive or exemplary damages, regardless of any other provision of this policy.

16. We do not cover damages arising from the ownership, maintenance, use, rental, loading, unloading, entrustment or supervision of any motorized vehicle that is designed for use principally off public roads that is not registered for use on public roads. This exclusion does not apply if the motorized vehicle is listed on the **Declarations Page** of this policy and a premium charge is shown for this coverage.

17. We do not cover **bodily injury** or **property damage** while an **owned auto** is used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** express or implied permission.

**18.** We do not cover *bodily injury* or *property damage*, in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida, while an *owned auto* is leased or rented to others or given in exchange for any compensation.

This exclusion does not apply to *peer-to-peer vehicle sharing* or to a *temporary substitute auto* operated by *you*, a *relative*, or to any other person using the *temporary substitute auto* with *your* express or implied permission.

## PERSONS INSURED

Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

**1.** *You*;

**2.** Any other person using the auto with *your* express or implied permission;

**3.** Any other person or organization for their or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following as *insureds* with regard to a *non-owned auto*:

**1.** *You* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the express or implied permission, of the owner.

**2.** A person or organization, not owning or hiring the auto, regarding their or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the **Declarations Page** are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of compliance with the Florida financial responsibility law for the future, this liability insurance will comply with the provisions of that law.

## OUT OF STATE COVERAGE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase these coverages to the extent required of out-of-state motorists by local, compulsory insurance law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of bodily injury liability stated in the **Declarations Page** as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

**2.** The limit of such liability stated in the **Declarations Page** as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

**3.** The limit of *property damage* liability stated in the **Declarations Page** as applicable to "each occurrence" is the total limit of our liability for all damages because of damage to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

**4.** An auto and attached *trailer* are considered to be one auto.

## OTHER INSURANCE

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

## CONDITIONS

The following conditions apply to Section I:

**1.** NOTICE

As soon as possible after an occurrence, written notice must be given to us or our authorized agent stating:

a. The identity of the *insured*;

b. The time, place and details of the occurrence;

c. The names and addresses of the injured, and of any witnesses; and

d. The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, they must promptly send us each demand, notice, summons or other process received.

**2.** ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

a. In the investigation of the occurrence;

b. In making settlements;

c. In the conduct of suits;

d. In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or *property damage*;

e. At trials and hearings;

f. In securing and giving evidence; and

g. By obtaining the attendance of witnesses, when it is within the *insured's* ability to do so.

Only at their own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**3.** ACTION AGAINST US

No suit may be brought against us:

a. Unless the *insured* has fully complied with all the policy's terms and conditions, and

b. Until the amount of the *insured's* obligation to pay has been finally determined, either:

   i. By a final judgment against the *insured* after actual trial; or

   ii. By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of their estate will not relieve us of our obligations.

**4.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights. This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

a. Hold in trust for us the amount recovered; and

b. Reimburse us to the extent of our payment.

---

**SECTION II: PART I - PERSONAL INJURY PROTECTION AND PART V - AUTOMOBILE MEDICAL PAYMENTS**

**(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations Page for "Medical Payments" coverage)**

---

## PART I - PERSONAL INJURY PROTECTION

### DEFINITIONS

The definitions of terms *non-owned auto, peer-to-peer vehicle sharing*, *peer-to-peer vehicle sharing program*, *peer-to-peer vehicle sharing program agreement*, *shared vehicle*, *shared vehicle driver*, *shared vehicle owner*, *temporary substitute auto, trailer*, *vehicle sharing delivery period*, *vehicle sharing period*, *vehicle sharing start time*, and *vehicle sharing termination time* under Section I apply to Section II also. Under this Section the following special definitions apply:

**1.** *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

**2.** *Disability benefits* means sixty percent (60%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of their household.

**3.** *Emergency medical condition* means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

a. Serious jeopardy to patient health;

b. Serious impairment to bodily functions; or

c. Serious dysfunction of any bodily organ or part.

**4.** *Entity wholly owned* means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under Florida Statutes, chapter 395.

**5.** *Insured* means:

a. *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

b. Any other person while **occupying** the **insured-motor-vehicle** or, while a **pedestrian**, through being struck by the **insured-motor-vehicle**.

6. **Insured-motor-vehicle** means a **motor vehicle**:
   a. Of which **you** are the **owner**, and
   b. With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
   c. For which a premium is charged by us, or which is a **trailer**, other than a mobile home, designed for use with a **motor vehicle**.

7. **Medical benefits** means all reasonable expenses for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to paragraph a. within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only:
   a. For initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, a chiropractic physician licensed under Florida Statutes, chapter 460, or an advanced practice registered nurse registered under Florida Statutes 464.0123 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of Florida Statutes, chapter 401 which provides emergency transportation and treatment.
   b. Upon referral by a provider described in paragraph a., for follow up services and care consistent with the underlying medical diagnosis rendered pursuant to paragraph a. which may be provided, supervised, ordered, or prescribed only by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a chiropractic physician licensed under Florida Statutes, chapter 460, a dentist licensed under Florida Statutes, chapter 466, or an advanced practice registered nurse registered under Florida Statutes 464.0123, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida Statutes, chapter 458 or chapter 459 or an advanced practice registered nurse registered under Florida Statutes, chapter 464.
   c. Follow up services and care may also be provided by any of the following persons or entities:
      1. A hospital or ambulatory surgical center licensed under Florida Statutes, chapter 395.
      2. An **entity wholly owned** by one or more physicians licensed under Florida Statutes, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, chapter 460, advanced practice registered nurses registered under Florida Statutes 464.0123, or dentists licensed under Florida Statutes, chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.
      3. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.
      4. A physical therapist licensed under Florida Statutes, under chapter 486, based upon a referral by a provider described in paragraph b. under **medical benefits**.
      5. A health care clinic licensed under Florida Statutes, part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or
         a. Has a medical director licensed under Florida Statutes, chapter 458, chapter 459, or chapter 460;
         b. Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
         c. Provides at least four of the following medical specialties:
            i. General medicine.
            ii. Radiography.
            iii. Orthopedic medicine.
            iv. Physical medicine.
            v. Physical therapy.
            vi. Physical rehabilitation.
            vii. Prescribing or dispensing outpatient prescription medication.
            viii. Laboratory services.

**Medical benefits** do not include massage as defined in Florida Statutes § 480.033 or acupuncture as defined in Florida Statutes § 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical benefits**.

8. **Medically necessary** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   a. In accordance with generally accepted standards of medical practice;
   b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   c. Not primarily for the convenience of the patient, physician, or other health care provider.

9. **Motor vehicle** means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle. A **motor vehicle** does not include:

    a. Any **motor vehicle** which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the **motor vehicle** and which is owned by a municipality, a transit authority, or a political subdivision of the state; or

    b. A mobile home.

10. **Occupying** means in or upon or entering into or alighting from.

11. **Owner** means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

    a. A debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement, and

    b. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

    c. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

12. **Pedestrian** means a person while not an occupant of any self-propelled vehicle.

13. **Relative** means a person related to **you** by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as **you**.

14. **Ride-sharing** means the use of any vehicle by any person in connection with a **transportation network company** from the time the person logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time the person logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

15. **Service year** means the period from March 1 through the end of February of the following year.

16. **Transportation network company** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

17. **You** and **your** means only the individual(s) named in the **Declarations Page** as **Named Insured** and their spouse if a resident of the same household.

    **You** and **your** does not include any individual(s) named in the **Declarations Page** as:

    a. **Additional Drivers**;

    b. **Additional Driver**; or

    c. any other individual(s).

## PAYMENTS WE WILL MAKE

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of **medical benefits** which are **medically necessary**, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

    1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

    2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

    3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under Florida Statutes, chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

    4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

    5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

    6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

        (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

        (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

        (III.) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the **service year** in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that **service year**, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit. A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid **medical benefits**, we shall repay the full amount of the **medical benefits** to the Medicaid program subject to the **LIMIT OF LIABILITY** .

(B) **Disability benefits**, and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an **insured** as a result of **bodily injury** caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle**.

## EXCLUSIONS

Section II - Part I does not apply:

1. To **you** or any **relative** injured while **occupying** any **motor vehicle** owned by **you** and which is not an **insured-motor-vehicle** under this insurance;

2. To any person while operating the **insured-motor-vehicle** without **your** express or implied consent;

3. To any person, if such person's conduct contributed to their **bodily injury** under any of the following circumstances:
   i.   Causing **bodily injury** to their self intentionally;
   ii.  While committing a felony;

4. To **you** or any dependent **relative** for any loss of gross income and loss of earning capacity from inability to work proximately caused by the injury sustained by the injured person if an entry in the schedule or **Declarations Page** indicates such coverage does not apply;

5. To any **pedestrian**, other than **you** or any **relative**, not a legal resident of the State of Florida;

6. To any person, other than **you**, if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than **you** or any **relative**, who is entitled to personal injury protection benefits from the **owner** or **owners** of a **motor vehicle** which is not an **insured-motor-vehicle** under this insurance or from the **owner's** insurer;

8. To any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

9. To the **bodily injury** of any person while a **motor vehicle** is being used for **ride-sharing**.
   However, this exclusion does not apply to:
   a.  ordinary car pools. An ordinary car pool does not include a car pool established, set up or planned through a **transportation network company**; or
   b.  **you** or a **relative** while a passenger and not operating the vehicle used for **ride-sharing** at the time of loss; or
   c.  a permissive driver, or a **relative**, who is not **occupying** the vehicle being used for **ride-sharing** at the time of loss.

