### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

RICHARD KANE, for himself
and all others similarly situated,

     Plaintiff,

v.                                     Case No: 6:25-cv-532-JSS-LHP

GEICO GENERAL INSURANCE
COMPANY,

     Defendant.

_____/

## Plaintiff's Response to Oppose
## Defendant's Motion to Dismiss

     This class action is about a practice no reasonable insured would accept: GEICO added complete strangers to Plaintiff's policy based on unverified third-party data—and then treated silence as agreement. No verification. No consent. Just an inflated premium for fabricated risk and an after-the-fact justification untethered from the contract's text.

     GEICO's motion to dismiss tries to sanitize this scheme by calling it "contractually authorized." But the contract says no such thing. The policy permits adjustments only when information is "incorrect, incomplete or changed." It doesn't empower GEICO to make up facts, inflate risk, and profit off silence. Nor does it allow the addition of unknown drivers in direct conflict with the policy's own "Persons Insured" clause, which requires "express or implied

permission." GEICO's conduct breaches the contract. It violates the covenant of good faith. It unjustly enriched GEICO. And it's precisely the opaque, manipulative, and profit-driven behavior Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) was designed to prevent. All four counts state plausible claims. The Court should deny GEICO's motion to dismiss.

## LEGAL STANDARD

The applicable legal standard on a motion to dismiss is well-settled and was explained by this Court in *L3Harris Techs., Inc. v. Moog Inc.*, 2025 WL 590023, at *2 (M.D. Fla. Feb. 24, 2025).

## DISCUSSION

GEICO's motion to dismiss hinges on a single flawed premise: the policy allows it to add unknown drivers and raise premiums based solely on unverified third-party data and the insured's silence. It doesn't. The contract is silent on this practice, and where it speaks—particularly in the "Persons Insured" clause—it contradicts GEICO's approach. Each of Plaintiff's claims rest on this central fact: GEICO charged more for risks Kane never agreed to assume. That is more than enough to state a claim at the pleading stage.

### I.    Count I – Breach of Contract

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *People's Tr. Ins. Co. v. Alonzo-Pombo*, 307 So. 3d 840, 843 (Fla. Dist. Ct. App. 2020). Kane alleged all three. First, Kane held a valid insurance contract with GEICO. (Dkt. 1 ¶¶ 1, 10, 20, 32–33; Dkt.

1-1). Second, GEICO materially breached that contract by unilaterally adding individuals—complete strangers to Kane—to his policy and raising his premiums. (Dkt. 1 ¶¶ 2–3, 11–18, 22, 35–38). Third, Kane suffered damages: he was forced to pay inflated premiums for coverage he never requested, authorized, or received any benefit from. (*Id.*)

GEICO argues dismissal is appropriate because Kane didn't identify a specific provision of the contract that was breached. (Dkt. 14 at 5–7). But courts have rejected that standard when the plaintiff has stated a clear theory of breach and tied it to the contract's operative terms—even if not quoted verbatim. For example, in *Copley's R.V. Center, Inc. v. Textron Financial Corp.*, 2010 WL 170402 (S.D. Fla. Jan. 15, 2010), the court rejected a similar argument that the plaintiffs didn't "provide sufficient reference to a specific term…." *Id.* at *2. There, as here, the breach concerned a "very specific issue," and the defendant claimed the contract authorized its conduct. *Id.* at *2–3. The court denied the motion to dismiss because the defendant "really is arguing .. the Complaint fails on its merits because the contract language contradicts the Plaintiffs' theory" but "relief on the merits is unavailable on a Motion to Dismiss." *Id.* at *2.

