**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ALLISON KANE, *individually,*
*as Personal Representative of the*
*Estate of Richard Kane, and for*
*all others similarly situated,*

Plaintiff,

v. Case No. 6:25-CV-532-JSS-LHP

GEICO CASUALTY COMPANY,

Defendant.
_____________________________/

**GEICO CASUALTY COMPANY'S OBJECTIONS AND RESPONSES**
**TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION**

Defendant GEICO CASUALTY COMPANY ("***GEICO***" or "***Defendant***") objects and responds to the First Requests for Production by Plaintiff ALLISON KANE, individually and as Personal Representative of the Estate of Richard Kane ("***Kane***" or "***Plaintiff***"),[1] as follows:

[1] The First Requests for Production was initially served by Plaintiff Richard Kane on Geico General Insurance Company. Since then, the operative complaint in the above-captioned proceeding has been amended twice by interlineation, substituting Allison Kane in her individual capacity and capacity as Personal Representative of the Estate of Richard Kane as named Plaintiff and GEICO Casualty Company as Defendant. As such, these objections and responses are to be construed as being on behalf of GEICO Casualty Company, only, in response to First Requests for Production by Allison Kane in her individual capacity and capacity as Personal Representative of the Estate of Richard Kane.

## PRELIMINARY STATEMENT

A. The following responses are based on information currently available to GEICO and believed to be accurate following a reasonable investigation. Discovery and investigation are ongoing. GEICO reserves all rights to supplement, revise, or amend these responses if additional information becomes available through discovery or other means. GEICO also reserves the right to produce or use any information or documents discovered after the service of these responses in support of or in opposition to any motion, during any deposition, or at a hearing. These responses are made without prejudice to GEICO's right to rely on subsequently discovered facts.

B. No incidental or implied admissions of fact are made by GEICO through the responses below. The only admissions are express admissions. The fact that GEICO has produced or will produce any documents requested herein may not be taken as an admission that GEICO accepts or admits the existence of any fact set forth or assumed by such request, or that such response constitutes admissible evidence. The fact that GEICO has responded to part or all of any request for production is not intended and shall not be construed to be a waiver by GEICO of all or any part of any objection to any request.

C. GEICO will not produce any documents until there is a confidentiality agreement between the parties in place. Once the parties finalize

and stipulate to a confidentiality agreement, GEICO's production of documents will be subject to the terms of that confidentiality agreement. Inadvertent disclosure and/or production of privileged information by or on behalf of GEICO shall not constitute waiver of any applicable confidentiality, privilege, or doctrine, including, but not limited to, objections on the basis of competency, confidentiality, relevance, materiality, privilege, and/or admissibility as such objections may apply at trial or otherwise in this action. GEICO's responses to the requests are made without waiving any objections regarding competency, confidentiality, relevance, materiality, privilege, or the admissibility of such information for any purpose.

D. GEICO objects to the definition of the term "GEICO" to the extent that it includes its parent company, any subsidiaries, or any other related entity. GEICO's responses to Kane's First Request for Production are not made on behalf of any company other than GEICO Casualty Company.

E. GEICO objects to the term "Auto Driver Notice(s)," as there is no such notice, policy, or formal communication by that name at GEICO. GEICO presumes that Plaintiff is referring to the type of communication that is attached as Exhibits A and B to GEICO's Rule 12(b)(6) Motion, and will refer to such as a "Risk Alert Notice."

F. GEICO objects to the extent these requests assume the propriety or clarity of Kane's proposed class definitions, which are vague, overbroad, and not amenable to objective identification from GEICO's records. The proposed definitions rely on imprecise and factually inaccurate terms such as "automatically" and "without any action taken by the insured," which ignore the 15-day response window and fail to exclude insureds who affirmatively or knowingly accepted the addition of an undisclosed youthful driver. The definitions also improperly include insureds who suffered no harm and contain no temporal limitation, rendering them facially overinclusive.

Further, the proposed class definitions suffer from fatal predominance and manageability issues that cannot be cured. While GEICO can identify which policies had drivers added, the contracts expressly allow such additions. And in the subset of policies where an undisclosed youthful driver was added by underwriting, any such addition likely resulted from a policyholder's failure to object within the 15-day notice period, undermining any claim of harm. Additionally, within that subset, where it turns out a policyholder should not have been added to a policy for any given reason, policyholders who received refunds or credits for any amount attributable to the added driver suffered no injury. In some cases, the timing, scope, or circumstances of any addition, removal, refund, or credit may further limit any potential harm.

