**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

ALLISON KANE, individually, as Personal Representative of the Estate of Richard Kane, and for all others similarly situated,

Plaintiff,

v.

GEICO CASUALTY COMPANY,

Defendant.

Case 6:25-cv-00532-JSS-LHP

**Jury Trial Demanded**

# Second Amended Class Action Complaint

Plaintiff Allison Kane ("Plaintiff"), individually, as Personal Representative of the Estate of Richard Kane, and for all others similarly situated, sues GEICO Casualty Company ("GEICO"):

## Nature of the Action

1. This class action challenges GEICO's practice of adding unrequested drivers to insureds' automobile policies based on unverified third-party data and then treating the insured's silence as consent.

2. Through that practice, GEICO sends a notice stating that a person not listed on the policy may be associated with the insured and/or the insured's address and will be added to the policy unless the insured responds within a short period. GEICO then adds the person to the insured's policy as a driver when its records reflect either no response or inadequate proof.

3. GEICO's practice causes insureds to pay increased premiums for individuals they did not request, did not authorize, did not know, and/or who did not reside in their households or use their vehicles.

4. GEICO policies permit premium adjustments when information is "incorrect, incomplete or changed." (*See*, *e.g.*, Exhibits 1–9 ("Policy" or "Policies")). No GEICO policy, including the Policies, authorizes GEICO to make up facts, inflate risk, or manufacture consent through silence.

5. Nor do the Policies authorize GEICO to add unrequested individuals in conflict with the Policies' "Persons Insured" provisions, which require express or implied permission for someone to be treated as a covered driver.

6. The challenged practice breaches the Policies.

7. The challenged practice violates the covenant of good faith and fair dealing.

8. Alternatively, the challenged practice unjustly enriches GEICO.

9. Plaintiff brings this action individually, as Personal Representative of the Estate of Richard Kane, and for all similarly situated insureds whose premiums were increased because GEICO added unrequested individuals to their policies through the challenged practice.

## Jurisdiction and Venue

10. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and many proposed class members are citizens of Florida. GEICO is a citizen of Maryland and Nebraska.

11. Venue is proper in this Court because Plaintiff resides in Florida, a material amount of the acts and conduct complained of herein was directed toward Plaintiff and other class members in Florida, and Plaintiff and many putative class members were injured in Florida.

## The Parties

12. Plaintiff is a citizen of Florida. At all relevant times, Plaintiff and Richard Kane were named insureds under one or more automobile insurance policies issued by GEICO. The Estate of Richard Kane is pending in Palm Beach County as case number 50-2025-CP-005609-XXXA-NB and Plaintiff is the named Personal Representative.

13. GEICO is a Nebraska corporation with its principal office located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO is authorized to write, and actively writes, private-passenger automobile insurance in Florida and elsewhere, using centralized policy forms and systems shared with other GEICO-branded entities.

## Factual Allegations

14. GEICO refers to the challenged practice as part of its "driver discovery program."

15. Allison Hoskins, GEICO's Senior Manager, Underwriting Efficiency & Information Management, has declared she is "responsible for managing and implementing GEICO's driver discovery program, which proactively identifies youthful drivers in GEICO customers' households who are not listed on the customers' policies. In furtherance of those efforts, GEICO's Risk Alert program utilizes third-party data that its vendor obtains directly from each state's respective Department of Motor Vehicles or equivalent agency (e.g., the Division of Motor Vehicles, Motor Vehicle Administration, etc.) to identify youthful drivers whom those government records indicate reside at GEICO insureds' addresses."

16. GEICO has stated "Allison Hoskins was involved in developing GEICO's use of reliable, FCRA compliant third-party data to identify undisclosed youthful drivers residing at a policyholder's address and to send a Risk Alert Notice to the policyholder."

17. GEICO has stated "GEICO sends a Risk Alert Notice to the policyholder informing them that a youthful driver not listed on their policy has been identified at their address and will be added to the policy unless the policyholder responds within 15 days."

18. When GEICO's records reflect no response or inadequate proof to the Risk Alert was received, GEICO adds the person identified in the Risk Alert to the policy.

19. While Plaintiff and/or Richard Kane were insured by GEICO, GEICO sent an email and/or letter speculating someone not listed on the policy as a named

insured or additional driver "***may*** be a licensed or permitted driver with your address listed as their primary address." (*See* Dkts. 14-1, 14-2; *see also* Exhibit 10).

