# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:25-cv-00532-JSS-LHP

ALLISON KANE, individually, as
Personal Representative of the Estate of
Richard Kane, and for all others similarly
situated,

     Plaintiff,

v.

GEICO CASUALTY COMPANY,

     Defendant.

_____/

## DECLARATION OF TOM EGGENBERGER
## IN SUPPORT OF EXPLORE INFORMATION SERVICES, LLC'S MOTION
## TO QUASH OR MODIFY SUBPOENA UNDER FED. R. CIV. P. 45

I, TOM EGGENBERGER, declare as follows:

1.    I am the Managing Director of Explore Information Services, LLC ("Explore"). I have held this position since November, 2013. I am over the age of eighteen years and am competent to testify to the matters set forth herein. I make this declaration based on my personal knowledge.

### Explore's Relationship with GEICO & RiskAlert® Program

2.    Explore is not a party to this litigation. The Defendant, GEICO Casualty Company, ("GEICO") is a client of Explore. For over twenty-five years, Explore has offered risk management services to a variety of clients, including insurance carriers.

181030528.1

One such service – the only service at issue in this suit – which Explore offers to carriers, including GEICO, is RiskAlert®.

3.     RiskAlert is a program designed to provide automobile insurance carriers with early notification of potential undisclosed youthful drivers residing at policy holder addresses.  The category of drivers referred to as "youthful drivers" encompasses two subcategories: a.) new drivers in a household who have recently obtained a learners permit or a full driver's license; or b.) a fully licensed youthful driver who recently changed their driver's license address to reflect an insured's policy address. RiskAlert is a comprehensive and accurate way to detect potential undisclosed drivers and prioritize rate evasion efforts. Carriers have used services akin to RiskAlert for more than forty years to reduce the number of policy holders who do not update their policy information when a new youthful driver is added to the household, (either though inadvertence or intent). Each year, more claims are generated by the youthful driver segment than any other demographic group.  As a result, youthful drivers pose a high risk of loss and therefore generally increase insurance premiums when added to a policy.

4.     In states that make the information available, Explore obtains its driver license data directly from the state agencies responsible for maintaining driver records, such as the Department of Public Safety, (or other similar state agency charged with issuing driver's licenses).

5.     GEICO utilizes the RiskAlert service only in states where the license data is sourced directly from the official agency responsible for maintaining driver records.

2

In the case of Florida, Explore contracts directly with the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") to purchase and receive a monthly electronic file that contains driver's license information on registered drivers in the State. The electronic file includes the address provided by the driver to the FLHSMV. Explore takes the unaltered government data and loads it into a database along with data it receives from GEICO on current policy holders. Explore's system creates an output file of address matches between the FLHSMV driver's license data and GEICO's policy data, containing youthful drivers (aged 21 and under), with driver's license addresses that match current GEICO policy addresses, but who are NOT listed as members of a policy household. This file of potential undisclosed drivers is transmitted to GEICO electronically each month. Explore does not alter or interpret the output.

### Scope of the Records Subpoena

6.      On June 1, 2026, Explore was served with the Subpoena for Documents, through its registered agent in Florida, issued by Plaintiff, Allison Kane ("Kane") in the above-captioned action (the "Records Subpoena"). The Records Subpoena commanded production of materials on or before June 26, 2026, responsive to 81 document requests (falling under twenty separate topic areas), from January 1, 2019 to present. **(Exhibit A).** After Explore's counsel's conferral with Plaintiff's counsel, the Records Subpoena was reissued on June 25, 2026 to amend the compliance location to Orlando, Florida and the return date to July 10, 2026. **(Exhibit B).**

3

Subsequently, counsel agreed to extend the return date and the deadline for Explore to pursue remedies, raise objections and otherwise respond until July 29, 2026.

7.     GEICO has been a customer of Explore's RiskAlert service for 17 years, and today, Explore provides RiskAlert to GEICO in Florida and other states.

