# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | |
|---|---|
| Allison Kane | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 6:25 cv 00532 JSS LHP |
| GEICO Casualty Company | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Explore Information Services, LLC c/o Corporation Service Company
            1201 Hays Street, Tallahassee, Florida 32301 2525

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

   See Schedule A

| Place: Dapeer Law, P.A. | Date and Time: |
|---|---|
| 520 S. Dixie Hwy, #240 | |
| Hallandale Beach, FL 33009 | 06/26/2026 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/29/2026

        *CLERK OF COURT*
                                        OR
                                                /s/Rachel Dapeer, Esq.
_____        _____
   *Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Allison Kane
_____ , who issues or requests this subpoena, are:
Rachel Dapeer, 520 S. Dixie Hwy, #240 Hallandale Beach, FL 33009, Rachel@dapeer.com, 954 799 5914

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:25 cv 00532 JSS LHP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Schedule A

## Definitions

For this subpoena, these definitions apply:

1. **"Explore"** means Explore Information Services, LLC; Solera Holdings, LLC; Solera Holdings, Inc.; and any parent, subsidiary, affiliate, predecessor, successor, division, department, officer, director, employee, agent, representative, contractor, consultant, vendor, or person acting or purporting to act for them.

2. **"GEICO"** means GEICO Casualty Company and any GEICO-affiliated underwriting, servicing, claims, data, technology, administrative, or insurance entity for which Explore provided Risk Alert, RiskAlert, Driver Discovery, driver-identification, household-driver-identification, undisclosed-driver, rating-support, consumer-reporting, or related services concerning policies issued, serviced, rated, renewed, or administered by GEICO Casualty Company.

3. **"Risk Alert," "RiskAlert," "Driver Discovery," and "Risk Alert Program"** mean any system, product, service, data feed, dashboard, report, model, algorithm, process, or decision-support tool used to identify, locate, match, monitor, report, flag, score, classify, or evaluate undisclosed drivers, youthful drivers, permitted drivers, licensed drivers, household members, possible household members, address-associated drivers, or drivers potentially associated with an insurance policyholder's address.

4. **"Driver-Identification Services"** means Risk Alert, RiskAlert, Driver Discovery, and any similar or related service provided by Explore to GEICO to identify, report, monitor, match, score, classify, or evaluate people who may be drivers, licensed drivers, permitted drivers, youthful drivers, undisclosed operators, household residents, possible household residents, or address-associated persons.

5. **"Dashboard"** means any reporting interface, portal, electronic platform, business-intelligence tool, analytics tool, customer portal, or reporting environment used to display, summarize, analyze, export, access, or transmit Risk Alert data, including the RiskAlert Customer Dashboard.

6. **"Match Type"** means any classification, score, category, code, rule, label, field, or descriptor used to characterize, rank, classify, or evaluate a match, including address match, name match, household match, DMV match, model score, confidence score, qualitative match category, ratability score, activity indicator, monitoring indicator, other-carrier-monitoring indicator, or equivalent term.

7. **"Consumer Report"** has the meaning from the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d), and includes any report, file, output, dataset, score, match,

1

flag, indicator, or communication that Explore treats, has treated, or contends should be treated as a consumer report, investigative consumer report, insurance-support-organization output, consumer-file disclosure, or consumer-reporting-agency output.

8. **"Document"** is used in the broadest sense permitted by Federal Rules of Civil Procedure 34 and 45 and includes writings, emails, text messages, instant messages, Teams messages, Slack messages, memoranda, letters, reports, dashboards, presentations, spreadsheets, databases, tables, data dictionaries, schemas, source documents, contracts, statements of work, invoices, file layouts, specifications, logs, codebooks, policies, procedures, manuals, training materials, notes, recordings, metadata, and electronically stored information.

9. **"Data"** means structured or unstructured electronic information, including database tables, fields, records, rows, columns, values, codes, field definitions, exports, flat files, delimited files, spreadsheets, dashboards, logs, metadata, API payloads, JSON files, XML files, data feeds, native database extracts, and any other electronically stored information.

10. **"Communications"** means any written, oral, electronic, digital, or recorded transmission of information, including emails, letters, memoranda, text messages, instant messages, chats, Teams messages, Slack messages, meeting notes, meeting minutes, call notes, presentations, attachments, file transfers, and shared documents.

11. **"Kane Policy"** means any GEICO automobile insurance policy issued to, held by, serviced for, or associated with Richard Kane, Allison Kane, Allison Sucett, or the Kane household, including any policy associated with Carter Kenneth Riddle or Angelina Marchand being identified, reported, added, rated, monitored, or otherwise associated with the policy or address.