10. While a **motor vehicle** is used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **non-owned auto** or **temporary substitute auto** operated by **you** or a **relative**.

11. To **you** or a **relative** while **occupying** any vehicle, other than an **insured-motor-vehicle**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle.

## LIMIT OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **bodily injury** as the result of any one accident shall be:

1. After the applicable deductible is met and subject to the **PAYMENTS WE WILL MAKE**, a combined total of $10,000 for **medical benefits** and **disability benefits**.
   **Medical benefits** are subject to the following limitations:
   a. Reimbursement for services and care provided in paragraphs a., b. or c. of the definition of **medical benefits** up to $10,000 if a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, a physician assistant licensed under chapter Florida Statutes, chapter 458 or chapter 459, or an advanced practice registered nurse registered under Florida Statutes, chapter 464 has determined that the injured person had an **emergency medical condition**.
   b. Reimbursement for services and care provided in paragraphs a., b. or c. of the definition of **medical benefits** is limited to $2,500 if any provider listed in paragraphs a., b. or c. of the definition of **medical benefits** determines that the injured person did not have an **emergency medical condition**.
2. $5,000 for death benefits.

**APPLICATION OF DEDUCTIBLE**

Pursuant to Florida Statutes § 627.739, the amount of any deductible stated in the **Declarations Page** and applicable to each **insured** must be applied to 100% of all expenses or losses as described in Florida Statutes § 627.736 with respect to all **medical benefits** and **disability benefits** incurred by or on behalf of each person to whom the deductible applies and who sustains **bodily injury** as the result of any one accident. Such deductible will not apply to the death benefit.

**OTHER INSURANCE**

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

**POLICY PERIOD - TERRITORY**

The insurance under this Section applies only to accidents which occur during the policy period:
a. In the State of Florida;
b. As respects **you** or a **relative**, while **occupying** the **insured-motor-vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada;
c. As respects **you** while **occupying** a motor vehicle owned by a **relative**, provided such **relative** is in compliance with Section 627.733, Florida Statutes, outside the State of Florida but within the United States of America, its territories or possessions of Canada; and
d. As respects **pedestrians** injured when struck by the **insured-motor-vehicle** in the State of Florida, if they are not the **owner** of a **motor vehicle** for which coverage is required to be maintained under the Florida No-Fault Law.

**CONDITIONS**

1. NOTICE
   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or their legal representatives shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or their legal representative.
2. ACTION AGAINST THE COMPANY
   As a condition precedent to filing any action for benefits under this coverage, written notice of intent to initiate litigation must be provided to us pursuant to Florida Statutes § 627.736 (10). Such notice may not be sent until the claim is overdue, including any additional time the we have to pay the claim pursuant to Florida Statutes § 627.736 (4)(b). The notice must state that it is a "demand letter under s. 627.736" and state with specificity:
   1. The name of the **insured** upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the **insured**.
   2. The claim number or policy number upon which such claim was originally submitted to us.
   3. To the extent applicable, the name of any medical provider who rendered to an **insured** the treatment, services, accommodations, or supplies that form the basis of such claim; and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A completed form satisfying the requirements of Florida Statutes § 627.736 (5)(d) or the lost-wage statement previously submitted may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and **medically necessary**.

Each required notice must be delivered to us by United States certified or registered mail, return receipt requested. Such postal costs shall be reimbursed by us if requested by the claimant in the notice, when we pay the claim. Such notice must be sent to the person and address specified by us for the purposes of receiving notices under Florida Statutes § 627.736 (10) (c).

If, within 30 days after receipt of notice by us, the overdue claim specified in the notice is paid by us together with applicable interest and a penalty of 10 percent of the overdue amount paid by us, subject to a maximum penalty of $250, no action may be brought against us. If the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, no action may be brought against us if, within 30 days after its receipt of the notice, we mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10 percent, subject to a maximum penalty of $250, when it pays for such future treatment in accordance with the requirements of Florida Statutes § 627.736 (10).

To the extent we determine not to pay any amount demanded, the penalty is not payable in any subsequent action. Payment or our agreement shall be treated as being made on the date a draft or other valid instrument that is equivalent to payment, or our written statement of agreement, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery. We are not obligated to pay any attorney fees if we pay the claim or mail our agreement to pay for future treatment within the time prescribed by section Florida Statutes § 627.736 (10).

The applicable statute of limitation for an action under Florida Statutes § 627.736 shall be tolled for 30 business days by the mailing of the notice required by this Florida Statutes § 627.736 (10).

**3.** PROOF OF CLAIM AND MEDICAL REPORTS

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

**4.** INDEPENDENT MEDICAL EXAMINATIONS

Any person making a claim shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No-Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent personal injury protection benefits. An *insured's* refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable.

**5.** PAYMENT OF CLAIM WITHHELD

Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their *bodily injury*, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**6.** EXAMINATION UNDER OATH (EUO)

If requested by us, an *insured* or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. Compliance with submitting to an EUO is a condition precedent to receiving benefits. If an *insured* or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for personal injury protection benefits.

**7.** REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

a. The Company may be subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

b. The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle. This does not apply to owners or registrants of motor vehicles identified as taxi-cabs as defined in Florida Statutes § 627.733(1)(b).

**8.** SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

**9.** REASONABLE BELIEF OF FRAUD

If we have a reasonable belief that a fraudulent insurance act, for the purposes of Florida Statutes § 626.989 or Florida Statutes § 817.234, has been committed, we shall notify the injured person, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, we have an additional 60 days to conduct our fraud investigation. No later than 90 days after the submission of the claim, we must deny the claim or pay the claim with simple interest. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

**10.** NONREIMBURSIBLE CLAIMS

Claims generated as a result of activities that are unlawful pursuant to Florida Statutes § 817.505 are not reimbursable under the Florida Motor Vehicle No-Fault Law and this policy.

**11.** ADDITIONAL CONDITIONS

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, shall provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

We shall create and maintain for each **insured** a log of personal injury protection benefits paid by us on behalf of the **insured**. If litigation is commenced, we shall provide to the **insured** a copy of the log within 30 days after receiving a request for the log from the **insured**.

In a dispute between us and the **insured**, or between an assignee of the **insured's** rights and us, upon request, we must notify the **insured** or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**PART II - ADDITIONAL PERSONAL INJURY PROTECTION**

**Additional Personal Injury Protection applies only if a premium amount is shown in the Policy Declarations Page for "Additional Personal Injury Protection" coverage. It is an optional coverage to compliment Personal Injury Protection Coverage and does not increase the limit of liability.**

The terms and conditions under **SECTION II: PART I - PERSONAL INJURY PROTECTION** apply to this coverage for **ADDITIONAL PERSONAL INJURY PROTECTION.**

However, the following revisions are made to **SECTION II: PART I - PERSONAL INJURY PROTECTION** :

The definition of **disability benefits** in **SECTION II: PART I - PERSONAL INJURY PROTECTION** is replaced in its entirety as follows:

**2.** **Disability benefits** means eighty-five percent (85%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of their household.

The **PAYMENTS WE WILL MAKE** Section in **SECTION II: PART I - PERSONAL INJURY PROTECTION** is replaced in its entirety with the following:

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) One hundred percent (100%) of **medical benefits** which are **medically necessary**, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.
2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.
3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
   (I) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)
   (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the **service year** in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that **service year**, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid **medical benefits**, we shall repay the full amount of the **medical benefits** to the Medicaid program subject to the **LIMIT OF LIABILITY**.

(B) **Disability benefits**, and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an **insured** as a result of **bodily injury** caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle**.

The following paragraph is added to the **LIMIT OF LIABILITY** in **SECTION II: PART I - PERSONAL INJURY PROTECTION** Section:

We will not pay any benefits for **bodily injury** which the **insured** or anyone else is required to pay because of any elected basic Personal Injury Protection deductible or other payment limitation, or the portion of any loss the **insured** must share under any provision of any basic Florida Personal Injury Protection Coverage.

## PART III - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection **medical benefits** contained in Part I which are otherwise covered but not available for payment due to the limitation of eighty percent (80%) of **medical benefits** contained in Part I but shall not be payable for the amount of the deductible selected.

## PART IV - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), providing for the exemption of persons from tort liability, the premium stated in the **Declarations Page** for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the **Declarations Page**, the **insured** shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART V - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

**(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations Page for "Medical Payments" coverage)**

The **DEFINITIONS** under **SECTION II - PART I** also apply to **SECTION II - PART V**.

## PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay all reasonable **medically necessary medical benefits** incurred within three years from the date of the accident for **bodily injury** caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by **you** or any **relative** while **occupying** a **motor vehicle** or while a **pedestrian** through being struck by a **motor vehicle**.