GEICO's argument takes the same approach rejected in *Textron*. Kane's breach concerns a specific issue: GEICO adding total strangers to Kane's policy—based on unverified data from a third party—and then treating his silence

3

as agreement. There's no specific provision to identify because "nothing in [the] insurance policy allows GEICO to add individuals to the policies to increase payments." (Dkt. 1 ¶ 35; Dkt. 1-1). GEICO disagrees because it believes Section V(4) "expressly permits the conduct at issue." (Dkt. 14 at 7). But same as *Textron*, GEICO is arguing it's correct on the merits, which is "unavailable on a Motion to Dismiss." *Textron*, 2010 WL 170402 at *2. "Because the factual allegations of the … Complaint provide Defendant with adequate notice of the contract at issue and how Defendant allegedly breached that contract," the Court should deny the motion to dismiss Count I for breach of contract. *Fonseca v. Am. Reliable Ins. Co.*, 2021 WL 4974250, at *2 (M.D. Fla. Oct. 26, 2021).

"Even if this Court were to take the inquiry one step further and consider whether the contract's language patently contradicts [Kane's] theory of relief, [GEICO's] Motion still would fail." *Textron*, 2010 WL 170402 at *3. GEICO defends its conduct by citing a provision stating it "may adjust your policy premiums during the policy term ***if*** any of this information on which the premiums are based is ***incorrect, incomplete or changed***." (Dkt. 14 at 7) (quoting Dkt. 1-1 at 35) (emphasis altered). GEICO's reliance on this clause (Section V(4)) is misplaced for at least two reasons.

First, Section V(4) only allows ***premium adjustments***. It never says GEICO may ***add new drivers*** unilaterally based on third-party data. But that is what GEICO admittedly did (Dkt. 14 at 7–8) with no contractual basis.

Section I, titled "Persons Insured," expressly limits liability coverage to drivers who use the vehicle with the insured's "express or implied permission." (Dkt. 1-1 at 8). GEICO's conduct—automatically adding unknown individuals without confirming use or consent—directly violates this express limitation and impermissibly broadens insureds beyond the policy's terms.

Second, Section V(4) doesn't give GEICO carte blanche to fabricate changes. It allows premium adjustments when the underlying information is ***actually*** incorrect, incomplete, or changed. But Kane alleges none of the relevant facts were incorrect, incomplete, or changed: the household remained the same, and no new drivers had been added or authorized. (Dkt. 1 ¶¶ 2, 4, 11–18). Adding unrelated third parties based on unverified, third-party data was neither an adjustment for "changed" information nor a correction of "incomplete" or "incorrect" data. It was GEICO's unilateral insertion of false information. GEICO thus materially breached the contract by imposing charges based on inaccuracies it introduced and failed to validate. GEICO had ***no*** contractual basis to "adjust" the premium upward. Still, it did—based only on unverified third-party data and Kane's non-response to an unsolicited email. (Dkt. 1 ¶¶ 2, 4, 11–18). That's not a permissible "adjustment." It's a breach.

GEICO also notes Section V(4) requires insureds to "cooperate" in verifying information (Dkt. 14 at 7). GEICO claims this language allows it to presume its third-party data is correct—and to raise premiums accordingly—if the

insured doesn't respond within 15 days. That interpretation is both contractually unsupported and legally unreasonable.

The term "cooperate" means "to act or work with another or others: to act together or in compliance." Merriam-Webster Dictionary, cooperate, https://www.merriam-webster.com/dictionary/cooperate (last visited June 9, 2025). This definition confirms cooperation requires active engagement and mutual effort—not passive acquiescence or implied consent. It doesn't grant GEICO the authority to unilaterally assume its third-party data is accurate if Kane doesn't respond within an arbitrary time frame.

The duty to "cooperate" implies a two-way process of clarification—not a one-sided power to penalize silence. A failure to respond may, at most, raise an issue of non-cooperation—but it doesn't retroactively validate fabricated or mistaken information. For example, if GEICO sent an email asserting "Elvis Presley (the American singer) now lives in your household," and Kane failed to respond within 15 days, GEICO's position would allow it to treat that claim as confirmed and raise premiums accordingly. That result is not only absurd, but also unsupported by the policy's text or structure.