Finally, determining whether a driver was subsequently removed, the reason for removal, or whether any refund or credit for charges attributable to the added driver was issued requires a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member. Even after such a review, much of the necessary information may not be recorded in the files and would require extensive analysis by GEICO's underwriting team or direct outreach to current or former policyholders to determine what occurred and whether the addition or removal of a driver was proper (*e.g.*, whether the added driver in fact was a member of the customer's household). Because these inquiries are inherently individualized and cannot be resolved on a class-wide basis, this subject matter is unsuitable for class treatment.

G. GEICO objects to any request seeking production of documents related to a national class as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence at this stage in this litigation. Certification of a national class is unlikely and premature. A national class is impossible because significant variations in state laws and GEICO's contract language undermine the uniformity required for class certification, making common treatment of claims unfeasible. Furthermore, it is premature to consider a national class at this stage, as no class certification motion

has been filed and discovery remains in its initial stages. Accordingly, the request for documents that apply to a national class is disproportionate to the needs of the case. Requiring GEICO to collect and produce documents beyond Florida imposes an undue burden and expense that is not justified at this time. Without waiving objections to the certifiability of a Florida class, GEICO will produce documents limited to Florida.

H. GEICO objects to the request for production of documents outside the applicable statute of limitations period as overly broad, unduly burdensome, and not proportional to the needs of the case. Any documents dated beyond the statute of limitations for the claims asserted in Florida are irrelevant to the claims and defenses in this litigation. Without waiving this objection, GEICO will respond and provide information for claims asserted in Florida, in accordance with the applicable statute of limitations.

I. GEICO objects to the requests on the grounds that they broadly demand that GEICO produce "all" documents relating to assorted subject matters, many of which have little to no bearing on the claims and defenses asserted in this case. GEICO will interpret the requests in a reasonable manner that is proportionate to the needs of the case, considering the issues in controversy and the relative burdens of proof.

J. GEICO objects to the definition of "ESI" and the instructions related to "ESI" as the parties have not agreed to an ESI protocol, including, but not limited to, custodians, search terms, date ranges, et cetera. GEICO further objects to this instruction on grounds that it seeks to impose a burden beyond the scope of Federal Rules of Civil Procedure 26 and 34.

K. GEICO objects to producing, or placing on a privilege log, any documents created, received or prepared after March 25, 2025, on the grounds that, after that date, communication between the parties concerning the claim was conducted through or at the direction of counsel.

L. This Preliminary Statement is incorporated into each of the responses set forth below, and into each and every amendment, supplement, or modification to these responses hereinafter provided.

**OBJECTIONS AND RESPONSES**

**1. Produce all records that show GEICO's policies, procedures, training materials, or internal presentations relating to the practice of automatically adding drivers to insureds' insurance policies after sending an Auto Driver Notice.**

RESPONSE: GEICO objects to this request on the grounds that it is based on a fundamentally incorrect and misleading premise. GEICO does not "automatically" add drivers to insureds' policies. There is no policy, practice, or procedure at GEICO by which drivers are added without first notifying the insured and providing an opportunity to respond, clarify, or dispute the

information. GEICO also objects to the request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, and as overbroad and unduly burdensome insofar as it seeks documents beyond those reasonably related to the issues in this case. Subject to and without waiving these objections, GEICO agrees to produce responsive documents applicable to GEICO's policies, procedures, training materials, or internal presentations concerning detection of undisclosed youthful drivers and Risk Alert Notices in Florida over the past five (5) years.

**2. Produce all scripts, call center guidelines, or other instructions used by GEICO representatives when handling insured disputes concerning Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." GEICO also objects as overbroad and unduly burdensome insofar as it calls for drafts, preliminary versions, or materials unrelated to finalized scripts, call center guidelines, or instructions specifically addressing insured disputes concerning undisclosed youthful drivers, or to the extent it seeks privileged, confidential, or proprietary information. Subject to and without waiving these objections, GEICO agrees to produce scripts, call center guidelines, or other instructions its representatives use when handling disputes relating to Risk Alert Notices in Florida over the past five (5) years.