20. "Risk Alert" refers to any record or communication stating GEICO will automatically add a driver to the policy, based on third-party information, unless the insured acts within a fixed number of days. It includes, without limitation, communications like Dkts. 14-1, 14-2 and Exhibit 10, which are incorporated by reference.

21. No GEICO policy, including the Policies, mentions Risk Alerts or authorizes GEICO to use them.

22. GEICO did no more work to vet the driver identified in the Risk Alerts. Instead, it added a stranger to Plaintiff's policy because no one responded to GEICO within 15 days of the Risk Alert being sent.

23. The Risk Alert said that Carter K. Riddle "must be added to your policy if they use or have ownership in your vehicle(s) and do not carry their own insurance." (*See* Dkt. 14-1).

24. The Risk Alert said that Carter K. Riddle "must be added to your policy if they reside in your household." (*See* Exhibit 10).

25. The Risk Alert said that Angelina K. Marchand "must be added to your policy if they reside in your household and are related to you, or if they use your vehicle and do not carry their own insurance." (*See* Dkt. 14-2).

26. Plaintiff did not and does not know Carter K. Riddle or Angelina K. Marchand.

27. Neither Riddle nor Marchand has ever resided with Plaintiff, used Plaintiff's vehicles, or had ownership in Plaintiff's vehicles.

28. The Risk Alerts said the driver would be added to the policy automatically within fifteen days if no action were taken.

29. Although the Risk Alert says GEICO relied on "information obtained from a consumer reporting agency," the Risk Alert did not provide the underlying data, did not identify the consumer reporting agency used, and did not disclose the basis for the apparent address match.

30. GEICO did not explain how it concluded that Riddle or Marchand were associated with Plaintiff's household.

31. GEICO did not disclose the reliability, limitations, or known inaccuracy rates of the data it relied upon for the Risk Alerts.

32. GEICO later informed Plaintiff the driver was added to the policy as a covered driver "per your request" despite Plaintiff never requesting the driver be added. (*See*, *e.g.*, Exhibit 10).

33. The addition of Riddle and Marchand increased Plaintiff's policy premium, and Plaintiff paid premiums at a wrongly inflated amount. (*See* Dkt. 51-7, incorporated by reference).

34. Upon information and belief, GEICO conducted no investigation to determine whether Riddle or Marchand resided in Plaintiff's household, had any connection to the insured vehicles, and/or were insured elsewhere.

35. Upon information and belief, GEICO's process for disputing these additions was not as simple as the Risk Alerts implied. GEICO routinely refused to remove individuals based solely on the insured's truthful statement that the person did not reside in the household and/or was insured elsewhere.

36. GEICO instead required documentation or third-party verification—requirements not disclosed in the Risk Alerts, not required by the Policy, and often difficult or impossible for insureds to obtain—making it difficult or impossible for insureds to disprove GEICO's unverified assumptions.

37. Upon information and belief, GEICO did not verify residency, did not contact the individuals identified in the Risk Alerts, and did not compare its data to any other reliable source before adding them to the insured's policy.

38. Upon information and belief, although GEICO says that it used information from a consumer reporting agency, GEICO relied on third-party address-matching data and performed no independent verification of the facts necessary to justify adding the identified individuals to the policies.

39. Upon information and belief, GEICO's driver-identification process frequently identifies individuals who have no connection to the insured's household. This occurs because GEICO relies on address-based matching derived from third-party data without verifying whether the identified individual actually resides with the insured or has any relationship to the insured or the insured vehicles.

40. Upon information and belief, a substantial portion of people identified through this process are not known to the policyholder. In many instances, the

identified individuals are former residents of the same address or persons associated with outdated or inaccurate address records.

41. Upon information and belief, GEICO is aware of these limitations, including that its third-party data sources may reflect stale or lagging address information and that address-only matching can produce false positives. Despite this knowledge, GEICO continues to treat such unverified matches as presumptively accurate and uses them as a basis to add drivers and increase premiums.

42. The underlying information obtained from third-parties was not provided to insureds and could not be accessed, reviewed, or meaningfully challenged before GEICO imposed the driver addition and resulting premium increase.