8.     The Records Subpoena is not limited to the specific policy, individuals, transactions, or events at issue in this litigation.  Instead, the requests seek broad categories of information concerning Explore's products, services, business operations, communications, methodologies, data sources, customer relationships, employees, and commercial activities on a nationwide scale over a period exceeding seven years.

9.     Explore's counsel and Plaintiff's counsel conferred over the Records Subpoena by telephone on June 17 and 24, 2026. Explore and Plaintiff agreed the Records Subpoena applies only to RiskAlert. Plaintiff also agreed to limit the timeframe of the Records Subpoena from March 26, 2020 to present.

10.     Explore has agreed to produce documents that are responsive to Topics II, III, IV, V, VI, VII, IX, X, XIV, XIX based on the discovery conferrals between counsel. However, Explore and Plaintiff have not reached an agreement on the scope of the requests as they pertain to the definition of "GEICO" (Exhibit B, Schedule A, No. 2); and a search for documents that cover Explore's relationship with GEICO nationwide.

11.     As to the specific requests discussed during the conferral process, Plaintiff's counsel referred to the twenty roman numeral topics in the Records

4

Subpoena and provided Explore counsel with examples of materials sought by Plaintiff under those categories. However, Plaintiff has not agreed to amend the Records Subpoena to formally narrow the number of requests or the scope. Thus, this declaration is prepared for purposes of assisting in engaging in a good faith conferral and for filing with the Court, if necessary, in support of grounds to quash or modify the Records Subpoena. Explore has separately prepared written responses and objections to the Records Subpoena.

**The Records Subpoena Will Create an Undue Burden and Expense for Explore**

12.    Based upon my personal knowledge of Explore's systems and operations, responsive information is potentially located across multiple repositories of electronically stored systems maintained by Explore. The information sought by the Records Subpoena is not maintained in a single location and cannot be collected through a single or simple search.

13.    Certain requests seek categories of information that would require the creation, compilation, or reconstruction of information rather than the production of existing business records. See, e.g., Topics I – IV, VI, VII, IX – XIV, XVI, XVII, XIX, XX.

14.    Compliance would also require substantial diversion of Explore's personnel from their ordinary business functions. Explore has 75 employees dedicated to sales, marketing, software development, quality assurance, and customer service. All these functions are required to run the business on a daily basis. More precisely, Explore has only 3 employees, (Business Systems Analysts), familiar with the

5

RiskAlert service, who would be required to locate the requested source data across multiple company platforms, design and run system queries, analyze results, and prepare responsive documents to the Records Subpoena. In turn, those results would also need to be checked for accuracy and validated by other Explore staff prior to responding. Since all of Explore's staff are 100% utilized for daily/monthly operations, Explore would be required to divert these resources to focus on the Records Subpoena, thus jeopardizing monthly product production and customer service levels.

15. A preliminary estimate of the number of hours required to fully comply with the Records Subpoena by searching Explore's nationwide production platforms and archived databases for the requested multi-year period, falls into a range of 2,000 to 3,100 hours (250 – 388 labor days). Explore would also be required to compensate its staff involved with this Records Subpoena for overtime hours worked on the response.

16. Beyond the exorbitant personnel resources required to respond to the Records Subpoena as written, the sheer volume of documents that would be produced is overwhelming. I estimate that there are at least 40 custodians across 8 departments that would be required to participate in this Records Subpoena. These custodians would be asked to search a wide variety of systems. I estimate that a search of these custodians' systems, using search terms reasonably calculated to identify responsive documents, would yield approximately 5 – 15 terabytes of data. Retrieval of the information requested would require Explore to develop and implement extraction programs for each system/platform accessed.

6

**The Records Subpoena Seeks Privileged and Other Protected Matter**

17. Additionally, the data maintained by Explore and requested by Plaintiff contains Personal Identifying Information ("PII") which Explore would be required to redact. The PII includes, at a minimum, first and last names, gender, dates of birth ("DOB"), driver's license ("DL") numbers and issue dates.