12. **"Relevant Period"** means January 1, 2019 through the present, unless a request specifies a different period.

13. **"Including"** means including but not limited to.

14. **"Concerning"** means relating to, referring to, describing, reflecting, evidencing, constituting, identifying, discussing, evaluating, analyzing, summarizing, or bearing upon.

## Instructions

1. Produce documents and data in native electronic form where reasonably available, including spreadsheets, databases, exports, dashboards, flat files, structured data, logs, and emails with attachments and reasonably available metadata.

2. For structured data, preserve field names, field values, formulas, metadata, relationships, and structure. For emails and electronic communications, preserve custodians, recipients, dates, times, subject lines, attachments, and threading information to the extent reasonably available.

3. Produce documents as kept in the ordinary course of business or identify the request to which each production corresponds. If both hard-copy and electronic versions exist, produce the electronic version unless the hard copy has handwritten notes, stamps, highlights, marginalia, or other unique information.

4. If any responsive material is withheld on any basis, including privilege, work product, confidentiality, trade secret, proprietary status, statute, regulation, privacy, contractual restriction, or burden, identify the material withheld and state the specific basis for withholding it.

5. If responsive data cannot be produced in the requested format, identify the format in which it is maintained, the fields available, the burden associated with production, and the format in which Explore proposes to produce it.

6. If any responsive document or data was destroyed, deleted, overwritten, archived, migrated, changed, or is otherwise unavailable, identify the document or data, the date and circumstances of its unavailability, the applicable retention policy, and any backup, archive, log, or alternative source from which it may be obtained.

7. This subpoena is continuing. If additional responsive documents, data, or information are later located, created, restored, recovered, or become available, they must be produced promptly.

8. Plaintiff is willing to receive documents and data subject to the operative confidentiality agreement or protective order in this case, or under an agreed confidentiality designation, without waiving Plaintiff's right to challenge any confidentiality designation.

9. This subpoena does not request privileged attorney-client communications or attorney work product. If responsive non-privileged facts, data, business records, or ordinary-course materials are within or attached to privileged communications, produce the non-privileged portions or attachments.

## Document Requests

3

## I. Agreements and Relationship with GEICO

1. All contracts, master service agreements, user agreements, license agreements, data-use agreements, permissible-purpose certifications, statements of work, order forms, amendments, addenda, renewals, pricing schedules, service-level agreements, confidentiality agreements, data-security agreements, and related agreements between Explore and GEICO.

2. All documents sufficient to identify the Explore personnel, GEICO personnel, business units, departments, account managers, technical contacts, compliance contacts, and executive sponsors responsible for Driver-Identification Services provided to GEICO.

3. All documents sufficient to show when Explore began providing Driver-Identification Services to GEICO, which GEICO entities used or received those services, which states were included, and how the relationship changed during the Relevant Period.

4. All invoices, billing summaries, pricing schedules, payment records, cost schedules, or revenue summaries concerning amounts charged to, billed to, paid by, or received from GEICO for Driver-Identification Services.

## II. Data Provided by GEICO to Explore

5. All documents and data concerning information provided by GEICO to Explore for Driver-Identification Services, including policyholder data, policy numbers or identifiers, names, addresses, garaging addresses, mailing addresses, household information, driver lists, vehicle information, rating information, state identifiers, filtering parameters, suppression criteria, search criteria, and configuration files.

6. All file layouts, file specifications, data dictionaries, schemas, field definitions, API specifications, transmission specifications, sample files, test files, validation rules, and mapping documents concerning data provided by GEICO to Explore.

7. All documents sufficient to show the frequency, format, method, and timing by which GEICO provided data to Explore, including batch transmissions, automated feeds, API calls, secure-file transfers, dashboard uploads, or other data exchanges.

8. All documents concerning the quality, completeness, accuracy, validation, rejection, correction, suppression, or exclusion of data provided by GEICO to Explore.

## III. Data Sources Used by Explore

9. All documents sufficient to identify each source of data used to generate Driver-Identification Services outputs for GEICO, including state motor vehicle

4

departments, divisions of motor vehicles, equivalent state agencies, commercial vendors, public-record sources, address-history sources, change-of-address sources, credit-header or non-credit-header sources, insurance-support organizations, data aggregators, or downstream data providers.