We will pay, subject to the coverage limit shown in the policy **Declarations Page**:

a.   The portion of any claim for Personal Injury Protection *medical benefits* otherwise covered but not payable due to the coinsurance provision of Personal Injury Protection. This is the twenty percent (20%) of *medical benefits* not covered in **SECTION II: PART I - PAYMENTS WE WILL MAKE** , and

b.   *Medically necessary medical benefits* that exceed the Personal Injury Protection *medical benefits* coverage paid.

Payments we will make pursuant to paragraph b. will be paid pursuant to the following schedule of maximum charges:

1.   For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

2.   For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

3.   For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4.   For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5.   For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6.   For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I.)   The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

   (II.)  Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III.) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the *service year* in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that *service year*, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

## EXCLUSIONS

Automobile Medical Payments coverage does not apply:

**1.**   To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* or a *relative* and which is not an *insured-motor-vehicle* under this insurance;

**2.**   To any person while operating the *insured-motor-vehicle* without *your* express or implied consent;

**3.**   To any person, if such person's conduct contributed to their *bodily injury* under any of the following circumstances:

   i.    Causing *bodily injury* to their self intentionally;

   ii.   While committing a felony;

**4.**   To any *pedestrian*, other than *you* or any *relative*;

**5.**   To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

**6.**   To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises;

**7.**   To *bodily injury* sustained by *you* or a *relative* that results from war of any kind;

**8.**   To *bodily injury* sustained by *you* or a *relative* that results from exposure to fungi;

**9.**   To *bodily injury* sustained by *you* or a *relative* that results from:

   i.    Nuclear reaction;

   ii.   Radiation or radioactive contamination from any source;

   iii.  The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device.

10. To **bodily injury** sustained by **you** or a **relative** while **occupying** a **motor vehicle**, or while a **pedestrian** through being struck by a **motor vehicle** while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.

11. To **bodily injury** caused by:
   a. a **motor vehicle** driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
   b. the operation or use of a **motor vehicle** on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

12. While a **motor vehicle** is leased or rented to others or given in exchange for any compensation, including while used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **non-owned auto** or **temporary substitute auto** operated by **you** or a **relative**.

13. To **bodily injury** arising out of the ownership, maintenance, or use of a **motor vehicle** while being used for **ride-sharing**.
   This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle. Further, this exclusion will not apply to ordinary carpools. An ordinary car pool is one where;
   i. an **insured** receives no payment for using a vehicle for a car pool ride; or
   ii. an **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and **depreciation** for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

14. To **you** or a **relative** while **occupying** any vehicle, other than an **insured-motor-vehicle**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, vehicles insured for Automobile Medical Payments under this policy, or claims made, the limit of Automobile Medical Payments benefits available under this policy, for all loss and expense incurred by or on behalf of any one **insured** who sustains **bodily injury** as the result of any one accident is the amount listed in the **Declarations Page**.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied **motor vehicle**.

## POLICY PERIOD - TERRITORY

The insurance under this Part applies only to accidents which occur during the policy period:

a. In the State of Florida; and

b. We will cover **you** or any **relative** for injuries incurred while **occupying** a **motor vehicle** or as a **pedestrian** in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

## CONDITIONS

1. NOTICE
   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or their legal representatives shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or their legal representative.

**2.** PROOF OF CLAIM

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

**3.** INDEPENDENT MEDICAL EXAMINATIONS

Any person making a claim shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent Automobile Medical Payment benefits. An *insured's* refusal to submit to, complete or failure to appear at two examinations will be considered unreasonable.

**4.** PAYMENT OF CLAIM WITHHELD

Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their *bodily injury*, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted. We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination.

**5.** EXAMINATION UNDER OATH (EUO)

If requested by us, *you* or a *relative* must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. Compliance with submitting to an EUO is condition precedent to receiving benefits. If *you* or a *relative* refuses to submit to or fails to appear at an EUO, we will not be liable for Automobile Medical Payments coverage.

**6.** ACTION AGAINST THE COMPANY

No suit may be brought against us:

a. Unless the *insured* has fully complied with all the policy's terms and conditions; and

b. Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and

c. Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:

   i. Pay the claim; or

   ii. Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery. The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

a. The name of the *insured* for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

b. The claim number and or policy number upon which the claim was originally submitted; and

c. To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

We will not be liable for interest, attorneys' fees, costs, or any additional penalty.

**7.** SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

---

**SECTION III - PHYSICAL DAMAGE COVERAGES**
**Your Protection For Loss Or Damage To Your Car**

---

**DEFINITIONS**

The definitions of the terms **auto business**, **farm auto**, **non-owned auto**, **peer-to-peer vehicle sharing**, **peer-to-peer vehicle sharing program**, **peer-to-peer vehicle sharing program agreement**, **private passenger auto**, **relative**, **ride-sharing**, **shared vehicle**, **shared vehicle driver**, **shared vehicle owner**, **temporary substitute auto**, **transportation network company**, **utility auto**, **vehicle sharing delivery period**, **vehicle sharing period**, **vehicle sharing start time**, **vehicle sharing termination time**, **you**, **your**, and **war** under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. **Actual cash value** is determined by the market value, age, and condition of the vehicle or property at the time the **loss** occurs.
2. **Betterment** is improvement of the auto or property to a value greater than its pre-loss condition.
3. **Collision** means **loss** caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4. **Comprehensive** means **loss** caused other than by **collision** and includes the following causes:
   a. Missiles;
   b. Falling objects;
   c. Fire;
   d. Lightning;
   e. Theft;
   f. Larceny;
   g. Explosion;
   h. Earthquake;
   i. Windstorm;
   j. Hail;
   k. Water;
   l. Flood;
   m. Malicious mischief;
   n. Vandalism;
   o. Riot;
   p. Civil commotion; or
   q. Colliding with a bird or animal.
5. **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
   a. Are permanently installed or attached; or
   b. Alter the appearance or performance of a vehicle.
   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.
6. **Depreciation** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.
7. **Insured** means:
   a. Regarding the **owned auto**:
      i. **You** and **your relatives**;
      ii. A person or organization maintaining, using or having custody of the auto with **your** express or implied permission.
   b. Regarding a **non-owned auto**, **you** and **your relatives**, when driving the auto, if the actual operation or use is with the permission of, or reasonably believed to be with the express or implied permission of, the owner.
8. **Loss** means direct and accidental loss of or damage to the auto, including its equipment.
9. **Owned auto** means:
   a. Any vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage;
   b. A **private passenger auto**, **farm auto** or **utility auto** or a **trailer**, ownership of which **you** acquire during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more, if
      i. It replaces an **owned auto** as described in a. above, or
      ii. We insure all **private passenger autos**, **farm autos**, and **utility autos** owned by **you** on the date of the acquisition and **you** ask us to add it to the policy no more than 30 days later;
   c. A **temporary substitute auto**.

**10.** *Trailer* means a trailer designed to be towed by a *private passenger auto*, *farm auto* or *utility auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## PART I - COMPREHENSIVE AND COLLISION

Comprehensive Coverage for an *owned auto* involved in the *loss* applies only when a premium is shown on the **Declarations Page** for Comprehensive Coverage for that vehicle.

Comprehensive Coverage for a *non-owned auto* involved in the *loss* applies only when a premium is shown on the **Declarations Page** for Comprehensive Coverage.

Collision Coverage for an *owned auto* involved in the *loss* applies only when a premium is shown on the **Declarations Page** for Collision Coverage for that vehicle.

Collision Coverage for a *non-owned auto* involved in the *loss* applies only when a premium is shown on the **Declarations Page** for Collision Coverage.

With respect to coverage provided by this **PART**, the terms and provisions of the policy apply unless modified by this **PART**.

### LOSSES WE WILL PAY

#### Comprehensive (Excluding Collision)

**1.** We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned auto* or *non-owned auto*. This includes breakage of glass and *loss* caused by:

| | |
|---|---|
| a. Missiles; | j. Windstorm; |
| b. Falling objects; | k. Hail; |
| c. Fire; | l. Water; |
| d. Lightning; | m. Flood; |
| e. Theft; | n. Malicious mischief; |
| f. Larceny; | o. Vandalism; |
| g. Explosion; | p. Riot; or |
| h. Earthquake; | q. Civil commotion. |
| i. Colliding with a bird or animal; | |

No deductible will apply to *loss* to windshield glass.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

**2.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

#### Collision

**1.** We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible and to the *non-owned auto* for the amount of each *loss* less the applicable deductible when driven by *you* or a *relative*.

**2.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

**1.** We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $30.00 per day nor $900.00 per *loss*.

**2.** We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

### EXCLUSIONS

#### Section III - Part I Does Not Apply:

**1.** To *loss* arising out of the ownership, maintenance, or use of any vehicle or *trailer* while:

  a. being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

  b. being used for *ride-sharing*.

  However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

  i. An *insured* receives no payment for using a vehicle for a car pool ride; or

  ii. An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and *depreciation* for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

  An ordinary car pool does not include a car pool established, set up or planned through a *transportation network company*.