The policy also provides no express consequence for a failure to cooperate. It doesn't say that non-response authorizes premium increases, additions of drivers, or the presumption of correctness. Where an insurance contract lists remedies—such as cancellation or non-renewal—courts shouldn't infer

additional, harsher remedies. *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So.2d 733, 736 (Fla.1998) (where policy language is susceptible to differing interpretations, it should be construed in favor of the insured); *Gulf Cities Gas Corp. v. Tangelo Park Serv. Co.,* 253 So.2d 744, 748 (Fla. Dist. Ct. App. 1971) ("[W]here a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted.")

If Kane failed to cooperate, as GEICO alleges but cannot prove on a motion to dismiss, GEICO's only potential options were to cancel or not to renew the policy. (Dkt. 1-1 at 36–37). Even then, GEICO owed 45 days prior written notice "mailed by United States Post Office certificate of mailing," instead of the 15-day ***email*** GEICO used before it unilaterally hiked Kane's insurance premium. (Dkt. 1-1 at 36–37). But what GEICO cannot do is create new household risk assumptions, fabricate drivers, and charge the insured more money based on silence. That consequence isn't in the contract—and courts won't construe the policy in favor of GEICO's interpretation. *Container Corp. of Am.*, 707 So.2d at 736; *Gulf Cities Gas Corp.,* 253 So.2d at 748.

Although GEICO thinks otherwise, the breach is straightforward: Kane agreed to insure himself—not strangers. GEICO unilaterally altered that

agreement and charged higher premiums for risks Kane never agreed to assume. GEICO's unilateral addition of unknown drivers—without consent and in conflict with its own policy language—isn't an adjustment. It fabricates coverage obligations and is a textbook breach.[1] Because Kane has plausibly alleged a valid contract, a wrongful premium increase contrary to the policy's express language, and monetary harm as a result, his breach of contract claim is more than adequately pleaded. *Fonseca*, 2021 WL 4974250 at *2.

## II.    Count II – Breach of the Covenant of Good Faith and Fair Dealing

In *L3Harris Techs.,* the Court described the pleading requirements for breach of the implied covenant of good faith and fair dealing:

> Under Florida law, every contract contains an implied covenant requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. A party to a contract breaches the implied covenant of good faith and fair dealing when the party fails or refuses to discharge contractual responsibilities through conscious and deliberate action that unfairly frustrates the agreed common purpose, thereby disappointing the reasonable expectations of the other party to the contract. However, breach of the implied covenant of good faith and fair dealing is not an independent cause of action. Rather, the cause of action attaches to the performance of a specific contractual obligation such that it cannot stand absent the breach of an express term of a contract. Further, claims based on the implied covenant cannot be maintained in derogation of the express

---

[1] GEICO asserts agreeing with Kane "would render Section V(4) effectively meaningless." (Dkt. 14 at 8). This is wrong. Kane's construction gives full effect to the clause: it permits premium adjustments where the underlying rating information was incorrect, incomplete, or has changed—such as a new vehicle, driver, or relocation. GEICO's conduct here, by contrast, was based solely on unverified third-party speculation. What GEICO seeks is not the enforcement of Section V(4), but a rewriting of it—so that "change" includes any unsupported suggestion of a change, and "adjustment" becomes a tool to shift the burden of proof to insureds. That reading would create a one-sided pricing mechanism that appears nowhere in the policy's text. Kane's interpretation doesn't nullify Section V(4); it preserves its intended scope.

terms of the contract. As a result, claims for breach of the implied cove-
nant tend to rise and fall with claims for breach of contract.