**3. Produce GEICO's document retention policies applicable to records concerning insurance policy changes and Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to the phrase "insurance policy changes" as undefined and vague, making it difficult to ascertain the scope of the documents requested. To the extent this term seeks documents unrelated to the detection and/or addition of an undisclosed youthful driver, it is overbroad and not relevant to the claims or defenses in this case. GEICO further objects to the request as overbroad and unduly burdensome insofar as it seeks drafts, preliminary versions, or policies unrelated to the issues in this case, or to the extent it seeks confidential or proprietary information. Subject to and without waiving these objections, GEICO agrees to produce GEICO's current document retention policies applicable to detection of undisclosed youthful drivers and Risk Alert Notices in Florida.

**4. Produce all versions of Auto Driver Notices sent to insureds.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." GEICO also objects to this request to the extent it seeks drafts, preliminary versions, or other documents that are not final and disseminated. Subject to and without waiving these objections, GEICO agrees to produce responsive documents related to GEICO's Risk Alert Notice in Florida over the past five (5) years.

**5. Produce exemplar insurance policy forms used for Florida and nationwide insureds during the past ten (10) years.**

RESPONSE: GEICO objects to this request as overbroad and unduly burdensome insofar as it seeks documents beyond those applicable to Florida operations or that fall outside the applicable five (5) year statute of limitations. Subject to and without waiving these objections, GEICO agrees to produce responsive exemplar insurance policy forms applicable to GEICO in Florida over the past five (5) years.

**6. Produce Plaintiff's complete insurance policy, including declarations pages and revisions, from issuance through the present.**

RESPONSE: GEICO will produce documents responsive to this request.

**7. Produce all consumer report data or other third-party data used to support preparation and delivery of Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices" and reference to "third-party data." For clarity, the data GEICO relies on to support the preparation and delivery of notices related to undisclosed youthful drivers is not merely generic third-party data; it consists of records obtained from the Florida Department of Motor Vehicles. Additionally, GEICO objects to this request to the extent that it seeks confidential, proprietary, or commercially sensitive information. This includes data obtained from, or derived from, consumer reporting agencies, which is subject to the Fair Credit Reporting Act and associated restrictions governing its use and disclosure. GEICO further

objects to the extent the request seeks or may include personally identifiable information (PII) of insureds or third parties, which may be protected by privacy laws or regulations. To the extent responsive documents contain such information, GEICO reserves the right to redact or withhold it in accordance with applicable law. Subject to and without waiving these objections, GEICO agrees to produce responsive documents GEICO used to support preparation of its Risk Alert Notices relevant to Kane's claims.

**8. Produce all communications with third-party data vendors or consumer reporting agencies concerning the identification of potential additional drivers for Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to this request to the extent that it seeks confidential, proprietary, or commercially sensitive information. This includes data obtained from, or derived from, consumer reporting agencies, which is subject to the Fair Credit Reporting Act and associated restrictions governing its use and disclosure. GEICO further objects to the extent the request seeks or may include personally identifiable information (PII) of insureds or third parties, which may be protected by privacy laws or regulations. To the extent responsive documents contain such information, GEICO reserves the right to redact or withhold it in accordance with applicable law. Subject to and without waiving these objections, GEICO agrees to produce communications with third-party data vendors or consumer reporting agencies relevant to Kane's claims concerning the detection of undisclosed youthful drivers.

**9. Produce all records concerning how third-party addresses are matched, linked, or associated with insureds for purposes of preparation and delivery of Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to this request to the extent that it seeks confidential, proprietary, or commercially sensitive information. This includes data obtained from, or derived from, consumer reporting agencies, which is subject to the Fair Credit Reporting Act and associated restrictions governing its use and disclosure. GEICO further objects to the extent the request seeks or may include personally identifiable information (PII) of insureds or third parties, which may be protected by privacy laws or regulations. To the extent responsive documents contain such information, GEICO reserves the right to redact or withhold it in accordance with applicable law. Subject to and without waiving these objections, GEICO agrees to produce records concerning how third-party addresses are matched, linked, or associated with insureds for purposes of preparation and delivery of Risk Alert Notices in Florida over the past five (5) years.

**10. Produce all communications with third parties (excluding attorneys) in which GEICO discussed potential litigation risk arising from Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto

Driver Notices." Subject to and without waiving this objection, GEICO represents that it has no responsive documents in its possession, custody, or control.

**11. Produce records that describe the databases, record systems, and data fields from which information can be obtained regarding Auto Driver Notices, automatic driver additions, premium increases, reversals, or disputes, and how such data can be queried to identify affected policyholders.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to this request on the grounds that it improperly asserts that GEICO engages in "automatic driver additions" to insureds' policies. GEICO has no policy, practice, or procedure by which drivers are added without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. Further, GEICO objects to this request as compound, overly broad, and vague. It combines multiple distinct inquiries into a single request, including "automatic driver additions," premium increases, and reversals or disputes, making the scope unclear and the burden disproportionate to the needs of the case. Subject to and without waiving this objection, GEICO represents that it has no responsive documents in its possession, custody, or control.