43. Nothing in the Policies authorizes GEICO to add unrequested drivers based solely on unverified address-matching information from a third-party source or to treat an insured's silence as consent.

44. The Policies are silent on any 15-day email warning procedure or Risk Alert. No such mechanism appears anywhere in any GEICO policy, including the Policies.

45. Where the Policies speak, they contradict GEICO's conduct. The "Persons Insured" clause limits coverage to individuals using the vehicle with the insured's express or implied permission, which excludes strangers whose residency was never verified.

46. GEICO's invocation of the Policies' "duty to cooperate" does not permit GEICO to presume that unverified data is correct. The duty to cooperate requires mutual communication, not unilateral acceptance of unverified information.

47. The Policies provide no consequence—let alone authorization for premium increases or driver additions—based on an alleged failure to cooperate with a Risk Alert.

48. If Plaintiff and the Classes failed to cooperate, which they did not, GEICO's potential contractual options were limited by the Policies. GEICO could not create new household risk assumptions, add unrequested drivers, and charge the insured more money based on silence. That consequence does not appear in the Policies.

49. GEICO charged Plaintiff and the Classes inflated premiums for nonexistent risks and for persons who posed no underwriting exposure under GEICO policies, including the Policies.

50. Upon information and belief, GEICO did not confirm whether the individuals identified in the Risk Alerts had any connection to Plaintiff's household or vehicles, whether they were insured elsewhere, or whether they posed any actual underwriting risk.

51. GEICO increased premiums based on the unverified assumption that these individuals resided in Plaintiff's home, without investigating or attempting to determine whether that assumption was correct.

52. GEICO issued Plaintiff and the putative class members substantially similar insurance policies.

53. The policies issued by GEICO to Plaintiff and all putative class members are identical in all material and relevant aspects. The terms in GEICO's policies relevant here are applicable and materially like the terms applicable to Plaintiff and all putative class members.

54. Like Plaintiff, the putative class members were insureds on GEICO automobile insurance policies and had drivers added to their policies after GEICO's records reflected either no response or inadequate proof to a Risk Alert.

55. Plaintiff and the putative class members were improperly charged more than they owed due to GEICO's addition of unrequested drivers to their insurance policies.

56. Class members continued to make payments on their policies despite being charged an improperly inflated amount.

57. Upon information and belief, GEICO has retained the some or all of the payment amounts.

58. GEICO raised Plaintiff's and the Classes' insurance premiums to increase its profits while offering them no additional benefits.

59. Plaintiff and the Classes reasonably expected that only individuals they authorized—or who at least lived in their homes, drove their vehicles, and were not insured elsewhere—would be listed on their insurance policies.

60. GEICO's actions thwarted Plaintiff's and the Classes' reasonable expectation that premiums would increase only for actual changes to verified information, not speculative data misinterpreted or misapplied behind the scenes.

61. GEICO's actions disappointed the reasonable expectations of Plaintiff and the Classes and constituted a conscious and deliberate attempt to profit from information GEICO knew or should have known might be false.

62. Because Florida and other states require continuous auto insurance coverage, Plaintiff and the putative class members had no practical choice but to pay the inflated premium to avoid suspension of their driver's licenses and vehicle registrations and substantial reinstatement fees. These payments were therefore not voluntary in any meaningful legal sense.

## CLASS ALLEGATIONS

63. Plaintiff brings this action individually, as Personal Representative of the Estate of Richard Kane, and as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure for these classes ("Classes"):

***Nationwide Class:***

All persons in the United States:

(a) who were insured by GEICO;

(b) who were sent a Risk Alert or similar communication indicating that a driver had been or would be added based on third-party information;

(c) where GEICO's records reflect that within the applicable response period following that communication the insured either: did not respond or provide adequate proof;

(d) who had a driver added to their policy by GEICO because of that non-response or inadequate proof; and

(e) experienced an increase in premium contemporaneously with that driver addition, as reflected in GEICO's policy or billing records.

***Alternative Nationwide Class:***

All persons in the United States:

(a) who were insured by GEICO;

(b) who were sent a Risk Alert or similar communication indicating that a driver had been or would be added based on third-party information;

(c) where GEICO's records reflect that within the applicable response period following that communication the insured either: did not respond or provide adequate proof;

(d) who had a driver added to their policy by GEICO because of that non-response or inadequate proof; and

(e) for whom GEICO generated or sent a Fair Credit Reporting Act adverse-action notice contemporaneously with adding a driver, stating that the insured received a higher price based on consumer-report information provided by Explore Information Services, LLC.