18. In addition to identifying and collecting responsive materials, Explore would be required to conduct a legal evaluation of the material including a responsiveness review, confidentiality review, privilege review, and redaction review before producing information in response to the Records Subpoena. Thus, before any responsive information could be produced, Explore would need to:

(a) Process and de-duplicate collected ESI;

(b) Conduct a document-by-document review for responsiveness, privilege, and confidentiality;

(c) Review the collected materials to identify information requiring redaction, protection, or other handling consistent with applicable legal, regulatory, contractual, and privacy obligations; and

(d) Prepare a privilege log for any withheld documents.

19. Moreover, Explore's information systems were not designed for litigation-related searches due to several factors including: legacy systems lacking full-text search capability; data stored in proprietary formats requiring specialized extraction tools; databases that cannot be queried by date range without custom programming; and backup drives that would require restoration.

7

20.     Because of the breadth of the Subpoena Requests, the number of categories of information sought, the number of repositories potentially implicated, the technical work necessary to retrieve and compile responsive information, the review obligations associated with the requested materials, and the personnel required to complete those tasks, responding to the Records Subpoena would require substantial time, effort, and expense. These costs would be borne entirely by Explore, a non-party, and impose a considerable financial burden in the absence of a cost-shifting order from the Court.

21.     Further, many of the requests in the Records Subpoena seek information that is in the possession of GEICO based on the parties' relationship. For example, Request Nos. 1-4; 5-8; 14-18; 21-22; 63-72. Plaintiff has not demonstrated that she has first sought this information from GEICO or that seeking such discovery from GEICO would be inadequate.

22.     Plaintiff has not articulated what specific, non-duplicative information she expects to obtain from Explore that justifies imposing an estimated $330,000 - $511,000 in costs, and 2,000 – 3,100 hours of employee time on a nonparty.

### The Records Subpoena Seeks Trade Secret and Other Confidential Commercial Information of Explore and Seeks Exempt and Confidential Government Data Received from FLHSMV

23.     The materials subject to the Records Subpoena include Explore's non-public methodologies, business processes, trade secrets, proprietary business information, confidential commercial information, customer-specific information, pricing information, revenue information, business strategies, internal reports, system

8

documentation, performance analyses, and customer configurations that Explore has developed and maintains in confidence. Disclosure of this information, even under a protective order or confidentiality agreement, creates a risk of competitive harm, breach of contractual obligations to third parties, and privacy concerns.

24. Explore takes steps to maintain the confidentiality of its trade secret, proprietary and commercially sensitive information. Access to such information is restricted to employees whose job responsibilities require access; and who are subject to contractual confidentiality agreements.

25. Explore is a privately owned company. The methodologies, processes, configurations, and business information sought by the Records Subpoena are not publicly available. The value of this information derives in part from the fact that it is not generally known to competitors or the public.

26. Explore competes with other companies that offer services similar to RiskAlert. Explore has spent over thirty years developing its products, methodologies, data processes, customer relationships, and commercial offerings. Disclosure of this information in the public record would provide competitors and other third parties with insight into Explore's internal business operations, methodologies, commercial relationships, and internal processes. Such disclosure could cause Explore financial harm, place Explore at a competitive disadvantage and diminish the value of information that Explore has developed through decades of investment in time and resources. Production of these materials creates significant business risk to Explore, if such materials were to be placed in the public domain (even by inadvertence). As such,

9

a confidentiality agreement or protective order does not alleviate the potential risks to Explore, a non-party, if it were required to produce such materials in this action.

27.    Explore's contract with the FLHSMV also restricts Explore from disseminating information received that is exempt from public records and confidential, based on State and Federal laws.

28.    Explore's contracts with GEICO contain confidentiality clauses. GEICO has produced materials of Explore in this action, that were in GEICO's possession referencing RiskAlert, that GEICO has designated as "Confidential."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 29, 2026 at Eagan, Minnesota.

TOM EGGENBERGER
Managing Director
Explore Information Services, LLC

10