10. For each data source used to generate Driver-Identification Services outputs for GEICO, documents sufficient to show the fields received, update frequency, date received, date last refreshed, retention period, accuracy controls, known limitations, permissible uses, and whether the source identifies current residence, mailing address, license address, garaging address, prior address, employer address, or another address type.

11. All contracts, data-use agreements, licenses, certifications, restrictions, manuals, specifications, field definitions, and source documentation governing Explore's receipt or use of DMV, state-agency, public-record, address-history, license, permit, or driver data used for GEICO.

12. All documents sufficient to show how Explore determines that a driver resides, may reside, is associated with, may be associated with, is linked to, or may be linked to a GEICO insured's address.

13. All documents concerning lag, staleness, update frequency, incorrect addresses, historical addresses, prior residences, duplicate addresses, DMV address limitations, mailing-address limitations, license-address limitations, or other known limitations in the data sources used for GEICO.

## IV. Data and Reports Provided by Explore to GEICO

14. All Risk Alert, RiskAlert, Driver Discovery, match, monitoring, driver-identification, consumer-reporting, or related outputs provided by Explore to GEICO during the Relevant Period.

15. All files, datasets, dashboards, reports, flat files, API payloads, batch transmissions, exports, or other electronic data transmitted or made available by Explore to GEICO concerning Driver-Identification Services.

16. All documents sufficient to show each field, code, value, score, match type, flag, indicator, category, source, source date, confidence level, ratability indicator, activity indicator, monitoring indicator, other-carrier-monitoring indicator, conversion indicator, or suppression indicator included in outputs provided by Explore to GEICO.

17. All documents sufficient to show whether Explore gave GEICO recommended action codes, add-driver indicators, monitor indicators, do-not-add indicators, suppression indicators, other-carrier-monitoring indicators, confidence thresholds, match categories, risk categories, or other decision-support fields.

5

18. All documents concerning how GEICO used or was expected to use Explore outputs to generate letters, emails, notices, underwriting actions, policy notes, adverse-action notices, premium changes, driver additions, driver exclusions, driver removals, renewal changes, rating changes, or other policy changes.

## V. Kane-Specific Materials

19. All Driver-Identification Services outputs, reports, data, files, records, dashboards, match results, consumer-reporting materials, monitoring records, source records, audit logs, transmission records, dispute records, communications, and related documents concerning Richard Kane, Allison Kane, Allison Sucett, Carter Kenneth Riddle, Angelina Marchand, the Kane Policy, or any address associated with Richard Kane, Allison Kane, Allison Sucett, Carter Kenneth Riddle, Angelina Marchand, or the Kane Policy.

20. All documents sufficient to identify the source or sources of any information Explore used to associate Carter Kenneth Riddle or Angelina Marchand with Richard Kane, Allison Kane, Allison Sucett, the Kane Policy, or any address associated with Richard Kane, Allison Kane, Allison Sucett, or the Kane Policy.

21. All documents sufficient to show every field, score, match type, confidence level, source, source date, address field, license or permit indicator, monitoring indicator, other-carrier-monitoring indicator, or output provided to GEICO concerning Carter Kenneth Riddle or Angelina Marchand.

22. All communications between Explore and GEICO concerning Richard Kane, Allison Kane, Allison Sucett, Carter Kenneth Riddle, Angelina Marchand, the Kane Policy, or any Risk Alert or Driver-Identification Services output associated with them.

## VI. RiskAlert Customer Dashboard and Business Reports

23. All versions of the RiskAlert Customer Dashboard, or any equivalent dashboard, made available to GEICO during the Relevant Period.

24. All data, exports, reports, summaries, and analytics underlying or generated from any RiskAlert Customer Dashboard or equivalent dashboard made available to GEICO.

25. All dashboard materials, reports, or data showing average monthly households monitored, annual drivers reported, annual drivers converted, drivers monitored by other carriers, matching volume by match type, conversion rates, conversion metrics by match type, conversion metrics over time, removal rates, suppression rates, re-reporting rates, and state-level metrics for GEICO.

26. All documents concerning estimated premium generated, estimated premium increase, estimated annual return on investment, billed amounts, cost-benefit

6

analyses, profitability analyses, revenue analyses, or financial-performance analyses concerning Driver-Identification Services provided to GEICO.

27. All business reports, performance reports, analytics reports, summaries, presentations, PowerPoints, slideshows, scorecards, benchmarking reports, executive summaries, partnership reports, quarterly business reviews, annual reviews, or evaluations provided to, presented to, or prepared for GEICO.