**2.** To *loss* due to *war*.

**3.** To *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. To *loss* caused by and limited to wear and tear, freezing, mechanical, electrical, or electronic breakdown or failure, unless that damage results from a covered theft.
5. To road damage to tires.
6. To *loss* due to radioactivity.
7. To *loss* to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions
8. To *loss* for **custom parts or equipment**, in excess of $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.
9. To any liability assumed under any contract or agreement.
10. To any *loss* resulting from:
   a. The acquisition of a stolen vehicle;
   b. Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
   c. Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
   d. The sale of an **owned auto**.
11. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a **relative** or a permissive user of the vehicle in illegal activity.
12. To any *loss* arising out of:
   a. any **insured's** participation in and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
      Stunting activity means driving a motor vehicle with an intention to:
      a. Lift some or all of its tires from the surface of the ground;
      b. Cause some or all of its tires to lose traction with the surface of the ground;
      c. Spin the motor vehicle; or
      d. Engage in mud bogging, also known as mud racing, mud running, mud drags, or mudding; or
   b. the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
13. To *loss* arising from the ownership, maintenance, use, rental, loading, unloading, entrustment or supervision of any motorized vehicle that is designed for use principally off public roads that is not registered for use on public roads. This exclusion does not apply if the motorized vehicle is listed on the **Declarations Page** of this policy and a premium charge is shown for this coverage.
14. To *loss* to an **owned auto** while an **owned auto** is leased or rented to others or given in exchange for any compensation, including while used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**.
   This exclusion does not apply to a **temporary substitute auto** operated by *you*, a **relative**, or to any other person using the **temporary substitute auto** with *your* express or implied permission.

**LIMIT OF LIABILITY**
The limit of our liability for *loss*:
1. Is the **actual cash value** of the property at the time of the *loss*;
2. Our liability for repair of the damaged property, will not exceed at the time of *loss* the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility, to repair or replace the property, or any of its parts, excluding windshield glass, and including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility.
   At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;
3. To a **trailer** not owned by *you* is $500;
4. If a **non-owned auto**, or **temporary substitute auto**, in operation while leased or rented for a fee, has a Manufacturer Suggested Retail Price above $100,000, the limit of liability for *loss* to the **non-owned auto** or **temporary substitute auto** is the highest of the **actual cash value** of any **owned auto** shown on the **Declarations Page**.

5. For **custom parts or equipment** is limited to the **actual cash value** of the **custom parts or equipment**, not to exceed the **actual cash value** of the vehicle. However, the most we will pay for **loss** to **custom parts or equipment** is $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

6. If this policy covers two or more autos or **trailers** any deductibles will apply separately to each.

7. To damaged windshield glass will not exceed the price determined as follows:

**For Vehicles Requiring only Windshield Repair or Replacements:**

| | |
|---|---|
| **Windshield Glass:** | 50% of the pricing for like kind and quality windshield glass as set forth in the National Auto Glass Specifications on the date the approved windshield installation occurs |
| **Windshield Replacement Labor Rate:** | $40.00 per recommended hour as set forth in the National Auto Glass Specifications on the date the approved windshield installation occurs |
| **High Modulus/Non-Conducive Urethane:** | $20.00 for 1.0 kit<br>$30.00 for 1.5 kits<br>$40.00 for 2.0 kits |
| **All Other Urethanes:** | $15.00 per kit |
| **Molding:** | 80% of the manufacturer list pricing for like kind and quality molding on the date the approved windshield installation occurs |

To windshield glass replacement requiring calibration will not exceed the price as determined as follows:

The only categories of calibration for which **we** will pay and the most **we** will pay for a windshield calibration in connection with a windshield replacement that **we** determine is covered under this policy shall be:

| | |
|---|---|
| **Static Calibration**: | $300.00 |
| **Dynamic Calibration**: | $275.00 |
| **Dual Calibration**: | $440.00 |

**You** or **your** shop of choice must provide proof that the calibration was successfully completed. **We** may require **you** or **your** shop of choice to provide pre- and post-repair diagnostic calibration scans. Any calibration that is not static, dynamic, or dual, and any additional expense for which payment is sought must be approved by us before the calibration is completed.

Any additional fees or charges not outlined in the above **LIMIT OF LIABILITY** for windshield calibration will not be covered under **Section III** of this policy.

| | |
|---|---|
| **For Windshield Repairs:** | $60.00 single payment per windshield |

Any additional fees or charges not outlined in the above **LIMIT of LIABILITY** for windshield replacement or repair will not be covered under **Section III** of this policy.

The price we pay as set forth in this section to repair or replace the damaged windshield with other of like kind and quality includes the use of parts from non-original equipment manufacturers, and will not include compensation for any diminution of value that is claimed to result from the **loss**. Although **you** have the right to choose any windshield repair facility or location, the limit of our liability for repair or replacement of **your** windshield will not exceed the price we pay as set forth within this section. At **your** request, we will identify a repair facility that will perform the repairs or replacement to the damaged windshield for an amount that will not exceed our limit of liability as set forth in this section.

**OTHER INSURANCE**

If the **insured** has other insurance against a **loss** covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

1. NOTICE

As soon as possible after a **loss**, written notice must be given to us or our authorized agent stating:

a. The identity of the **insured**;

b. A description of the auto or **trailer**;

c.  The time, place and details of the *loss*; and

d.  The names and addresses of any witnesses.

In case of theft; the *insured* must promptly notify the police.

In case of theft of the entire vehicle, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle. The *insured* must cooperate fully with the police investigation, with the claim investigation, and with the prosecution of any person(s) charged with theft, and with any civil suit brought by us against the person(s) responsible to recover for the *loss*.

**2.  ASSISTANCE AND COOPERATION OF THE INSURED**

The *insured* will cooperate and assist us, if requested:

a.  In the investigation of the *loss*;

b.  In making settlements;

c.  In the conduct of suits;

d.  In enforcing any right of subrogation against any legally responsible person or organization;

e.  At trials and hearings;

f.  In securing and giving evidence; and

g.  By obtaining the attendance of witnesses, when it is within the *insured's* ability to do so.

**3.  ACTION AGAINST US**

No suit may be brought against us unless the policy terms and all conditions have been fully complied with and until 30 days after proof of *loss* is filed with us.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

**4.  INSURED'S DUTIES IN EVENT OF LOSS**

In the event of *loss* the *insured* will:

a.  Protect the auto. Further *loss* due to the *insured's* unreasonable failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us for *loss* that is covered by this policy.

b.  File with us, within 91 days after *loss*, their sworn proof of *loss* including all information we may reasonably require. In addition, the person making the claim shall give to us written proof of claim which may include full contemplated particulars of the nature and extent of the physical damage, replacement or repair, and calibration, and such other information as may assist us in determining the amount due and payable.

c.  Permit us to inspect and appraise the damaged property, including but not limited to the glass of the *owned auto* or *non-owned auto*, before its repair, replacement and/or disposal. This means we have the right to inspect and appraise the damaged property before its repair, replacement and/or disposal and the *insured* will do nothing after *loss* to prejudice our right to inspect and appraise the damaged property, including but not limited to the glass of the *owned auto* or *non-owned auto*, before its repair, replacement and/or disposal.

d.  If requested by us, submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

**5.  APPRAISAL**

If we and the *insured* do not agree on the amount of *loss*, either may, request an appraisal of the *loss*. Both parties must agree to the appraisal. In that event, within 30 days of the agreement for an appraisal, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay their chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**6.  PAYMENT OF LOSS**

We may at our option:

a.  Pay for the *loss*; or

b.  Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the **Declarations Page** at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**7.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the **loss** of the auto.

**8.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the **insured's** rights of recovery, to the extent of our payment against others. The **insured** will help us enforce these rights. The **insured** will do nothing after **loss** to prejudice these rights.

This means we will have the right to sue for or otherwise recover the **loss** from anyone else who may be held responsible.

## PART II - EMERGENCY ROAD SERVICE

Emergency Road Service Coverage for the vehicle involved applies only when a premium is shown on the **Declarations Page** for Emergency Road Service for that vehicle.

With respect to coverage provided by this **PART**, the terms and provisions of **PART I** and the policy apply unless modified by this **PART**.

**LOSSES WE WILL PAY**

If an **owned auto** or **non-owned auto** becomes disabled, we will determine and pay reasonable and customary expenses an **insured** incurs for the following:

1. Battery jump start or labor to install a new battery purchased at the **insured's** expense, performed where the **owned auto** or **non-owned auto** became disabled;

2. Lockout services up to $100 per lockout if keys to the **owned auto** or **non-owned auto** are lost, broken or accidentally locked in the **owned auto** or **non-owned auto**. Lockout services does not include the cost to repair, replace, or reprogram any lost, stolen or damaged electronic or digital keys, including, but not limited to, key fobs;

3. Towing from where the **owned auto** or **non-owned auto** became disabled, as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person, to either:
   a. the nearest repair facility; or
   b. customer destination of choice
   that is within 15 miles from the location of disablement.

4. Winching the **owned auto** or **non-owned auto** as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;

5. Delivery of gas. WE DO NOT PAY FOR THE COST OF THE GAS;

6. Changing a flat tire with the **insured's** operable spare at the location where the **owned auto** or **non-owned auto** became disabled.

7. Battery Electric Vehicle (BEV) charging at the location of disablement for up to 20 minutes of plugged-in charging. Any additional plugged-in charging time is at the **insured's** expense and paid by the **insured** directly to the road service provider.