2025 WL 590023, at *6 (cleaned up).

Here, GEICO's motion fails to undermine Kane's claim for breach of the

implied covenant of good faith and fair dealing. Kane has plausibly alleged

GEICO breached the implied covenant of good faith and fair dealing by con-

sciously and deliberately manipulating the premium adjustment process in a

way that unfairly frustrated the agreed common purpose of the insurance con-

tract. Section V(4)'s purpose is to make sure premiums reflect actual, verified

changes in risk based on accurate information from the insured. Instead of

honoring that purpose, GEICO deployed opaque third-party data to add unre-

lated individuals to Kane's household—then shifted the burden to Kane to dis-

prove those false additions within 15 days allegedly provided from a single

email. When Kane didn't respond under that artificial deadline, GEICO raised

his premium, not because his information was incorrect or incomplete, or his

circumstances had changed, but because GEICO assumed facts contrary to

what Kane had originally provided. If GEICO wanted to reserve that right, it

needed to clearly say so in the policy. Its failure to do so—and then exploiting

Kane's silence—violates the covenant of good faith.

GEICO raised Kane's insurance premiums to increase its profits while

offering Kane no additional benefits. This wasn't part of Kane's reasonable

expectations when he contracted with GEICO. Kane reasonably expected only individuals he authorized—or who at least lived in his home—would be listed on his insurance policy. Kane's allegations show GEICO's actions thwarted Kane's reasonable expectation that his premium would only be increased for actual changes to verified information—not speculative data misinterpreted or misapplied behind the scenes. GEICO's actions "disappointed the reasonable expectations of the other party" and constituted a "conscious and deliberate" attempt to profit from information it knew might be false. *L3Harris Techs.*, 2025 WL 590023, at *7 (citing *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010)). That's more than mere breach—it's deliberate frustration of the contract's common purpose, and enough to state a claim for breach of the implied covenant. *Id.* And because this claim attaches to GEICO's performance of a specific contractual obligation—Section V(4)—it isn't barred as duplicative or independent. Rather, it rises and falls with the breach of contract claim and survives dismissal for the same reasons. *Id.* Kane plausibly stated a claim for a breach of covenant of good faith and fair dealing, so the Court should deny the motion to dismiss Count II.

### III.    Count III – Unjust Enrichment

"Unjust enrichment 'is an obligation created by the law to remedy the unjust retention of a benefit conferred by another.'" *City Nat'l Bank of Fla. as Tr. of Land Tr. No. 2400-9492-00 v. Signature Land*, Inc., 397 So. 3d 1133,

1135 (Fla. Dist. Ct. App. 2024) (quoting *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. Dist. Ct. App. 2010)). "The elements of unjust enrichment are: '1) the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit, 2) the defendant accepts and retains the conferred benefit, and 3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it.'" *Id.* (quoting *Duncan v. Kasim, Inc.*, 810 So. 2d 968, 971 (Fla. Dist. Ct. App. 2002)).

GEICO "does not contend that [Kane's] unjust enrichment [count] fail[s] to allege these elements or lack sufficient factual support to make the allegations plausible, (*see* Dkt. [14 at 12–13]), and … when construed in [Kane's] favor … [Count III] plausibly allege[s] the elements." *L3Harris Techs.*, 2025 WL 590023, at *7. Kane alleges he conferred a benefit beyond what was required by the contract (paying excess premiums), GEICO solicited and knew of the benefit when it received the excess premium payment, GEICO hasn't returned the amount Kane overpaid in premiums, and it would be inequitable to let GEICO retain the excess insurance premiums because Kane has received no additional benefit under the insurance policy by paying more than he agreed for "insureds" he didn't even know. (Dkt. 1 ¶¶ 49–54). Instead, as in *L3Harris Techs.*, GEICO argues "the Complaint affirmatively alleges the existence of an enforceable insurance contract, and the unjust enrichment claim simply repackages the same allegations underlying the breach of contract claim." (Dkt.

14 at 12). Effectively, GEICO argues the breach of contract claim subsumes the unjust enrichment claim because the parties don't dispute the validity of the contract. (*Id.*) (citing *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) and *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp.2d 1218, 1227 (S.D. Fla. 2010)).