**12. Produce records sufficient to identify the number and identity of insurance policies with increased premiums due to persons added after sending**

**Auto Driver Notices, including the data fields and databases from which this information can be ascertained.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to this request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, the request seeks records that would require a manual review of multiple highly voluminous data management systems, and that review would need to be repeated anew for each individual putative class member, which would be extremely burdensome, especially where the vast majority of these individuals suffered no injury and would not be members of a putative class, assuming a class could ever be certified. Identifying such information would also necessitate making assumptions regarding the reasons for premium increases, which risks inaccuracies, speculation, and incomplete data. GEICO further objects to the extent the request seeks or may include personally identifiable information (PII) of insureds or third parties, which may be protected by privacy laws or regulations. Subject to and without waiving these objections, GEICO does not have any document that it maintains in the ordinary course of business that has the specific information covered by this request. However, GEICO is willing to meet and confer with Plaintiff regarding the creation of a document with information covered by this request.

**13. Produce records, including statements, invoices, or other documents, showing premium increases attributable to drivers added after sending Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to this request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. GEICO does not maintain a centralized or comprehensive record of all premium increases following the addition of an undisclosed youthful driver. Rather, such information exists across multiple systems and applications containing thousands of tables and records that are not structured to isolate the premium impact of a single policy change, and any attempt to do so would be burdensome and may not yield reliable results. Identifying such information would necessitate making assumptions regarding the reasons for premium increases, which risks inaccuracies, speculation, and incomplete data. GEICO further objects to the extent the request seeks documents related to absent class members, which is improper and premature prior to class certification. Subject to and without waiving these objections, GEICO will produce records, including statements, invoices, or other documents, limited to Kane's policy, regarding premium increases following a Risk Alert Notice.

**14. Produce all records and data fields used to calculate the increased premium for Plaintiff's policy, including records sufficient to show the**

**methodologies GEICO uses to calculate revised premiums after sending an Auto Driver Notice.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notice." Additionally, GEICO objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of information relevant to Plaintiff's damages. The request for all records and data fields used to calculate the increased premium for Plaintiff's policy, including the methodologies employed, is disproportionate to the needs of the case. Any damages calculation depends solely on the amount of the premium increase, not the specific manner in which that increase was determined. Moreover, the premium calculation methodologies are complex, highly individualized, and constitute GEICO's confidential and proprietary trade secrets. Disclosure of this information would likely result in substantial competitive harm to GEICO. GEICO further objects to this request to the extent it seeks documents or information concerning other policyholders, as such materials would reveal or risk revealing confidential and private information of third parties. Subject to and without waiving these objections, GEICO will produce responsive documents applicable to GEICO concerning how it calculates premiums in Florida over the past five (5) years.

**15. Produce all records showing refunds, reversals, or adjustments to premiums following disputes related to Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrases "Auto

Driver Notices" and "disputes." Further, GEICO objects to this request on the grounds that it is overly broad and unduly burdensome, and disproportionate to the needs of the case. GEICO does not maintain a centralized or comprehensive record specifically showing refunds, reversals, or adjustments to premiums following a dispute related to an undisclosed youthful driver. Identifying such information would require a manual review of multiple highly voluminous data management systems encompassing information pertaining to millions of policyholders, including the thousands of policyholders who received a Risk Alert Notice. Identifying the information would also necessitate GEICO making assumptions regarding the reasons for such transactions, which risks inaccuracies, speculation, and incomplete data. Subject to and without waiving these objections, GEICO will produce responsive documents, limited to Kane's policy, showing any refunds, reversals, or adjustments following disputes related to Risk Alert Notice.

**16. Produce all internal cost-benefit, profit, or financial analyses concerning the Auto Driver Notice practice.**

<u>RESPONSE</u>: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notice." Moreover, GEICO objects to this request on the grounds that it seeks confidential, proprietary, and commercially sensitive financial analyses, including internal cost-benefit and profit information. Disclosure of such information would likely cause competitive harm to GEICO. Subject to and without waiving these objections, GEICO agrees to produce responsive documents applicable to GEICO's internal cost-benefit, profit, or financial analyses concerning Risk Alert in Florida over the past five (5) years.