***Florida Class:***

All persons who were insured under a GEICO automobile insurance policy issued or delivered in Florida:

(a) who were sent a Risk Alert or similar communication indicating that a driver had been or would be added based on third-party information reflecting a Florida address;

(b) where GEICO's records reflect that within the applicable response period following that communication the insured either: did not respond or provide adequate proof;

(c) who had a driver added to their policy by GEICO because of that non-response or inadequate proof; and

(d) experienced an increase in premium contemporaneously with that driver addition, as reflected in GEICO's policy or billing records.

***Alternative Florida Class:***

All persons who were insured under a GEICO automobile insurance policy issued or delivered in Florida:

(a) who were sent a Risk Alert or similar communication indicating that a driver had been or would be added based on third-party information reflecting a Florida address;

(b) where GEICO's records reflect that within the applicable response period following that communication the insured either: did not respond or provide adequate proof;

(c) who had a driver added to their policy by GEICO because of that non-response or inadequate proof; and

(d) for whom GEICO generated or sent a Fair Credit Reporting Act adverse-action notice contemporaneously with adding a driver, stating that the insured received a higher price based on consumer-report information provided by Explore Information Services, LLC.

64. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

65. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rules of Civil Procedure 23.

***Numerosity***

66. Federal Rule of Civil Procedure 23(a)(1): The Classes are so numerous their individual joinder is impracticable. Plaintiff is informed there are thousands of class members, but the precise number of class members is unknown to Plaintiff.

***Commonality and Predominance***

67. Federal Rule of Civil Procedure 23(a)(2) and (b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether GEICO engaged in the alleged conduct;

b. Whether GEICO's conduct violates its policies, including the Policies;

c. Whether GEICO breached its duty of good faith and fair dealing;

d. Whether Plaintiff and other class members are entitled to equitable relief; and

e. Whether Plaintiff and other class members are entitled to damages and other monetary relief and, if so, in what amount.

***Typicality***

68. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other class members' claims because, among other things, all class members were comparably injured through GEICO's wrongful conduct, and their claims are all based on this conduct.

***Adequacy***

69. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of the other members of the Classes Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to

prosecute this action vigorously. The Classes' interests will be fairly and adequately pursued by Plaintiff and undersigned counsel.

***Superiority***

70. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GEICO, so it would be impracticable for members of the Classes to individually seek redress for GEICO's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**Count I - Breach of Contract**

71. Plaintiff asserts this Count individually and for the Classes.

72. The allegations in this Count are organized by the elements of the cause of action and identify the facts supporting each element.

**Contract and Performance**

73. Plaintiff, Richard Kane, and members of the Classes purchased automobile insurance policies from GEICO.

74. Plaintiff, Richard Kane, and members of the Classes performed their contractual obligations by paying premiums required under their policies.

75. GEICO promised to provide automobile insurance coverage under the terms of those policies.

**Relevant Policy Terms and Lack of Contractual Authority**

76. GEICO's policies, including the Policies, provide for premiums based on information relevant to the insured risk.

77. The Policies allow GEICO to adjust premiums when the information on which the premium is based is actually incorrect, incomplete, or changed.

78. The Policies do not authorize GEICO to add new drivers unilaterally based only on third-party address-matching data.

79. The Policies do not authorize GEICO to treat an insured's silence, non-response, or inadequate response to a Risk Alert as acceptance of a new driver, a new risk, or an increased premium.

80. The Policies do not authorize GEICO to add strangers or other unrequested individuals to insureds' policies.

81. The "Persons Insured" provisions in GEICO's policies, including the Policies, limit liability coverage to drivers who use the vehicle with the insured's express or implied permission.

82. Riddle and Marchand did not have Plaintiff's express or implied permission to use Plaintiff's vehicles.

83. Riddle and Marchand did not reside with Plaintiff, did not use Plaintiff's vehicles, did not have ownership in Plaintiff's vehicles, and were not requested by Plaintiff or Richard Kane to be added to the policy.

**Breach**

84. GEICO breached Plaintiff's policy by adding Riddle and Marchand to the policy based on unverified third-party information and Plaintiff's non-response to Risk Alerts.