28. All documents comparing GEICO's Risk Alert, RiskAlert, Driver Discovery, conversion, match, monitoring, premium, ROI, or performance metrics to other carriers, industry averages, benchmarks, historical results, or projected results.

## VII. Matching Algorithms, Model Logic, and Methodology

29. Documents sufficient to describe the matching logic, matching algorithms, model scoring, scoring methods, qualitative match categories, confidence thresholds, source hierarchy, suppression rules, monitoring rules, re-reporting rules, ratability scoring, and GEICO-specific configurations used to generate Driver-Identification Services outputs for GEICO.

30. All documents sufficient to show how Explore classifies or defines match types, including address match, name match, household match, DMV match, model score, confidence score, other-carrier monitoring, activity indicator, and any equivalent category.

31. All documents sufficient to show how Explore determines whether a reported person is a licensed driver, permitted driver, youthful driver, possible household member, undisclosed driver, undisclosed operator, address-associated driver, or otherwise suitable for adding to an insured's policy.

32. All documents sufficient to show changes, updates, version histories, release notes, model revisions, match-rule revisions, dashboard revisions, field additions, field removals, scoring changes, suppression-rule changes, monitoring-rule changes, or methodology changes for Driver-Identification Services used for GEICO during the Relevant Period.

33. All validation studies, testing materials, model-performance reports, quality-control reports, accuracy reports, false-positive analyses, false-negative analyses, sampling analyses, audits, or evaluations concerning the accuracy or reliability of Driver-Identification Services provided to GEICO.

## VIII. Data Quality, Accuracy, and Limitations

34. All documents concerning accuracy rates, false positives, false negatives, address mismatches, stale data, incorrect residence information, lag in DMV reporting, duplicate records, outdated records, known limitations, data-quality issues, or reliability concerns relating to Driver-Identification Services provided to GEICO.

7

35. All documents concerning complaints, disputes, challenges, corrections, reversals, removals, rescissions, suppression requests, or error reports relating to people identified through Driver-Identification Services provided to GEICO.

36. All documents sufficient to show the frequency with which GEICO or its insureds disputed, corrected, removed, reversed, suppressed, or challenged Driver-Identification Services outputs.

37. All documents sufficient to show the frequency with which Explore determined that a GEICO Risk Alert match, output, reported driver, or address association was inaccurate, stale, unverifiable, unsupported, or should not have been reported.

38. All documents concerning any audit, review, analysis, meeting, investigation, or communication involving Explore or GEICO about the accuracy, reliability, or business risk of using Driver-Identification Services to add drivers, increase premiums, change rating variables, or issue notices.

## IX. GEICO-Specific Configuration and Settings

39. All documents concerning GEICO-specific Risk Alert, RiskAlert, Driver Discovery, or Driver-Identification Services settings, including age thresholds, youthful-driver definitions, filtering criteria, permit inclusion, license inclusion, match thresholds, score thresholds, confidence thresholds, state settings, suppression rules, monitoring rules, re-reporting rules, configuration rules, and escalation rules.

40. All documents sufficient to show any GEICO-specific threshold, rule, model score, match type, or configuration that causes a driver to be reported, suppressed, monitored, re-reported, escalated, excluded from reporting, or identified as a potential driver.

41. All documents concerning any changes requested by GEICO, recommended by Explore, or implemented by Explore to GEICO-specific Risk Alert settings, configurations, thresholds, fields, dashboards, reports, match categories, scoring, suppression rules, or monitoring rules.

42. All communications with GEICO concerning GEICO-specific configurations, settings, thresholds, match logic, source selection, state selection, reporting frequency, reporting format, or output fields.

## X. Data Fields, Field Definitions, and System Documentation

43. All data dictionaries, schemas, codebooks, file layouts, field definitions, table definitions, column definitions, dashboards specifications, API specifications, export specifications, transmission specifications, mapping documents, source-to-output mapping documents, and system documentation concerning Driver-Identification Services provided to GEICO.

8

44. All documents sufficient to explain every code, field, value, abbreviation, match type, source identifier, output field, flag, score, category, indicator, or dashboard metric included in Driver-Identification Services outputs provided to GEICO.

45. All documents sufficient to show how Explore maps, transforms, normalizes, cleanses, validates, deduplicates, suppresses, scores, or enriches data before providing outputs to GEICO.

46. All documents sufficient to show the databases, tables, systems, applications, dashboards, platforms, vendors, or data environments used to store, process, analyze, transmit, or display Driver-Identification Services data for GEICO.