## EXCLUSIONS

**When the Emergency Road Service Does Not Apply**

We will not provide Emergency Road Service coverage for:

1. More than one reimbursement per disablement;
2. More than three (3) covered emergencies for any single covered auto during the policy period;
3. The cost of gas, oil, batteries, or tire(s);
4. The delivery of air, inflation of a tire(s), or patching of a tire(s);
5. The costs of replacement keys, or the labor to make replacement keys;
6. Any parts, labor, fluids or other materials or charges necessary for the completion of any repair;
7. Installation of products or material not related to the disablement;
8. Mounting or removing of snow tires or chains;
9. Any repairs, labor or towing not specifically listed under **LOSSES WE WILL PAY** - **Emergency Road Service**;
10. Any vehicle:
    a. driven off established roads;
    b. driven in areas not designed for private passenger automobile traffic;
    c. disabled and/or stuck due to participation in and/or preparation for driving a vehicle through a pit of mud or on a mud track, whether or not prearranged or organized; or
    d. disabled and/or stuck intentionally by any **insured**;
11. Any vehicle arising from impoundment or abandonment;
12. Any vehicle illegally parked or associated with illegal activity;
13. Auto storage charges;
14. Any covered auto while being used in connection with **ride-sharing** activity; or
15. Any covered auto while being used in connection with a **peer-to-peer vehicle sharing program**.
    However, this shall not apply when a covered auto is being used by **you** or a **relative**.

**OBTAINING SERVICE**

*You* may secure service under this coverage for **Emergency Road Service** in the following manner:

**SIGN-AND-DRIVE**

The first method, called sign-and-drive, allows the *insured* to contact GEICO Emergency Road Service via its mobile app or a toll-free number to initiate the dispatch of a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any charges, expenses, or other fees not specifically addressed above in **LOSSES WE WILL PAY**, or lockout services in excess of $100, are not covered and are at the *insured's* own expense.

If we are unable to locate and dispatch a service vendor to an *insured* and the *insured* hires services without the assistance of a GEICO Emergency Road Service representative, we will reimburse an *insured* only as addressed above in **LOSSES WE WILL PAY**.

**HIRED SERVICES**

The second method occurs when the *insured* does not use the sign-and-drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $100 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

**CONTINUATION OF COVERAGE**

Upon each renewal period, we reserve the right to review the continuation of the ERS coverage. Removal of the ERS coverage from the policy is subject to underwriting review process at each renewal. All vehicles listed on the policy with the ERS coverage are subject to this review.

**PART III - RENTAL REIMBURSEMENT**

Rental Reimbursement Coverage for the vehicle involved in the *loss* applies only when a premium is shown on the **Declarations Page** for Rental Reimbursement for that vehicle.

With respect to coverage provided by this **PART**, the terms and provisions of **PART I** and the policy apply unless modified by this **PART**.

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto or substitute transportation. Reimbursement will not exceed the limits described in the **Declarations Page** and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1.  The *owned auto* is withdrawn from use for more than 24 consecutive hours, and the *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy; or
2.  The *owned auto* is withdrawn from normal use overnight and the *loss* to the *owned auto* is covered under the Mechanical Breakdown Insurance coverage when made a part of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1.  This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2.  This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III, Part I of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III, Part I of the policy. In that event, the amount payable under this coverage is the amount by which this coverage exceeds those described in Section III, Part I of the policy; and
3.  Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III, Part I of the policy exceed the daily limit of coverage provided by this coverage.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1.  Returned to *you*;
2.  Repaired;
3.  Replaced; or
4.  Deemed a total loss by us:
    a.  Seventy-two (72) hours after we pay the applicable limit of liability under Section III, Part I; or
    b.  Seventy-two (72) hours after our initial settlement offer;
    whichever comes first.

However, when there is a total theft of an *owned auto*, reimbursement for rental charges shall end the earliest of:

1.  The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to **you** or the owner of the vehicle; or if the vehicle is not recovered,
2.  Seventy-two (72) hours after our initial settlement offer of the **actual cash value** of the **owned auto**.
3.  Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the **insured** must promptly notify the police that the vehicle was stolen. To be eligible as a covered **loss**, the police report must acknowledge and classify the report as theft of a motor vehicle. The **insured** must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the **loss**.

## PART IV - MECHANICAL BREAKDOWN

Mechanical Breakdown Coverage for the vehicle involved applies only when a premium is shown on the **Declarations Page** for Mechanical Breakdown for that vehicle.

With respect to coverage provided by this **PART**, the terms and provisions of **PART I** and the policy apply unless modified by this **PART**.

This coverage is subject to all policy conditions and definitions except as specifically modified below.

The amount of applicable deductible shown in the policy **Declarations Page** shall apply to each **loss** under the Mechanical Breakdown coverage. A $50 deductible shall apply to glass breakage, except windshield glass, without any other damage to the auto.

### Mechanical Breakdown Insurance

We will pay for **loss** caused other than by **collision** or under the comprehensive coverage due to the mechanical breakdown of the **owned auto**. **Losses** from mechanical breakdown shall not be accumulated to reach the deductible. For this coverage to be applicable, repairs may not be undertaken prior to obtaining authorization from us.

### DEFINITIONS

The following special definitions apply with respect to mechanical breakdown only:

**Loss** means all risk of physical damage to the **owned auto** or its equipment.

**Owned auto** means any vehicle described in this policy for which a specific premium charge indicates there is coverage. **Owned auto** does not mean:

    a.  a newly acquired vehicle;
    b.  a replacement vehicle; or
    c.  a **temporary substitute auto**.

**Proper maintenance** is the recommended vehicle maintenance as outlined in the owner's manual provided by the manufacturer.

### EXCLUSIONS

For Mechanical Breakdown coverage, the following exclusion is deleted:

There is no coverage for damages caused by and limited to wear and tear, freezing, mechanical, electrical, or electronic breakdown or failure, unless that damage results from a covered theft.

The following exclusions are added with respect to mechanical breakdown only:

a.  Oxidation and rust damage are not covered.
b.  Damage caused intentionally by **you** or any other person using an **owned auto** with **your** permission is not covered.
c.  **Loss** due to misuse, alteration, or lack of **proper maintenance** is not covered**.**
d.  Tire wear and other damage caused by and limited to wear and tear is not covered.
e.  Routine maintenance services and parts are not covered. This includes; but is not limited to:
    a)  engine tune up;
    b)  suspension alignment;
    c)  wheel balancing;
    d)  filters;
    e)  lubrication;
    f)  engine coolant;
    g)  fluids;
    h)  spark or glow plugs;
    i)  brake pads;
    j)  brake linings; and
    k)  brake shoes.
f.  Any **loss** to the extent covered by warranty, recall or voluntary repair programs is not covered.
g.  Any **loss** to a **non-owned auto** or to a **temporary substitute auto** is not covered.
h.  Any **loss** to a newly acquired or replacement auto is not covered.
i.  Any pre-existing **loss** or damage to any insured auto is not covered.

**OTHER INSURANCE**
For the purposes of this coverage only, if *you* have other insurance against a *loss* covered by mechanical breakdown insurance, this policy will apply as excess insurance over such other valid and collectible insurance.

**CONDITIONS**
For the purposes of this coverage only, the following is added to 1. Notice
e)   the location of the *owned auto*.
The following condition is added:
**AUTOMATIC TERMINATION**
Mechanical Breakdown Insurance will terminate either when the Odometer reading exceeds 100,000 miles or 7 years after the Mechanical Breakdown Insurance is added for the *owned auto*, whichever occurs earlier.

---

**SECTION IV - UNINSURED MOTORIST COVERAGE**
**Protection For You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorist**

---

IF YOU ELECTED NOT TO PURCHASE STACKED OR NON-STACKED UNINSURED/UNDERINSURED MOTORIST COVERAGE THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORIST BENEFITS. IF YOU DO NOT PAY A PREMIUM FOR STACKED OR NON-STACKED UNINSURED/UNDERINSURED MOTORIST COVERAGE, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/ UNDERINSURED MOTORIST.