GEICO's motion to dismiss Kane's unjust enrichment claim fails because Federal Rule of Civil Procedure 8(d) expressly lets parties plead alternative, and even inconsistent claims, including equitable remedies like unjust enrichment. *L3Harris Techs.*, 2025 WL 590023, at *8; *AutoNation, Inc. v. GAINSystems, Inc.*, 2009 WL 1941279, at *4 (S.D. Fla. July 7, 2009) ("[N]either the unjust enrichment claim nor the quantum meruit claim is barred merely because the parties have entered into a contractual relationship.") Kane plausibly alleges that, even if the policy governs aspects of the premium relationship, GEICO's actions—adding strangers to the policy without his consent or knowledge—exceeded the bounds of the contract. Nowhere in the policy does Geico reserve the right to:

- unilaterally add individuals who are not listed in the declarations and have no established connection to the insured;

- increase premiums based solely on unverified and speculative third-party data; or

- treat the insured's silence as acceptance of new risks, new drivers, increased premiums or altered terms.

Where, as here, the conduct may fall outside the four corners of the policy, unjust enrichment is a proper remedy. *Id.*

GEICO's enrichment wasn't incidental or unintended, it was systematic and deliberate. It charged Kane and class members for coverage they never requested, accepted overpayments, and provided no corresponding benefit under the policy. Under Florida law, these are precisely the circumstances in which restitution is appropriate. *Paschen v. B&B Site Dev., Inc.*, 311 So. 3d 39, 50 (Fla. Dist. Ct. App. 2021). Thus, even if the breach of contract claim fails, unjust enrichment survives as an alternative remedy for conduct that the policy never authorized.

## IV.    Count IV – Violation of Florida's Deceptive & Unfair Trade Practices Act

Kane also states a valid claim under the FDUTPA, which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FL ST § 501.204. "To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege the following three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *2 (M.D. Fla. July 20, 2023) (citation omitted). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is

one that offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (citation omitted). "[W]hether specific conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine." *Consentino v. Bridgestone Retail Operations, LLC*, 2024 WL 3983985, at *3 (S.D. Fla. Aug. 29, 2024).

Kane's allegations easily satisfy the plausibility standard at the motion to dismiss stage:

- GEICO relied on unverified consumer reporting data to identify supposed "residents" at the insured's address;

- issued an automated 15-day email warning that these individuals would be added unless the insured objected;

- unilaterally added complete strangers to Kane's policy without verifying their residence or vehicle use; and

- increased Kane's premiums based on these fabricated risk assumptions.

(See Dkt. 1 ¶¶ 2–4, 11–18, 60–63).

GEICO tries to reframe this as a "transparent" and "contractually authorized" process. But the policy says nothing about the right to add drivers, or to bind insureds through silence. GEICO's practice is not disclosed in the contract and directly contradicts it, which makes it deceptive. *Consentino*, 2024

14

WL 3983985, at *3.[2] Kane reasonably believed his policy was limited to those drivers he designated. GEICO misled him—and other insureds—into believing they had no choice, imposed financial penalties for failing to respond to obscure emails, and reaped increased profits for phantom risks. The economic harm is real, the conduct is systematic, and the deception is actionable. *Id.*

GEICO also claims "the alleged injury, an increase in Kane's premiums, was not one that Kane could not have reasonably avoided" because he could have contacted GEICO within 15 days of the Riddle and Marchand notices to prevent the premium increase. (Dkt. 14 at 14). Kane contends this procedure was not "reasonable." (Dkt. 1 ¶ 61. At minimum, a factual dispute exists over whether GEICO's conduct was reasonable which cannot be resolved on a motion to dismiss. GEICO's reasonableness arguments are unripe and provide no basis for dismissing Kane's FDUTPA claim. *See e.g. Twyman v. Carnival Corp.*, 410 F. Supp. 3d 1311, 1324 (S.D. Fla. 2019) ("Carnival's argument regarding the reasonableness of Plaintiffs' belief in the crewmember's manifestations is a question of fact not suitable for resolution on a motion to dismiss."); *see also Lienemann v. Cruise Ship Excursions, Inc.*, 2018 WL 6039993, at *6 (S.D. Fla.