**17. Produce all complaints from insureds disputing the addition of persons through Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrases "Auto Driver Notices" and "complaints." Moreover, GEICO objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case. GEICO does not maintain a centralized or comprehensive record of all complaints, as many complaints are made informally via phone calls or online chats. Identifying such complaints would require a manual review of a highly voluminous data management system encompassing information pertaining to millions of policyholders, including the tens of thousands of policyholders who received a Risk Alert Notice. Subject to and without waiving these objections, GEICO agrees to produce responsive written complaints received by GEICO concerning its process of detecting undisclosed youthful drivers in Florida over the past five (5) years.

**18. Produce all internal communications concerning potential legal risk, customer dissatisfaction, or regulatory concerns arising from Auto Driver Notices.**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects on the grounds that the request is overbroad, unduly burdensome, and may seek disclosure of privileged and confidential communications protected by the attorney-client privilege and work product doctrine. Compelling production of such privileged materials, to the

extent there are any, would be legally improper and disproportionate to the needs of this litigation. Subject to and without waiving these objections, GEICO will produce responsive communications concerning customer dissatisfaction after a Risk Alert Notice was received and not answered, resulting in the addition of an undisclosed youthful driver to the policy. After a good faith, reasonable search, GEICO is not aware of any internal communications concerning potential legal risk or regulatory concerns related to this subject.

**19. Produce all records referencing internal audits, risk assessments, actuarial reports, or underwriting analyses concerning Auto Driver Notices or adding additional drivers to an insured's policy after sending Auto Driver Notices(s).**

RESPONSE: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notices." Additionally, GEICO objects to this request as overly broad, unduly burdensome, and seeking confidential and proprietary information, including internal audits, risk assessments, actuarial reports, and underwriting analyses. Such documents contain sensitive business information and trade secrets, disclosure of which would likely cause competitive harm. Subject to and without waiving these objections, GEICO agrees to produce responsive records referencing internal audits, risk assessments, actuarial reports, or underwriting analyses concerning Risk Alert Notices or the addition of undisclosed youthful drivers following a Risk Alert Notice in Florida over the past five (5) years.

**20. Produce all communications between GEICO and regulators concerning Auto Driver Notices.**

<u>RESPONSE</u>: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrases "Auto Driver Notices" and "regulators." Subject to and without waiving this objection, GEICO will produce responsive communications with regulators concerning Risk Alert Notices.

**21. Produce all records, including communications, concerning the addition of Carter K. Riddle and Angelina Marchand to Plaintiff's insurance policy, including communications with those individuals.**

<u>RESPONSE</u>: GEICO agrees to produce records, including communications, concerning the addition of Carter K. Riddle and Angelina Marchand to Plaintiff's insurance policy. After a good faith, reasonable search, GEICO is not aware of any communications with those individuals.

**22. Produce any marketing, public relations, or communications plans used to explain, promote, or justify the Auto Driver Notice practice.**

<u>RESPONSE</u>: GEICO objects to this request as vague and ambiguous in its use of undefined, misdefined, and misleading terminology, including the phrase "Auto Driver Notice." Subject to and without waiving this objection, GEICO represents that it has no documents responsive to this request in its possession, custody, or control.

Dated this 9th day of April, 2026

*/s/ Elisabeth L. Rabin*
Harvey W. Gurland, Jr.
Florida Bar No.: 284033
Elisabeth L. Rabin
Florida Bar No.: 1025636
DUANE MORRIS LLP
201 South Biscayne Blvd., #3400
Miami, Florida 33131
Telephone: (305) 960-2200
Facsimile: (305) 397-1874
hwgurland@duanemorris.com
erabin@duanemorris.com

*Counsel for Defendant Geico Casualty Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of April, 2026, I caused the foregoing document to be electronically served via email to the following counsel of record:

Rachel Dapeer, Esq.
Florida Bar No.: 108039
DAPEER LAW, P.A.
520 South Dixie Hwy, #240
Hallandale Beach, FL 30090
Telephone: (786) 963-5165
rachel@dapeer.com

and

Martin L. Daesch, *admitted PHV*
Jesse B. Rochman, *admitted PHV*
ONDERLAW, LLC
110 E. Lockwood Ave.
St. Louis, MO 63119
Telephone: (314) 963-9000
Facsimile: (314) 963-1700
daesch@onderlaw.com
rochman@onderlaw.com

*Counsel for Plaintiff Allison Kane*

*/s/ Elisabeth L. Rabin*
Elisabeth Rabin