85. GEICO further breached Plaintiff's policy by charging increased premiums based on those unauthorized driver additions.

86. GEICO breached the policies of members of the Classes in the same manner by adding unrequested drivers after its records reflected no response or inadequate proof to a Risk Alert.

87. GEICO's known reliance on stale, lagging, or inaccurate address-matching data confirms that the driver additions were not premium adjustments based on information that was actually incorrect, incomplete, or changed, but were instead unilateral risk assumptions created by GEICO.

88. The driver additions were not premium adjustments based on information that was actually incorrect, incomplete, or changed.

89. The driver additions were instead new risk assumptions created by GEICO based on unverified data and non-response.

90. GEICO further breached the Policies by imposing verification requirements not contained in the Policies and by refusing to remove added individuals unless insureds provided evidence or third-party verification not required by the Policies.

91. GEICO had no contractual basis to adjust Plaintiff's or the Classes' premiums upward based on unverified third-party data and silence.

**Causation and Damages**

92. GEICO's breach caused Plaintiff and the Classes to pay more than they owed under their policies.

93. Plaintiff and the Classes were damaged by paying increased premiums attributable to the unauthorized driver additions.

94. At a minimum, Plaintiff and the Classes suffered nominal damages because GEICO materially breached the Policies.

95. Plaintiff and the Classes never agreed, expressly or impliedly, to insure unknown individuals, never consented to expand the insured household, and never accepted any alteration to the rated drivers on their policies.

96. GEICO's conduct materially breached the contracts by imposing obligations and financial charges not found anywhere in the Policies.

**Count II - Breach of the Covenant of Good Faith and Fair Dealing**

97. Plaintiff asserts this Count individually and for the Classes.

98. The allegations in this Count are organized by the elements of the cause of action and identify the facts supporting each element.

**Contractual Discretion and Reasonable Expectations**

99. Plaintiff, Richard Kane, and members of the Classes entered automobile insurance contracts with GEICO.

100. The Policies contain an implied covenant of good faith and fair dealing.

101. The implied covenant required GEICO to exercise any discretion granted under the Policies in good faith and consistent with the parties' reasonable contractual expectations.

102. To the extent GEICO had discretion under the Policies to determine whether rating information was incorrect, incomplete, or changed, GEICO was required to exercise that discretion in good faith.

103. To the extent GEICO had discretion under the Policies to request cooperation from insureds or verify rating information, GEICO was required to exercise that discretion in good faith.

104. To the extent GEICO had discretion under the Policies to adjust premiums based on rating information, GEICO was required to exercise that discretion in good faith.

105. Plaintiff and the Classes reasonably expected that premiums would reflect actual, verified changes in risk.

106. Plaintiff and the Classes reasonably expected that GEICO would not add unrequested drivers to their policies based solely on unverified third-party information and non-response to an unexpected Risk Alert.

107. Plaintiff and the Classes reasonably expected that GEICO would not treat silence as consent to add new drivers, impose new risks, or charge increased premiums.

108. GEICO knew or should have known that its address-based matching process could identify former residents, unrelated persons, and other false positives, yet GEICO treated those unverified matches as presumptively accurate and shifted the burden to insureds to disprove them.

**Breach and Bad-Faith Exercise of Discretion**

109. GEICO breached the implied covenant by using unverified third-party data to fabricate or assume household risk without verifying whether the identified individuals actually resided in the insureds' households, used the insured vehicles, had ownership in the insured vehicles, or lacked other insurance.

110. GEICO breached the implied covenant by shifting the burden to Plaintiff and the Classes to disprove GEICO's unverified information within a short response window.

111. GEICO breached the implied covenant by treating non-response or inadequate proof to an unsolicited Risk Alert as authorization to add a driver and increase premiums.

112. GEICO breached the implied covenant by adding Riddle and Marchand to Plaintiff's policy even though they were strangers to Plaintiff, did not reside with Plaintiff, did not use Plaintiff's vehicles, and were not requested or authorized by Plaintiff.

113. GEICO breached the implied covenant by increasing Plaintiff's and the Classes' premiums based on unverified driver additions.

114. GEICO's conduct was not prompted by honest mistake, bad judgment, or negligence. It was a conscious and deliberate practice designed to increase premiums by leveraging unverified third-party information.