## XI. Transmission Logs, Audit Logs, and Retention

47. All documents sufficient to show the method, format, frequency, timing, and content of each file, feed, API call, batch transmission, dashboard update, report, or other transmission of Driver-Identification Services data between Explore and GEICO.

48. All transmission logs, audit logs, access logs, delivery confirmations, receipt confirmations, processing logs, exception logs, error logs, rejection logs, dashboard-access logs, and export logs relating to Driver-Identification Services data provided to or accessed by GEICO.

49. All documents sufficient to identify each GEICO user, role, department, system, or account with access to Driver-Identification Services dashboards, reports, files, APIs, exports, or data.

50. All documents sufficient to show Explore's retention policies, deletion policies, backup policies, archive policies, purge policies, disaster-recovery policies, and litigation-hold procedures for Driver-Identification Services data and GEICO-related outputs.

51. All documents sufficient to show whether and how Explore can restore, recreate, regenerate, export, query, or produce historical Driver-Identification Services outputs provided to GEICO during the Relevant Period.

## XII. FCRA, Consumer Reports, Disputes, and Adverse Action

52. All documents sufficient to show whether any Risk Alert, RiskAlert, Driver Discovery, household-driver-identification, undisclosed-driver, or related output provided by Explore to GEICO is treated by Explore as a consumer report, investigative consumer report, insurance-support-organization report, consumer-reporting-agency output, consumer-file disclosure, or information subject to the Fair Credit Reporting Act or any state analogue.

53. All documents concerning permissible purpose, user certification, consumer-reporting-agency status, insurance-support-organization status, adverse-action

9

notices, file disclosures, consumer disclosures, dispute procedures, reinvestigation procedures, correction notices, deletion notices, suppression procedures, consumer complaints, or consumer-reporting compliance relating to Driver-Identification Services provided to GEICO.

54. All documents sufficient to identify the information Explore maintains in a consumer file for a person identified, matched, reported, monitored, scored, or classified through Driver-Identification Services for GEICO, including source fields, date stamps, source agencies, address-history fields, license or permit indicators, household indicators, match-confidence indicators, and monitoring or activity indicators.

55. All documents concerning whether, when, and how consumers may request file disclosures, consumer reports, reinvestigations, corrections, deletions, suppressions, or explanations of Driver-Identification Services outputs provided to GEICO.

56. All communications with GEICO concerning FCRA compliance, adverse-action notices, consumer disclosures, dispute handling, file disclosures, permissible purpose, certification, user obligations, or GEICO's use of Driver-Identification Services outputs to add drivers, increase premiums, change rating variables, trigger notices, or take underwriting action.

57. All documents concerning any dispute, complaint, correction, deletion, suppression, reinvestigation, or consumer inquiry involving Driver-Identification Services outputs provided to GEICO.

58. All policies, procedures, manuals, training materials, scripts, templates, notices, forms, or standard communications used by Explore to respond to consumers identified in, affected by, or requesting information about Driver-Identification Services outputs provided to insurers.

## XIII. Notices, Negative-Option Processes, and Policy Actions

59. All documents and communications concerning how GEICO uses, has used, may use, or was expected to use Explore outputs to send notices, letters, emails, adverse-action notices, premium notices, underwriting notices, driver-addition notices, driver-removal notices, or requests for information to insureds.

60. All documents concerning any 15-day, negative-option, non-response, silence-as-confirmation, automatic-addition, automatic-rating, or similar process involving Driver-Identification Services outputs provided to GEICO.

61. All documents sufficient to show whether Explore knew, understood, expected, intended, recommended, or was informed that GEICO would add drivers, increase premiums, change rating variables, or alter policies based on Driver-Identification Services outputs if an insured did not respond to a notice.

10

62. All communications with GEICO concerning insured non-response, negative-option notices, automatic driver additions, premium changes, policy changes, cancellation, non-renewal, driver exclusions, driver removals, or consumer complaints arising from Driver-Identification Services outputs.

## XIV. Marketing, Sales, and ROI Materials

63. All marketing, promotional, sales, pitch, proposal, business-development, or renewal materials concerning Driver-Identification Services provided or presented to GEICO.

64. All marketing, promotional, sales, pitch, proposal, business-development, or renewal materials concerning Driver-Identification Services that refer to ROI, premium increase, revenue generation, premium leakage, undisclosed drivers, youthful drivers, household discovery, conversion rates, accuracy claims, match quality, or competitive advantage.