**PART I - UNINSURED MOTORIST COVERAGE STACKED**
**Uninsured Motorist Coverage Stacked applies only if a premium is shown in the Policy Declarations Page for "Uninsured Motorist/Stacked" coverage. Uninsured/underinsured motorist benefits are designed to provide protection when *you* or *your* family are involved in an accident with an uninsured/underinsured motorist.**
If *you* pay the premium for UNINSURED MOTORIST/STACKED, the following of SECTION IV - PART I of *your* policy applies:
**DEFINITIONS**
The definitions and terms for Section I apply to SECTION IV - PART I, except for the following definitions:
1.   *Hit-and-run vehicle* means a motor vehicle causing *bodily injury* to an *insured* with or without physical contact with them or with a vehicle they are *occupying* at the time of the accident and whose operator or owner cannot be identified; provided the *insured* or someone on their behalf:
   a.   Reports the accident as soon as practicable to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
   b.   Files with us as soon as practicable a statement setting forth the facts of the accident and claiming that they have a cause of action for damages against an unidentified person.
2.   *Insured* means:
   a.   *You*;
   b.   *Your relatives*;
   c.   Any other person while *occupying* an *insured auto*;
   d.   Any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under a., b., and c. above.
   If there is more than one *insured*, our limits of liability will not be increased.
3.   *Insured auto* is an auto:
   a.   Described in the **Declarations Page** and covered by the Bodily Injury Liability coverage of this policy;
   b.   Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   c.   Operated by *you* or *your* spouse if a resident of the same household.
   But the term *insured auto* does not include:
   i.    An *insured auto* when used to carry passengers or goods for hire, except in a car-pool;
   ii.   An auto being used without the owner's permission; or
   iii.  Under subparagraphs b. and c. above, an auto owned by or available for the regular use of an *insured*.
4.   *Occupying* means in, upon, entering into or alighting from.
5.   *Ride-sharing* means the use of any vehicle by any person in connection with a *transportation network company* from the time the person logs on to or signs in to any computer or digital network, application or platform that connects or matches driver(s) with passenger(s) until the time the person logs out of or signs off of any such network, application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

6.  **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

7.  **Uninsured auto** is an auto:

   a.  Which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the **state** in which the **insured auto** is principally garaged at the time of the accident; or

   b.  For which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an **insured**; or

   c.  A **hit-and-run vehicle**.

   d.  This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

   The term **uninsured auto** does not include:

   a.  An **insured auto**;

   b.  A land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or premises; and

   c.  A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

**LOSSES WE PAY**

Under the Uninsured Motorist coverage we will pay damages for **bodily injury** sustained by an **insured** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** arising out of the ownership, maintenance or use of that auto.

**EXCLUSIONS**

Section IV - PART I Does Not Apply:

1.  To **bodily injury** to an **insured** if the **insured** or their legal representative has made a settlement or has been awarded a judgment of their claim without our prior written consent and such settlement prejudices our right to recover.

2.  To **bodily injury** to a person not an **insured**.

3.  To benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

4.  To any damages for pain and suffering that the **insured** may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:

   a.  Significant and permanent loss of an important bodily function;

   b.  Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

   c.  Significant and permanent scarring or disfigurement; or

   d.  Death.

5.  To punitive or exemplary damages, regardless of any other provision of this policy.

6.  To damage caused by the **insured's**:

   a.  participation in and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether prearranged or organized; or

   b.  operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

7.  To the **bodily injury** of any person while any vehicle is being used for **ride-sharing**.

   However, this exclusion does not apply to:

   a.  ordinary car pools. An ordinary car pool does not include a car pool established, set up or planned through a **transportation network company**;

   b.  **you** or a **relative** while a passenger and not operating the motor vehicle being used for **ride-sharing** at the time of loss; or

   c.  a permissive driver, or a **relative**, who is not **occupying** the vehicle being used for **ride-sharing** at the time of loss.

8.  To **bodily injury** while an **owned auto** is used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** express or implied permission.

**LIMITS OF LIABILITY**

The limit of liability for Uninsured Motorist coverage stated in the **Declarations Page** as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as the result of one accident. The limit of liability for Uninsured Motorist coverage stated in the **Declarations Page** as applicable to "each accident" is, subject to the above provision respecting "each person", the total limit of our liability for all damages, including damages for care or loss of services, due to **bodily injury** sustained by two or more persons as the result of one accident.

Subject to the above:

1.  The most we will pay for all damages, sustained by one person, other than **you** or **your relative,** as the result of one accident, is the "each person" limit for Uninsured Motorist coverage shown in the **Declarations Page**.

2. The most we will pay for all damages, sustained by two or more persons, other than **you** or **your relatives**, as the result of one accident, is the "each accident" limit for Uninsured Motorist coverage shown in the **Declarations Page**.

3. For **bodily injury** to any one person defined as **you** or **your relative** in any one accident, the limit of liability shall be the sum of the "each person" limit for each **insured auto** for which an Uninsured Motorist coverage premium is paid on this policy.

4. For **bodily injury** to two or more persons defined as **you** or **your relatives** in any one accident, the limit of liability shall be the sum of the "each accident" limit for each **insured auto** for which an Uninsured Motorist coverage premium is paid on this policy.

Payments made under **1.** and **2.** above shall reduce the amount of Uninsured Motorist coverage available under **3.** and **4.** above.

Payments made under **3.** and **4.** above shall reduce the amount of Uninsured Motorist coverage available under **1.** and **2.** above.

5. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an **insured** under any:
   a. Workers' compensation law;
   b. Personal injury protection benefits;
   c. Disability benefits law or similar law; or
   d. Automobile medical expense coverage.

6. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount paid or payable:
   a. Under any motor vehicle liability insurance coverages; or
   b. By or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

7. If there is more than one **insured**, our limits of liability will not be increased.

**OTHER INSURANCE**

Coverage provided by this section is intended to be excess over and above any other valid and collectable liability coverage. When an **insured occupies** an auto not described in this policy, and not owned by that **insured** or a **relative**, this insurance is excess over any other similar insurance available to the **insured** and the insurance which applies to the **occupied** auto is primary.

If the **insured** has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

**DISPUTES BETWEEN US AND AN INSURED**

1. Disputes between an **insured** and us as to damages may be submitted to arbitration. Arbitration must be agreed to in writing between the **insured** and us.
   If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one. The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the **insured** and we cannot agree to arbitrate or agree to a third arbitrator, the **insured** shall:
   a. Sue the owner or driver of the **uninsured auto** and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.
   b. When suit is filed, immediately give us copies of the suit papers.

3. If the **insured** agrees to settle with another insurer, the **insured** must submit to us in writing by certified or registered mail a copy of the proposed settlement

4. If within 30 days after receipt of the proposed settlement agreement, we do not:
   a. Approve the proposed settlement and the signing of the full release;
   b. Waive our subrogation rights; and
   c. Agree to arbitrate the claim,
   the **insured** shall then file suit against us and the person(s) legally liable.
   The **insured** may not dismiss a defendant from such lawsuit without our prior written consent.

5. Any award against us shall be binding and conclusive against us and the **insured** up to our coverage limit.

**TRUST AGREEMENT**

Whenever we make a payment under this coverage:

1. We will be entitled to repayment of that amount from any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury**.

2. The **insured** will hold in trust for our benefit all rights of recovery which they may have against any person or organization responsible for these damages. They will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the **insured**, in their own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization.

4.  The **insured** will execute and furnish us with any needed documents to secure their rights and obligations, and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorist coverage. We will have no duty to provide coverage under this policy, and no suit may be brought against us unless the **insured** or their legal representative have fully complied with all the policy terms and conditions below:

1.  NOTICE

    As soon as possible after an accident, notice must be given to us or our authorized agent stating:

    a.  The identity of the **insured**;

    b.  The time, place and details of the accident; and

    c.  The names and addresses of the injured, and of any witnesses.

    If the **insured** or their legal representative files suit before we make a settlement under this coverage, they must immediately provide us with a copy of the pleadings.

2.  ASSISTANCE AND COOPERATION OF THE INSURED

    After we receive notice of a claim, we may require the **insured** to take any action necessary to preserve their recovery rights against any allegedly legally responsible person or organization. We may require the **insured** to make that person or organization a defendant in any action against us. The **insured** must cooperate with other reasonable requests for information or assistance made by us. The **insured** may not agree to dismiss any allegedly legally responsible person(s) or organization(s) from any action without our prior written agreement.

3.  PROOF OF CLAIM

    If requested by us, an **insured** must:

    a.  EXAMINATION UNDER OATH

        Submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request for this information is made before, during or after the EUO.

    b.  INDEPENDENT MEDICAL OR MENTAL EXAMINATION

        Submit to examination by doctors, or other health care providers chosen by us, at our expense, where and as often as we may reasonably require. The scope of the examination(s) may be as broad as we may reasonably require, including but not limited to physical and mental examinations.

    c.  DOCUMENT REQUEST

        Timely comply with all requests for information made by us including but not limited to requests for medical, employment, educational, financial and other pertinent records. If requested by us, the **insured** must provide written authorization, in a form acceptable to us, to obtain information and documents requested under this paragraph. In the event of the **insured's** incapacity or death, their representative must comply with this paragraph.

4.  ACTION AGAINST US

    No suit may be brought against us unless the **insured** or their legal representative have fully complied with all the policy terms.

5.  PAYMENT OF LOSS

    Any amount due is payable:

    a.  To the **insured** or their authorized representative;

    b.  If the **insured** is a minor, to their parent or guardian; or

    c.  If the **insured** is deceased, to their surviving spouse; otherwise

    d.  To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

    We may, at our option, pay an amount due in accordance with d. above.

**PART II - UNINSURED MOTORIST COVERAGE NON-STACKED**

**Uninsured Motorist Coverage Non-Stacked applies only if a premium is shown in the Policy Declarations Page for "Uninsured Motorist/Nonstacked" coverage. Uninsured/underinsured motorist benefits are designed to provide protection when *you* or *your* family are involved in an accident with an uninsured/underinsured motorist.**

If **you** pay the premium for UNINSURED MOTORIST/NONSTACKED, the following of SECTION IV - PART II of **your** policy applies:

**DEFINITIONS**

The definitions and terms for Section I apply to SECTION IV - PART II, except for the following definitions:

1.  **Hit-and-run vehicle** means a motor vehicle causing **bodily injury** to an **insured** with or without physical contact with them or with a vehicle they are **occupying** at the time of the accident and whose operator or owner cannot be identified; provided the **insured** or someone on their behalf:

a. Reports the accident as soon as practicable to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

b. Files with us as soon as practicable a statement setting forth the facts of the accident and claiming that they have a cause of action for damages against an unidentified person.