---

[2] GEICO's practice is analogous to the "negative option" discussed in *Consentino* and the cases it cited: GEICO added drivers and charged more unless the insured opted out within 15 days of receiving a speculative email notice. That's no different from automatically charging for an extended warranty or service plan unless the customer actively declines—something courts repeatedly condemn under FDUTPA.

Nov. 15, 2018); *see also Gallon v. GEICO Gen. Ins. Co.*, 150 So. 3d 252, 255 (Fla. Dist. Ct. App. 2014) (explaining questions regarding reasonableness are "generally a question of fact").[3]

Further, if the Court ruled on reasonableness, the notice language is unreasonable as a matter of law. The policy includes no information on GEICO's phantom 15-day email plan. GEICO's insurance policy, at minimum, should expressly tell insurers about its 15-day email plan for adding potential strangers. Only providing 15 days' email notice is also an unreasonable method and unreasonably short period given other notices are mailed by United States Post Office certificate of mailing and give 45-days' notice. (Dkt. 1-1 at 36–37).

And under Florida law, automatic "negative option" practices—where consumers are penalized unless they affirmatively opt out—are inherently suspect. *See Gold Coast Racing, Inc. v. The Home Depot USA*, 2006 WL 4579688, at *2 (S.D. Fla. Feb. 6, 2006). FDUTPA protects consumers from this kind of bait-and-penalize approach, especially when based on speculative and unverified third-party data and vague warnings. That Kane didn't respond to GEICO's ambiguous email in 15 days doesn't cleanse the underlying unfairness of the scheme. GEICO's deceptive acts and practices of inflating Kane's

---

[3] "Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (cleaned up).

insurance premiums, which he paid, no doubt "caused" harm and damaged Kane. Count IV is sufficiently pled, so GEICO's request to dismiss the FDUTPA claim should be denied. *Maor*, 303 F. Supp. 3d at 1327.

## V.    The Voluntary Payment Doctrine is Inapplicable

GEICO's reliance on the voluntary payment doctrine is unavailing for procedural and substantive reasons. "[T]he voluntary payment doctrine, an affirmative defense, provides that when one makes a payment of any sum under a claim of right to the payment with knowledge of the facts by the person making the payment, such a payment is voluntary and cannot be recovered back." 39 Fla. Jur 2d Payment and Tender § 19. "The Florida voluntary payment doctrine has narrow application." *Id*.; *see also Brink v. Raymond James & Associates, Inc.*, 341 F. Supp. 3d 1314 (S.D. Fla. 2018).

### a. GEICO's voluntary payment doctrine defense is premature and "may not be raised on a motion to dismiss."

The "voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss, as it entails a fact-based inquiry not suited for resolution on a Rule 12(b)(6) motion." *Maor*, 303 F. Supp. 3d at 1324; *see also Schojan v. Papa John's Int'l Inc.*, 34 F. Supp. 3d 1206, 1211 (M.D. Fla. 2014) (collecting cases). Whether Kane paid the inflated premiums "with full knowledge of the situation is a question of fact that the Court cannot reconcile on a motion to dismiss." *Maor*, 303 F. Supp. 3d at 1324.

17

### b. The voluntary payment defense is unavailable in contract cases.

Pretending GEICO's voluntary payment doctrine defense is not premature (it is), GEICO would still lose. The voluntary payment doctrine defense ***"is not available in contract cases*.**" *Avatar Props., Inc. v. Gundel*, 372 So. 3d 715, 724 (Fla. Dist. Ct. App. 2023), review denied, No. SC2023-0946, 2023 WL 7220822 (Fla. Nov. 2, 2023) (emphasis added) (citing 725.04, Florida Statutes). This is fatal to GEICO's purported voluntary payment doctrine defense. But GEICO's defense fails for other reasons, too.