115. GEICO's conduct unfairly frustrated the common purpose of the Policies by causing premiums to reflect unverified and nonexistent risk rather than actual and verified information.

116. GEICO's conduct disappointed Plaintiff's and the Classes' reasonable expectations that GEICO would not add unrequested drivers to their policies and charge more money unless GEICO had a contractual and factual basis to do so.

117. GEICO acted to promote its own financial self-interest in the form of increased premiums rather than exercising any contractual discretion in good faith.

118. GEICO knowingly failed to resolve or rectify the wrongful driver additions and resulting premium increases, even though only GEICO could remove the drivers, rerate the policies, and correct the charges.

**Causation and Damages**

119. As a direct result of GEICO's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Classes paid increased premiums and suffered damages.

**Count III – Unjust Enrichment**
**(In Alternative to Count I)**

120. Plaintiff asserts this Count individually and for the Classes in the alternative to Count I.

121. The allegations in this Count are organized by the elements of the cause of action and identify the facts supporting each element.

**Alternative Basis**

122. Plaintiff pleads this Count to the extent GEICO contends, or the Court determines, that the Policies do not govern the challenged premium increases, that the challenged enrichment was obtained outside the scope of the Policies, or that no adequate contractual remedy exists for the increased premiums GEICO collected through the Risk Alert practice.

123. GEICO added unrequested drivers to Plaintiff's and the Classes' policies based on unverified third-party information and non-response or inadequate proof to Risk Alerts or similar communications.

124. GEICO added those drivers even though it had not verified that the drivers resided in the insureds' households, used the insured vehicles, had ownership in the insured vehicles, lacked other insurance, or otherwise posed actual underwriting risk under the Policies.

**Benefit Conferred, Knowledge, and Retention**

125. GEICO's conduct fell outside the four corners of the Policies because nowhere do the Policies authorize GEICO to fabricate driver relationships, add

unrequested drivers based on unverified data, adjust premiums based on silence, or penalize insureds for failing to respond to an unexpected email or letter.

126. Plaintiff and the Classes conferred a benefit on GEICO by paying increased premiums attributable to the unrequested driver additions.

127. GEICO knew of the benefit because GEICO billed, collected, and retained the increased premiums.

128. GEICO accepted and retained the benefit.

**Inequitable Retention and Restitution**

129. GEICO was unjustly enriched by receiving increased premiums from Plaintiff and the Classes for unrequested drivers who should not have been added to the policies.

130. It would be inequitable for GEICO to retain the increased premiums because GEICO collected them through a process that added unrequested drivers based on unverified third-party information.

131. Plaintiff and the Classes are entitled to restitution of the increased premiums paid to or retained by GEICO.

132. In equity and good conscience, GEICO must provide restitution to Plaintiff and the Classes for the increased premiums collected and/or retained by GEICO.

## Request for Relief

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment that:

a) determines this action may be maintained as a class action under Federal Rule of Civil Procedure 23;

b) certifies the proposed Classes or appropriate alternatives;

c) appoints Plaintiff as class representative for the Classes;

d) appoints undersigned counsel as Class Counsel;

e) enters an order finding that GEICO's actions constitute breaches of the express terms of its insurance policies and/or breaches of the covenant of good faith and fair dealing;

f) awards Plaintiff and members of the Classes actual damages and, at a minimum, nominal damages;

g) awards restitution and/or disgorgement for unjust enrichment to the extent available in the alternative;

h) awards pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

i) awards litigation costs and expenses, and attorney's fees to the extent authorized by applicable law; and

j) grants such other legal and equitable relief as the Court deems appropriate, including specific performance as an alternative to damages.

**DAPEER LAW, P.A.**

Rachel Dapeer, Esq.
***Lead Counsel for Plaintiff***
Florida Bar No. 108039
520 South Dixie Hwy, # 240
Hallandale Beach, FL 30090
Telephone: 786-963-5165
Email: rachel@dapeer.com

**ONDERLAW, LLC**
By: */s/ Jesse B. Rochman*
Martin L. Daesch, Admitted PHV
Jesse B. Rochman, Admitted PHV
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on July 13, 2026, and that a courtesy copy was served upon all counsel of record, via the Court's generated email notification system.

*/s/ Jesse B. Rochman*