65. All documents concerning revenue projections, ROI claims, premium-generation claims, accuracy claims, conversion claims, or financial benefits represented to GEICO or used to sell, renew, expand, price, or justify Driver-Identification Services for GEICO.

66. All documents concerning any case study, benchmark, success story, pilot result, expansion proposal, account review, or business review involving GEICO's use of Driver-Identification Services.

## XV. Training and Documentation Provided to GEICO

67. All documentation, manuals, user guides, training materials, webinars, slide decks, videos, FAQs, quick-reference guides, onboarding materials, field guides, dashboard guides, or interpretation guides provided to GEICO concerning Driver-Identification Services.

68. All documents concerning how GEICO employees, representatives, vendors, agents, or systems were instructed to interpret match types, scores, confidence levels, source fields, monitoring indicators, dashboard metrics, conversion metrics, or other Driver-Identification Services outputs.

69. All documents concerning training provided to GEICO about data quality, data limitations, FCRA compliance, adverse-action obligations, consumer disputes, dashboard use, output interpretation, or proper use of Driver-Identification Services outputs.

## XVI. Communications with GEICO

70. All non-privileged communications between Explore and GEICO during the Relevant Period concerning Driver-Identification Services, including performance, data quality, match criteria, match logic, GEICO-specific configuration,

11

complaints, disputes, FCRA compliance, adverse action, consumer disclosures, permissible purpose, driver additions, premium changes, conversion metrics, ROI, dashboard reports, field definitions, output fields, changes to methodology, or changes to services.

71. All communications with GEICO concerning the accuracy, reliability, risks, limitations, consumer impact, regulatory compliance, legal compliance, or business impact of using Driver-Identification Services to identify drivers, add drivers, increase premiums, change policy terms, or send insured notices.

72. All communications with GEICO concerning complaints, disputes, regulatory inquiries, litigation, threatened litigation, subpoenas, civil investigative demands, market-conduct examinations, insurance-department inquiries, attorney-general inquiries, or consumer-protection inquiries relating to Driver-Identification Services.

## XVII. Regulatory, Legal, and Compliance Materials

73. All documents concerning any regulatory inquiry, market-conduct examination, insurance-department inquiry, attorney-general inquiry, consumer-protection inquiry, civil investigative demand, subpoena, lawsuit, arbitration, complaint, or threatened claim relating to Driver-Identification Services provided to GEICO or any insurer.

74. All documents concerning legal, compliance, regulatory, FCRA, insurance-law, privacy, data-security, or consumer-protection analyses relating to Driver-Identification Services provided to GEICO.

75. All documents concerning any state-specific restriction, approval, disapproval, limitation, guidance, regulation, statute, rule, bulletin, or legal requirement affecting Explore's provision of Driver-Identification Services to GEICO.

## XVIII. Industry Comparisons and Other Carrier Materials

76. All documents comparing GEICO's Driver-Identification Services performance, conversion rates, match rates, accuracy rates, dispute rates, premium generation, ROI, monitoring results, dashboard metrics, or other performance metrics to other carriers or industry averages.

77. All documents sufficient to show how Explore benchmarks GEICO's Driver-Identification Services use against other insurers.

78. All documents concerning whether GEICO's use of Driver-Identification Services differed from other insurers' use regarding automatic driver additions, negative-option notices, premium increases, match thresholds, source selection, or consumer-dispute handling.

## XIX. Sampling / Structured Export

12

79. Produce a structured export of all GEICO Driver-Identification Services records during the Relevant Period sufficient to show, for each reported or monitored driver: policy/account identifier or anonymized unique policy identifier, state, date reported, date transmitted, reported person identifier or anonymized unique person identifier, address fields, address type, source, source date, license or permit indicator, age or youthful-driver indicator, match type, match score, confidence indicator, monitoring indicator, other-carrier-monitoring indicator, conversion indicator, removal indicator, suppression indicator, dispute indicator, correction indicator, and any premium, ROI, or billing fields maintained by Explore.

## XX. Documents Sufficient to Identify Systems and Custodians

80. Documents sufficient to identify all systems, databases, applications, dashboards, repositories, document-management systems, communication platforms, shared drives, cloud environments, data warehouses, archives, and backup systems likely to have responsive documents or data.

81. Documents sufficient to identify all custodians likely to have responsive documents or communications, including account managers, product managers, data engineers, compliance personnel, legal personnel, sales personnel, analytics personnel, and technical-support personnel responsible for GEICO or Driver-Identification Services.

13