2. **Insured** means:
   a. **You**;
   b. **Your relatives**;
   c. Any other person while **occupying** an **insured auto**;
   d. Any person who is entitled to recover damages because of **bodily injury** sustained by an **insured** under a., b., and c. above.

   If there is more than one **insured**, our limits of liability will not be increased.

3. **Insured auto** is an auto:
   a. Described in the **Declarations Page** and covered by the Bodily Injury Liability coverage of this policy;
   b. Temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   c. Operated by **you** or **your** spouse if a resident of the same household.

   But the term **insured auto** does not include:
   i. An **insured auto** when used to carry passengers or goods for hire, except in a car-pool;
   ii. An auto being used without the owner's permission; or
   iii. Under subparagraphs b. and c. above, an auto owned by or available for the regular use of an **insured**.

4. **Occupying** means in, upon, entering into or alighting from.

5. **Ride-sharing** means the use of any vehicle by any person in connection with a **transportation network company** from the time the person logs on to or signs in to any computer or digital network, application or platform that connects or matches driver(s) with passenger(s) until the time the person logs out of or signs off of any such network, application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

6. **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

7. **Uninsured auto** is an auto:
   a. Which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the **state** in which the **insured auto** is principally garaged at the time of the accident; or
   b. For which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an **insured**; or
   c. A **hit-and-run vehicle**.
   d. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

   The term **uninsured auto** does not include:
   a. An **insured auto**;
   b. A land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or premises; and
   c. A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorist coverage we will pay damages for **bodily injury**, sustained by an **insured**, caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** arising out of the ownership, maintenance or use of that auto.

## EXCLUSIONS

Section IV - PART II Does Not Apply:

1. To **bodily injury** to an **insured** if the **insured** or their legal representative has made a settlement or has been awarded a judgment of their claim without our prior written consent and such settlement prejudices our right to recover.

2. To **bodily injury** to an **insured** while **occupying** or when struck by any motor vehicle or motorcycle owned by an **insured** or a **relative**, which is not insured under the Liability Coverages section of this policy.

3. To **bodily injury** to a person not an **insured**.

4. To benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

5. To any damages for pain and suffering that the **insured** may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:
   a. Significant and permanent loss of an important bodily function;
   b. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;
   c. Significant and permanent scarring or disfigurement; or
   d. Death.

6. To punitive or exemplary damages, regardless of any other provision of this policy.

7. To damage caused by the **insured's**:
   a. participation in and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether prearranged or organized; or
   b. operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

8. To the **bodily injury** of any person while any vehicle is being used for **ride-sharing**.
   However, this exclusion does not apply to:
   a. ordinary car pools. An ordinary car pool does not include a car pool established, set up or planned through a **transportation network company**;
   b. **you** or a **relative** while a passenger and not operating the motor vehicle being used for **ride-sharing** at the time of loss; or
   c. a permissive driver, or a **relative**, who is not **occupying** the vehicle being used for **ride-sharing** at the time of loss.

9. To **bodily injury** while an **owned auto** is used in **peer-to-peer vehicle sharing** during the **vehicle sharing period**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** express or implied permission.

## LIMITS OF LIABILITY

The limit of liability for Uninsured Motorist coverage stated in the **Declarations Page** as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as the result of one accident. The limit of liability stated in the **Declarations Page** as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of one accident.

These limits are the maximum we will pay for any one accident regardless of the number of claims made, Uninsured Motorist coverage premiums paid, vehicles or persons stated in the **Declarations Page**, or vehicles involved in the accident. Subject to the above:

1. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the **Declarations Page**.
2. If at the time of the accident the injured person is **occupying** an auto insured by us, the amount of coverage available to the injured person is the limit specified in the **Declarations Page** for the occupied vehicle.
3. If at the time of the accident the injured person is **occupying** a motor vehicle which is not owned by them or by a family member residing with them, they are entitled to the highest limits of Uninsured Motorist coverage afforded for any one vehicle as to which they are the named insured or **insured** family member. Such coverage shall be excess over the coverage on the vehicle they are **occupying**.
4. If at the time of the accident the injured person is not **occupying** a motor vehicle, they are entitled to select any one limit of Uninsured Motorist coverage for any one vehicle afforded by a policy under which they are insured as a named insured or as a **relative**.
   If separate non-stacked policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of liability for a loss.
   If separate stacked policies with us are in effect, the stacked policies may be combined to increase the limit of liability for **you** or **your relatives**.
5. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an **insured** under any:
   a. Workers' compensation law;
   b. Personal injury protection benefits;
   c. Disability benefits law or similar law; or
   d. Automobile medical expense coverage.
6. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount paid or payable:
   a. Under any motor vehicle liability insurance coverages; or
   b. By or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

## OTHER INSURANCE

Coverage provided by this section is intended to be excess over and above any other valid and collectable liability coverage.

When an **insured occupies** an auto not described in this policy, and not owned by that **insured** or a **relative**, this insurance is excess over any other similar insurance available to the **insured** and the insurance which applies to the **occupied** auto is primary.

If the **insured** has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not

be liable for more than our pro-rata share of the total coverage available.

## DISPUTES BETWEEN US AND AN INSURED

1.  Disputes between an *insured* and us as to damages may be submitted to arbitration. Arbitration must be agreed to in writing between the *insured* and us.

    If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one. The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2.  If the *insured* and we cannot agree to arbitrate or agree to a third arbitrator, the *insured* shall:
    a.  Sue the owner or driver of the *uninsured auto* and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.
    b.  When suit is filed, immediately give us copies of the suit papers.

3.  If the *insured* agrees to settle with another insurer, the *insured* must submit to us in writing by certified or registered mail a copy of the proposed settlement

4.  If within 30 days after receipt of the proposed settlement agreement, we do not:
    a.  Approve the proposed settlement and the signing of the full release
    b.  Waive our subrogation rights; and
    c.  Agree to arbitrate the claim, the *insured* shall then file suit against us and the person(s) legally liable.

    The *insured* may not dismiss a defendant from such lawsuit without our prior written consent.

5.  Any award against us shall be binding and conclusive against us and the *insured* up to our coverage limit.

## TRUST AGREEMENT

Whenever we make a payment under this coverage:

1.  We will be entitled to repayment of that amount from any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2.  The *insured* will hold in trust for our benefit all rights of recovery which they may have against any person or organization responsible for these damages. They will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3.  At our written request, the *insured*, in their own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization.

4.  The *insured* will execute and furnish us with any needed documents to secure their rights and obligations, and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Uninsured Motorist coverage. We will have no duty to provide coverage under this policy, and no suit may be brought against us unless the *insured* or their legal representative have fully complied with all the policy terms and conditions below:

1.  NOTICE

    As soon as possible after an accident, notice must be given to us or our authorized agent stating:
    a.  The identity of the *insured*;
    b.  The time, place and details of the accident; and
    c.  The names and addresses of the injured, and of any witnesses.

    If the *insured* or their legal representative files suit before we make a settlement under this coverage, they must immediately provide us with a copy of the pleadings.

2.  ASSISTANCE AND COOPERATION OF THE INSURED

    After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve their recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us. The *insured* must cooperate with other reasonable requests for information or assistance made by us. The *insured* may not agree to dismiss any allegedly legally responsible person(s) or organization(s) from any action without our prior written agreement.

3.  PROOF OF CLAIM

    If requested by us, an *insured* must:
    a.  EXAMINATION UNDER OATH (EUO)

        Submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request for this information is made before, during or after the EUO.

    b.  INDEPENDENT MEDICAL OR MENTAL EXAMINATION

        Submit to examination by doctors, or other health care providers chosen by us, at our expense, where and as often as we may reasonably require. The scope of the examination(s) may be as broad as we may reasonably require, including but not limited to physical and mental examinations.

    c.  DOCUMENT REQUEST

        Timely comply with all requests for information made by us including but not limited to requests for medical,

employment, educational, financial and other pertinent records. If requested by us, the **insured** must provide written authorization, in a form acceptable to us, to obtain information and documents requested under this paragraph. In the event of the **insured's** incapacity or death, their representative must comply with this paragraph.

**4.** ACTION AGAINST US

No suit may be brought against us unless the **insured** or their legal representative have fully complied with all the policy terms.

**5.** PAYMENT OF LOSS

Any amount due is payable:

a.  To the **insured** or their authorized representative;

b.  If the **insured** is a minor, to their parent or guardian; or

c.  If the **insured** is deceased, to their surviving spouse; otherwise

d.  To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with d. above.

---

## SECTION V- GENERAL CONDITIONS
## These Conditions Apply To All Coverages In This Policy

---

**DEFINITIONS**

The definitions of the terms under Section I also apply to Section V.