### c. The voluntary payment doctrine is inapplicable to Kane's FDUTPA claim.

The voluntary payment doctrine is unavailable to FDUTPA claims because a party cannot "waive the protections of the Florida Deceptive and Unfair Trade Practices Act." *Avatar Prop., Inc.*, 372 So.3d at 724 (citing *Holt v. O'Brien Imps. of Fort Myers, Inc.*, 862 So. 87, 89 (Fla. 2d DCA 2003)). "The FDUTPA is designed to protect not only the rights of litigants, but also the rights of the consuming public at large. Any attempt to limit FDUTPA liability is contrary to public policy." *Holt*, 862 So. 2d at 89. Because the voluntary payment doctrine is grounded in waiver and consent, *Gov't Emps. Ins. Co. v. Glassco Inc.*, 2021 WL 4391717, at *18 (M.D. Fla. Sept. 24, 2021), letting it defeat a FDUTPA claim would be an impermissible waiver of consumer

protection rights. Courts across the country have rejected applying voluntary payment to their similar unfair trade practices statutes.[4]

### d. The voluntary payment doctrine is not applicable to any of Kane's claims because his payments were not voluntary.

GEICO wrongly contends Kane's payments were "voluntary" so "[t]he voluntary payment doctrine bars Kane from now claiming that these payments were unjust or are subject to restitution." (Dkt. 14 at 16). Florida law requires drivers to maintain continuous car insurance coverage to lawfully operate and register a vehicle. According to the Florida Department of Highway Safety and Motor Vehicles (FLHSMV), failure to maintain coverage can result in the suspension of a driver's license and vehicle registration, along with reinstatement fees of up to $500. *See* https://www.flhsmv.gov/insurance/. Kane, like any Florida driver, had no practical choice but to pay the inflated premiums to maintain legally required coverage and avoid severe administrative penalties. These payments were not voluntary in any meaningful legal sense—they were made under economic duress and statutory compulsion. *State Farm Mut. Auto. Ins. Co. v. LaRocca*, 685 F. Supp. 3d 1354, 1363 (M.D. Fla. 2023); *see also Avatar Prop., Inc.*, 372 So.3d at 724 ("Even in noncontract cases to which the voluntary

---

[4] *See e.g.*, *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 727 (Mo. 2009); *Indoor Billboard/Wash. Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 170 P.3d 10, 24 (2007); *Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 339-40 (Mo.2007); *Ramirez v. Smart Corp.*, 371 Ill. App.3d 797, 863 N.E.2d 800, 810 (2007); *Pratt v. Smart Corp.*, 968 S.W.2d 868, 872 (Tenn. Ct. App.1997).

payment defense would otherwise apply, it does not preclude recovery if the payment was made 'under compulsion or coercion.'")

## CONCLUSION

GEICO asks this Court to bless a practice that no insured would expect, and no contract allows: adding complete strangers to a policy, inflating premiums based on guesswork, and treating silence as binding consent. That is not an "adjustment"—it is an unauthorized rewriting of the contract, and a breach of the most basic promise insurers make: to charge fairly for agreed risk, not imagined risk.

The policy is silent on this scheme. But the "Persons Insured" clause expressly contradicts it. And Florida law doesn't permit insurers to invent new obligations by default. Kane has alleged a valid contract, a material breach, and concrete harm. Nothing more is required to proceed. GEICO's motion seeks an early escape from accountability. But the contract, the law, and common sense all point the other way. The motion to dismiss should be denied.

<table>
<tr><td>

**ONDERLAW, LLC**

Martin L. Daesch, Admitted PHV
Jesse B. Rochman, Admitted PHV
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
</td><td>

**DAPEER LAW, P.A.**

By: */s/ Rachel Dapeer*
　Rachel Dapeer, Esq.
　***Lead Counsel for Plaintiff***
　Florida Bar No. 108039
　520 South Dixie Hwy, # 240
　Hallandale Beach, FL 30090
　Telephone: 786-963-5165
　Email: rachel@dapeer.com
</td></tr>
</table>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

filed via CM/ECF on June 12, 2025, and that a courtesy copy was served upon

all counsel of record, via the Court's generated email notification system.

*/s/ Rachel Dapeer*

21