**(1)** TERRITORY - POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an **owned auto** is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the **Declarations Page**. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the **Declarations Page**.

**(2)** PREMIUM

When **you** dispose of, acquire ownership of, or replace a **private passenger auto**, **farm auto** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**(3)** PAYMENT

If **your** initial premium payment for **your** first policy period is by check, draft, electronic transaction, credit card or any remittance other than cash, such payment is conditional upon the check, draft, electronic transaction, credit card or other remittance being honored upon presentation. If such check, draft, electronic transaction, credit card or other remittance is not honored upon presentation, or is honored and later reversed or dishonored, this policy will be voided from its inception unless the nonpayment is cured within the earlier of 5 days after actual notice by certified mail is received by the applicant or 15 days after notice is sent to the applicant by certified mail or registered mail. If we void the policy from its inception we will not be liable for any claims or damages that would have otherwise been covered if the check, draft, electronic transaction, credit card or other remittance was honored upon presentation.

**(4)** CHANGES

The terms and provisions of this policy cannot be waived or changed, except by amendment and/or endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your** state.

The premium for each auto is based on the information we have in **your** file. **You** agree:

a.  That we may adjust **your** policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

b.  That **you** will cooperate with us in determining if this information is correct and complete.

c.  That **you** will notify us of any changes in this information.

Any calculation or recalculation of **your** premium or changes in **your** coverage will be based on the rules, rates and forms on file, if required, for our use in **your** state.

**(5)** ASSIGNMENT

This policy may not be assigned without our written consent. However, we will not prohibit an **insured's** option to assign their rights and benefits post loss. However, if a named insured shown on the **Declarations Page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

**(6)** CANCELLATION BY THE INSURED

**You** may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

a.  Upon total destruction of all of the *owned autos*;

b.  Upon transfer of ownership of all of the *owned autos*;

c.  If *you* obtained a replacement policy covering an *owned auto* elsewhere; or

d.  When we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida, *you* have the following options:

   1.  Upon receipt of *your* bill *you* may pay the difference in premium and keep the policy as it stands with the corrected premium; or

   2.  *You* may cancel this policy within 10 days from the receipt of our notice and receive a refund of any unearned premium; or

   3.  *Your* failure to respond timely or pay the additional premium charged will result in the cancellation of *your* policy when all paid premiums are exhausted.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals and will be sent to *you* within 30 days after the effective date of the policy cancellation or receipt of notice or request for cancellation, whichever is later.

**(7)  CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

a.  10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due. However, if *your* policy is not a renewal, then during the first 30 days immediately following the effective date of the policy we may cancel for nonpayment of premium only if the reason for the cancellation for nonpayment of premium is the issuance of a check for the premium that is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

   If the nonpayment of premium is due to the nonpayment of *your* initial premium for *your* first policy period. then the nonpayment provisions of this Condition do not apply and *your* policy will be voided from inception per the terms of **Condition (3) PAYMENT**;

b.  45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals and will be sent to *you* within 15 days after the effective date of the policy cancellation.

Payment or tender of unearned premium is not a condition of cancellation.

**(8)  CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

a.  *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

b.  Any *insured* or any other operator who either resides in the same household or customarily operates a motor vehicle insured under this policy has had their driver's license or motor vehicle registration under suspension or revocation; either:

   i.   During the current policy period; or

   ii.  During the preceding 180 days if this is a new policy; or

c.  There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

If *your* policy has been in effect less than 60 days, we may cancel:

a.  for any reason; or

b.  for non-payment of premium. However, if *your* policy is not a renewal, then during the first 30 days immediately following the effective date of the policy we may cancel for nonpayment of premium only if the reason for the cancellation for nonpayment of premium is the issuance of a check for the premium that is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

   If the nonpayment of premium is due to the nonpayment of *your* initial premium for *your* first policy period. then the nonpayment provisions of this Condition do not apply and *your* policy will be voided from inception per the terms of **Condition (3) PAYMENT**.

We will not cancel a policy based on the lawful use, possession, or ownership of a firearm or ammunition by the *insured* or a household member of the *insured*.

Nothing in this section will require us to renew this policy.

**(9)  RENEWAL**

We agree that we shall provide *you* at least 30 days written notice of renewal of *your* policy. We will only non-renew this policy if:

a.  One or more of the reasons listed in Condition **(8)** (above), CANCELLATION BY US IS LIMITED, exists; or
b.  **You** refuse to provide us with renewal classification and rating information as we may require; or
c.  We are otherwise permitted to do so by the State of Florida; or
d.  The **insured** has had any of the following:
    i.   Three or more accidents, regardless of fault, during the most recent 3 year period; or
    ii.  Two or more noncriminal traffic violations as described in Florida statute section 318.14 within an 18 month period; or
    iii. Three or more noncriminal traffic violations as described in Florida statute section 318.14 within a 36 month period; or
    iv.  A violation of Florida statute section 316.183, when such violation A is a result of exceeding the lawful speed limit by more than 15 miles per hour.

If **you**:
(1)  do not pay the premium as required to renew this policy; or
(2)  have informed us or our agent that **you** wish the policy cancelled or not renewed; or
(3)  do not accept our offer to renew.

it will be construed to mean that **you** have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for five years or more we will not refuse to renew solely because an **insured** was involved in a single traffic accident.

We will not refuse to renew or continue this policy based on the lawful use, possession, or ownership of a firearm or ammunition by the **insured** or a household member of the **insured**.

**(10)** NON-RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of **our** refusal to renew or continue is mailed to **you**, at the address shown in the policy, at least 45 days prior to the expiration notice.

This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of mailing.

**(11)** MEDIATION OF CLAIMS

In the event of a claim for **bodily injury** amounting to $10,000 or less, or any **property damage** claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

The Department of Financial Services shall approve persons who are deemed qualified to act as mediators. Each party may once reject the mediator, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The costs of mediation must be reasonable, and we will bear all of the cost of conducting mediation conferences, except as follows: If the policyholder fails to appear at the conference, the conference must be rescheduled upon the policyholder's payment of the costs of a rescheduled conference. If we fail to appear at the conference, we will pay the policyholder's actual cash expenses incurred in attending the conference if our failure to attend was not due to a good cause. We are deemed to have failed to appear if our representative lacks authority to settle the full value of the claim. We shall incur an additional fee, paid to the mediator, for a rescheduled conference necessitated by our failure to appear at a scheduled conference.

Disclosures and information divulged in the mediation process are not admissible in any subsequent action or proceeding relating to the claim or to the cause of action giving rise to the claim. A person demanding mediation may not demand or request mediation after a suit is filed relating to the same facts already mediated.

**(12)** OTHER INSURANCE

If other insurance is obtained on **your owned auto**, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**(13)** ACTION AGAINST US

Persons other than the **insured** covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an **insured**.

**(14)** DIVIDEND PROVISION

**You** may be entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**(15)** DECLARATIONS

By accepting this policy, **you** agree that:
a.  The statements in **your** application are **your** agreements and representations;
b.  This policy is issued in reliance upon the truth of these representations; and

c.  This policy, along with the application and **Declarations Page**, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**(16)** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who conceals or misrepresents any material fact or circumstance relating to this insurance:

1.  At the time application is made; or
2.  At any time during the policy period; or
3.  In connection with the presentation or settlement of a claim.

**(17)** EXAMINATION UNDER OATH (EUO)

Unless otherwise modified elsewhere in the policy, if requested by us, an **_insured_** or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

**(18)** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

**(19)** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

**(20)** DISPOSAL OF VEHICLE

If **_you_** relinquish possession of a leased vehicle or if **_you_** sell or relinquish ownership of an **_owned auto_**, any coverage provided by this policy for that vehicle will terminate on the date and time **_you_** do so.

**(21)** JOINT AND INDIVIDUAL INTERESTS

Any one person defined as a **_you_** may cancel or change this policy.

The action of any one person defined as a **_you_** in canceling or changing this policy is binding on all persons provided coverage under this policy.

**(22)** CLAIM ADJUSTMENT TOOLS AND TECHNOLOGY

We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses or loss payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology.

## SECTION VI- AMENDMENTS AND ENDORSEMENTS

1.  SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the **_Property Damage_** coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1.  Motor vehicles owned or leased by the United States Government or any of its agencies, or
2.  Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph **B.** below, we will pay sums **_you_** are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1.  A $100 deductible applies to each occurrence.
2.  For vehicles described in **A.**1. above, our liability shall not exceed the lesser of the following:
    a.  The **_actual cash value_** of the property at the time of the occurrence;
    b.  The cost to repair or replace the property, or any of its parts with other of like kind and quality;
    c.  Two months basic pay of the **_insured_**; or
    d.  The limit of Property Damage liability coverage stated in the **Declarations Page**.
3.  For vehicles described in **A.**2. above, our liability shall not exceed the lesser of the following:
    a.  The **_actual cash value_** of the property at the time of the occurrence;
    b.  The cost to repair or replace the property, or any of it parts with other of like kind and quality; or
    c.  The limit of Property Damage liability coverage stated in the **Declarations Page**.

This insurance is excess over other valid and collectible insurance.