# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.: 6:25-cv-00532-JSS-LHP

ALLISON KANE, individually, as
Personal Representative of the Estate of
Richard Kane, and for all others similarly
situated,

     Plaintiff,

v.

GEICO CASUALTY COMPANY,

     Defendant.

_____/

**RESPONSE AND OBJECTIONS OF NON-PARTY EXPLORE**
**INFORMATION SERVICES, LLC TO SUBPOENA FOR DOCUMENTS**

Non-Party, EXPLORE INFORMATION SERVICES, LLC ("Explore"), by

and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure

45, hereby serves responses and objections to the  Subpoena to Produce Documents,

Information, or Objects or to Permit Inspection of Premises in a Civil Action issued

by Plaintiff, ALLISON KANE ("Plaintiff"), on May 29, 2026,  and amended on June

25, 2026.

**FACTUAL BACKGROUND PERTINENT TO THE CONTEXT OF**
**EXPLORE'S RESPONSES AND OBJECTIONS**

**Explore's Relationship with Defendant GEICO & the RiskAlert® Program**

The Defendant, GEICO Casualty Company, ("GEICO") is a client of Explore.

For over twenty-five years, Explore has offered risk management services to a variety

of clients, including insurance carriers. One such service which Explore offers to carriers, including GEICO, is RiskAlert®.  RiskAlert is the only service at issue in this suit.

RiskAlert is a program designed to provide automobile insurance carriers with early notification of potential undisclosed youthful drivers residing at policy holder addresses.  The category of drivers referred to as "youthful drivers" encompasses two subcategories: a.) new drivers in a household who have recently obtained a learners permit or a full driver's license; or b.) a fully licensed youthful driver who recently changed their driver's license address to reflect an insured's policy address. RiskAlert is a comprehensive and accurate way to detect potential undisclosed drivers and prioritize rate evasion efforts. Carriers have used services akin to RiskAlert for more than forty years to reduce the number of policy holders who do not update their policy information when a new youthful driver is added to the household, (either though inadvertence or intent). Each year, more claims are generated by the youthful driver segment than any other demographic group.  As a result, youthful drivers pose a high risk of loss and therefore generally increase insurance premiums when added to a policy.

In states that make the information available, Explore obtains its driver license data directly from the state agencies responsible for maintaining driver records, such as the Department of Public Safety, (or other similar state agency charged with issuing driver's licenses).

GEICO utilizes the RiskAlert service only in states where the license data is sourced directly from the official agency responsible for maintaining driver records. In the case of Florida, Explore contracts directly with the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") to purchase and receive a monthly electronic file that contains driver's license information on registered drivers in the State. The electronic file includes the address provided by the driver to the FLHSMV. Explore takes the unaltered government data and loads it into a database along with data it receives from GEICO on current policy holders. Explore's system creates an output file of address matches between the FLHSMV driver's license data and GEICO's policy data, containing youthful drivers (aged 21 and under), with driver's license addresses that match current GEICO policy addresses, but who are NOT listed as members of a policy household. This file of potential undisclosed drivers is transmitted to GEICO electronically each month. Explore does not alter or interpret the output.

### Plaintiff's Subpoena to Explore and Conferral Efforts

Explore was served with the Subpoena to Produce Documents ("Records Subpoena") through its Florida registered agent on June 1, 2026. The Records Subpoena contains 81 document requests covering a 7½-year period, grouped into twenty topic areas (the "Requests"). On its face, the Subpoena violates Rule 45(d)(1). The Requests contain lengthy jargon, creating difficulty for Explore to decipher and ascertain the specific documents requested. The initial return date was June 26, 2026, making the Rule 45 14-day objection deadline June 15. Explore retained Lewis

Brisbois during the week of June 9. On June 11, Explore's counsel sought an extension of the objection deadline through the June 26 return date based upon the volume and scope of the Records Subpoena. The same day, Plaintiff's counsel advised that Plaintiff had no objection to the extension request. On June 17, Explore's counsel held a call with Plaintiff's counsel to discuss the Records Subpoena and obtain a general understanding of the case and premise for such voluminous Requests to a non-party. Counsel discussed a number of issues presented by the Subpoena, namely timeframe, the nationwide scope, burden, costs, and proprietary and commercial information sought therein. The parties also discussed whether the location for compliance was appropriate.

On June 23, Explore's counsel requested an additional two-week extension of all deadlines under Rule 45 up through July 10. Plaintiff's counsel agreed to the extension the same day. On June 24, Explore's counsel and Plaintiff's counsel held a substantive conferral conference by telephone, lasting approximately an hour and forty minutes (the "Conferral"). Explore's counsel articulated Explore's position that the requests were voluminous, burdensome, infringed on Explore's commercial business information and that the bulk of the requests fell far outside of the claims in the complaint. However, Explore did agree it would produce reports showing Riddle and Marchand's address matched the Kane policy addresses based on records from FLHSMV. Explore also agreed to produce a redacted contract with the State of Florida to show that it obtains unaltered government data from FLHSMV. Plaintiff's counsel agreed to limit the timeframe of the Records Subpoena to March 26, 2020 (initially

4

January 2019) and to limit the requests specifically to the RiskAlert service provided by Explore. Counsel for Plaintiff then directed the discussion to the twenty roman numeral topic areas ("Topic" or "Topics") in the Records Subpoena. Plaintiff's counsel provided Explore's counsel a general description of materials that Plaintiff was seeking in connection with the twenty topic areas. Explore counsel agreed to discuss those topics with Explore.  Plaintiff's counsel also agreed to re-issue the subpoena with a July 10 return date and to require compliance within the Middle District of Florida. On June 25, Plaintiff issued the revised Records Subpoena and on that same date, Lewis Brisbois accepted service by email.

On June 26, Plaintiff filed a Short Form Discovery Motion seeking to compel GEICO's responses to Requests for Production and Interrogatories. On June 29, the Court entered an order dismissing the operative complaint without prejudice with leave to amend by July 14. On July 2, as a result of an impending amended complaint and based on some overlap of issues contained in the Short Form Discovery Motion, Explore obtained another extension from Plaintiff of all Rule 45 deadlines, remedies and objections, through July 29. On July 20, GEICO filed its response to the Short Form Discovery Motion. Some of the issues in dispute  between GEICO and Plaintiff appear to overlap with issues raised by the Records Subpoena.

**OBJECTIONS TO DEFINITIONS**

Explore objects to Plaintiff's definition of "GEICO," because it extends beyond the Defendant in this case. (Schedule A, No. 2). The definition seeks responses for the named Defendant and, "any GEICO affiliated …. insurance entity" for which Explore

5

provides services.  It is inappropriate for Explore to bear the burden of identifying affiliates of the Defendant and Explore does not have knowledge of the Defendant's, affiliates or the corporate structure of Defendant.   Explore's responses are therefore limited to the Defendant.

Explore objects to Plaintiff's definition of the term "Relevant Period," because it was defined in the re-issued Subpoena (post-conferral) as "January 1, 2019 through the present, unless a request specifies a different period." (Schedule A, No. 12). During the Conferral, Plaintiff limited the timeframe of the Records Subpoena to March 26, 2020 to present.

**OBJECTION TO SCOPE OF ALL REQUESTS**

Explore objects to the Requests on the ground that they seek materials between Explore and GEICO nationwide. Plaintiff is seeking discovery involving RiskAlert for all states in which GEICO contracts with Explore. GEICO has asserted an objection that discovery should be limited to Florida. [ECF No. 61-5,pp. 6-7 of 24; ECF 61-6, pp. 7, 11 of 23]. Explore should not be required to conduct broader discovery parameters than GEICO.

**EXPLORE'S RESPONSES TO THE TWENTY TOPICS & SPECIFIC REQUESTS**

**I.      Agreements and Relationship with GEICO (Requests Nos. 1-4)**

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks agreements between GEICO and Explore in connection with RiskAlert. Explore objects to providing the agreement(s) sought in the conferral based on the below objections. To the extent Plaintiff seeks materials in addition to those discussed during Conferral, Explore also preserves its objections to Request Nos. 1 through 4, on the following grounds:

6

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. There is no legitimate basis for Plaintiff to obtain from a non-party this type of information about its relationship with GEICO. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information. GEICO, the defendant, has not been asked to produce its contract with Explore. In the event the Court overrules any of its objections to this topic or the specific requests, Explore requests that it have the opportunity to redact the confidential, sensitive commercial and proprietary material from the contract.

1.      All contracts, master service agreements, user agreements, license agreements, data-use agreements, permissible-purpose certifications, statements of work, order forms, amendments, addenda, renewals, pricing schedules, service-level agreements, confidentiality agreements, data-security agreements, and related agreements between Explore and GEICO.

2.      All documents sufficient to identify the Explore personnel, GEICO personnel, business units, departments, account managers, technical contacts, compliance contacts, and executive sponsors responsible for Driver-Identification Services provided to GEICO.

3.      All documents sufficient to show when Explore began providing Driver-Identification Services to GEICO, which GEICO entities used or received those

7

services, which states were included, and how the relationship changed during the Relevant Period.

4.      All invoices, billing summaries, pricing schedules, payment records, cost schedules, or revenue summaries concerning amounts charged to, billed to, paid by, or received from GEICO for Driver-Identification Services.

## II.    Data Provided by GEICO to Explore (Requests Nos. 5-8)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks information concerning the exchange of data between GEICO and Explore in connection with RiskAlert. Plaintiff's position is that GEICO has produced spreadsheets identifying certain "data fields" and Plaintiff seeks to compare the data fields to determine whether the data fields Explore provides to GEICO are the same data fields as those contained in the spreadsheets produced by GEICO. Based on Plaintiff's request during Conferral for the identification of the data fields that Explore sends to GEICO, Explore is producing a document it has created identifying the fields of data that GEICO receives in Florida. **EXPLORE_000035**.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Specific Request Nos. 5 through 8, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business

8

relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. There is no legitimate basis for Plaintiff to obtain from a non-party this type of information about its relationship with GEICO. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

5.     All documents and data concerning information provided by GEICO to Explore for Driver-Identification Services, including policyholder data, policy numbers or identifiers, names, addresses, garaging addresses, mailing addresses, household information, driver lists, vehicle information, rating information, state identifiers, filtering parameters, suppression criteria, search criteria, and configuration files.

6.     All file layouts, file specifications, data dictionaries, schemas, field definitions, API specifications, transmission specifications, sample files, test files, validation rules, and mapping documents concerning data provided by GEICO to Explore.

7.     All documents sufficient to show the frequency, format, method, and timing by which GEICO provided data to Explore, including batch transmissions, automated feeds, API calls, secure-file transfers, dashboard uploads, or other data exchanges.

8.      All documents concerning the quality, completeness, accuracy, validation, rejection, correction, suppression, or exclusion of data provided by GEICO to Explore.

## III.    Data Sources Used by Explore (Requests Nos. 9-13)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks information concerning the sources of data utilized by Explore in connection with RiskAlert. Explore agreed to produce its contract with the State of Florida agency from which it purchases data in redacted form (redaction of pricing, commercial terms, and provisions concerning services unrelated to RiskAlert). Plaintiff maintains her position the scope of discovery should be nationwide.  Thus, Explore and Plaintiff have a dispute over the scope of the request (Florida vs. Nationwide). Without disclosing protected business terms between Explore and GEICO, in a further good faith effort to resolve the dispute, Explore states that the only data source GEICO contracts to receive from Explore is data purchased from state government agencies. In response to this Topic, as agreed during Conferral, Explore is producing the Data Exchange and Memorandum of Understanding with FLHSMV.  **EXPLORE_000001-34**.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Specific Request Nos. 9 through 13, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

10

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. There is no legitimate basis for Plaintiff to obtain from a non-party this type of information about its relationship with GEICO. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

9. All documents sufficient to identify each source of data used to generate Driver-Identification Services outputs for GEICO, including state motor vehicle departments, divisions of motor vehicles, equivalent state agencies, commercial vendors, public-record sources, address-history sources, change-of-address sources, credit-header or non-credit-header sources, insurance-support organizations, data aggregators, or downstream data providers.

10. For each data source used to generate Driver-Identification Services outputs for GEICO, documents sufficient to show the fields received, update frequency, date received, date last refreshed, retention period, accuracy controls, known limitations, permissible uses, and whether the source identifies current residence, mailing address, license address, garaging address, prior address, employer address, or another address type.

11. All contracts, data-use agreements, licenses, certifications, restrictions, manuals, specifications, field definitions, and source documentation governing Explore's receipt or use of DMV, state-agency, public-record, address-history, license, permit, or driver data used for GEICO.

12. All documents sufficient to show how Explore determines that a driver resides, may reside, is associated with, may be associated with, is linked to, or may be linked to a GEICO insured's address.

11

13.     All documents concerning lag, staleness, update frequency, incorrect addresses, historical addresses, prior residences, duplicate addresses, DMV address limitations, mailing-address limitations, license-address limitations, or other known limitations in the data sources used for GEICO.

## IV.     Data and Reports Provided by Explore to GEICO (Requests Nos. 14-18)

The parties' positions regarding this Topic mirror those discussed in Topic II and Explore incorporates its Response herein.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 14 through 18, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. There is no legitimate basis for Plaintiff to obtain from a non-party this type of information about its relationship with GEICO. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

12

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

14. All Risk Alert, RiskAlert, Driver Discovery, match, monitoring, driver-identification, consumer-reporting, or related outputs provided by Explore to GEICO during the Relevant Period.

15. All files, datasets, dashboards, reports, flat files, API payloads, batch transmissions, exports, or other electronic data transmitted or made available by Explore to GEICO concerning Driver-Identification Services.

16. All documents sufficient to show each field, code, value, score, match type, flag, indicator, category, source, source date, confidence level, ratability indicator, activity indicator, monitoring indicator, other-carrier-monitoring indicator, conversion indicator, or suppression indicator included in outputs provided by Explore to GEICO.

17. All documents sufficient to show whether Explore gave GEICO recommended action codes, add-driver indicators, monitor indicators, do-not-add indicators, suppression indicators, other-carrier-monitoring indicators, confidence thresholds, match categories, risk categories, or other decision-support fields.

18. All documents concerning how GEICO used or was expected to use Explore outputs to generate letters, emails, notices, underwriting actions, policy notes, adverse-action notices, premium changes, driver additions, driver exclusions, driver removals, renewal changes, rating changes, or other policy changes.

## V. Kane-Specific Materials (Requests Nos. 19-22)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks Kane-specific information and the underlying data associated with Carter Kenneth Riddle ("Riddle") and Angelina Marchand ("Marchand"). After

Conferral, Explore will agree to produce the data for these individuals' address matches to the Kane policy address in the csv form (the form in which it is sent to GEICO) with redaction of the individuals' PII. Based on Explore's review of Requests 19 and 21, this form responds to those requests. **EXPLORE_000071**.

19.    All Driver-Identification Services outputs, reports, data, files, records, dashboards, match results, consumer-reporting materials, monitoring records, source records, audit logs, transmission records, dispute records, communications, and related documents concerning Richard Kane, Allison Kane, Allison Sucett, Carter Kenneth Riddle, Angelina Marchand, the Kane Policy, or any address associated with Richard Kane, Allison Kane, Allison Sucett, Carter Kenneth Riddle, Angelina Marchand, or the Kane Policy.

20.    All documents sufficient to identify the source or sources of any information Explore used to associate Carter Kenneth Riddle or Angelina Marchand with Richard Kane, Allison Kane, Allison Sucett, the Kane Policy, or any address associated with Richard Kane, Allison Kane, Allison Sucett, or the Kane Policy.

**RESPONSE:** *See* Response to Topic III.

21.    All documents sufficient to show every field, score, match type, confidence level, source, source date, address field, license or permit indicator, monitoring indicator, other-carrier-monitoring indicator, or output provided to GEICO concerning Carter Kenneth Riddle or Angelina Marchand.

22.    All communications between Explore and GEICO concerning Richard Kane, Allison Kane, Allison Sucett, Carter Kenneth Riddle, Angelina Marchand, the Kane Policy, or any Risk Alert or Driver-Identification Services output associated with them.

**RESPONSE:** None.

## VI.    **RiskAlert Customer Dashboard and Business Reports (Requests Nos. 23-28)**

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks documents concerning a November 7, 2022 "GEICO Business Update" and "Partnership Snapshot" that references a RiskAlert Customer Dashboard and analytics generated by Explore. Plaintiff surmises that the document demonstrates Explore can readily generate reports, metrics, and other information responsive to these Requests.

Upon consideration after Conferral, Explore responds that the document is a marketing, PowerPoint presentation concerning the RiskAlert service (and other services that were redacted) and *available offerings*. Geico does not utilize the model

score. The purpose of the document is to summarize services that GEICO receives from Explore. There is no "dashboard" accessible to GEICO through Explore. There is a customer service portal accessible to GEICO which is limited to billing and monthly production reporting. The November GEICO Business Update and the RiskAlert Customer Dashboard contain confidential statistics that must be compiled and generated by Explore employees and is not directly accessible by GEICO staff.

Explore will agree to produce the same report produced by GEICO in redacted form (to redact services other than RiskAlert). **EXPLORE_000037-70**. However, Explore objects to producing marketing and confidential commercial business materials related to its relationship with GEICO. Requests for such information should be directed to GEICO, the party contracting for and using the data.

Thus, Explore asserts the following objections to this Topic and additionally preserves its objections to Request Nos. 23 through 27, on the following grounds:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger

15

addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

23.    All versions of the RiskAlert Customer Dashboard, or any equivalent dashboard, made available to GEICO during the Relevant Period.

24.    All data, exports, reports, summaries, and analytics underlying or generated from any RiskAlert Customer Dashboard or equivalent dashboard made available to GEICO.

25.    All dashboard materials, reports, or data showing average monthly households monitored, annual drivers reported, annual drivers converted, drivers monitored by other carriers, matching volume by match type, conversion rates, conversion metrics by match type, conversion metrics over time, removal rates, suppression rates, re-reporting rates, and state-level metrics for GEICO.

26.    All documents concerning estimated premium generated, estimated premium increase, estimated annual return on investment, billed amounts, cost-benefit analyses, profitability analyses, revenue analyses, or financial-performance analyses concerning Driver-Identification Services provided to GEICO.

27.    All business reports, performance reports, analytics reports, summaries, presentations, PowerPoints, slideshows, scorecards, benchmarking reports, executive summaries, partnership reports, quarterly business reviews, annual reviews, or evaluations provided to, presented to, or prepared for GEICO.

28.    All documents comparing GEICO's Risk Alert, RiskAlert, Driver Discovery, conversion, match, monitoring, premium, ROI, or performance metrics to other carriers, industry averages, benchmarks, historical results, or projected results.

**RESPONSE:** None.

**VII.    Matching Algorithms, Model Logic, and Methodology (Requests Nos. 29-33)**

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks information concerning RiskAlert codes, scoring systems, match categories, and other methodology utilized in connection with RiskAlert. Plaintiff

asserted that materials produced by GEICO reference RiskAlert codes such as "X" for "undisclosed youthful driver" and "M" for "may be insured on another policy," and further asserted that the materials identify reporting categories from 1 through 10. Explore responds that it will provide a list identifying the subject of code, i.e., demographic descriptors. **EXPLORE_000035**.

Explore further responds that Explore does not alter or interpret the output.

Thus, Explore asserts the following objections to this Topic and additionally preserves its objections to Request Nos. 29 through 33, on the following grounds:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

29.    Documents sufficient to describe the matching logic, matching algorithms, model scoring, scoring methods, qualitative match categories, confidence thresholds, source hierarchy, suppression rules, monitoring rules, re-reporting rules, ratability scoring, and GEICO-specific configurations used to generate Driver-Identification Services outputs for GEICO.

30.    All documents sufficient to show how Explore classifies or defines match types, including address match, name match, household match, DMV match, model score, confidence score, other-carrier monitoring, activity indicator, and any equivalent category.

31.    All documents sufficient to show how Explore determines whether a reported person is a licensed driver, permitted driver, youthful driver, possible household member, undisclosed driver, undisclosed operator, address-associated driver, or otherwise suitable for adding to an insured's policy.

32.    All documents sufficient to show changes, updates, version histories, release notes, model revisions, match-rule revisions, dashboard revisions, field additions, field removals, scoring changes, suppression-rule changes, monitoring-rule changes, or methodology changes for Driver-Identification Services used for GEICO during the Relevant Period.

33.    All validation studies, testing materials, model-performance reports, quality-control reports, accuracy reports, false-positive analyses, false-negative analyses, sampling analyses, audits, or evaluations concerning the accuracy or reliability of Driver-Identification Services provided to GEICO.

## VIII.  Data Quality, Accuracy, and Limitations (Requests Nos. 34-38)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks documentation from Explore to GEICO that includes a disclaimer about data lag from the DMV or accuracy of the data. Explore responds that it does not alter or interpret the output.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 34-38, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues

notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

34.    All documents concerning accuracy rates, false positives, false negatives, address mismatches, stale data, incorrect residence information, lag in DMV reporting, duplicate records, outdated records, known limitations, data-quality issues, or reliability concerns relating to Driver-Identification Services provided to GEICO.

35.     All documents concerning complaints, disputes, challenges, corrections, reversals, removals, rescissions, suppression requests, or error reports relating to people identified through Driver-Identification Services provided to GEICO.

36.     All documents sufficient to show the frequency with which GEICO or its insureds disputed, corrected, removed, reversed, suppressed, or challenged Driver-Identification Services outputs.

37.     All documents sufficient to show the frequency with which Explore determined that a GEICO Risk Alert match, output, reported driver, or address association was inaccurate, stale, unverifiable, unsupported, or should not have been reported.

38.     All documents concerning any audit, review, analysis, meeting, investigation, or communication involving Explore or GEICO about the accuracy, reliability, or business risk of using Driver-Identification Services to add drivers, increase premiums, change rating variables, or issue notices.

## IX.    GEICO-Specific Configuration and Settings (Requests Nos. 39-42)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks documentation concerning the RiskAlert service, match categories, and how matching works. Plaintiff advised that these Requests are based upon the November 7, 2022 GEICO Business Update/Partnership Snapshot discussed during the conferral.

Upon consideration after Conferral, Explore responds that it will produce a document showing the customer set-up screen for the RiskAlert service specific to GEICO in Florida. **EXPLORE_000036**.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections Request Nos. 39 through 42, Explore objects on the following grounds:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships,

20

products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

39.    All documents concerning GEICO-specific Risk Alert, RiskAlert, Driver Discovery, or Driver-Identification Services settings, including age thresholds, youthful-driver definitions, filtering criteria, permit inclusion, license inclusion, match thresholds, score thresholds, confidence thresholds, state settings, suppression rules, monitoring rules, re-reporting rules, configuration rules, and escalation rules.

40.    All documents sufficient to show any GEICO-specific threshold, rule, model score, match type, or configuration that causes a driver to be reported, suppressed, monitored, re-reported, escalated, excluded from reporting, or identified as a potential driver.

41.    All documents concerning any changes requested by GEICO, recommended by Explore, or implemented by Explore to GEICO-specific Risk Alert settings, configurations, thresholds, fields, dashboards, reports, match categories, scoring, suppression rules, or monitoring rules.

21

42. All communications with GEICO concerning GEICO-specific configurations, settings, thresholds, match logic, source selection, state selection, reporting frequency, reporting format, or output fields.

## X.    Data Fields, Field Definitions, and System Documentation (Requests Nos. 43-46)

The parties' positions regarding this Topic mirror those discussed in Topic II and IV and Explore incorporates is Response herein.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 43 through 46, Explore objects on the following grounds:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

22

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Creation of Documents:** Explore objects to this Request to the extent it requires Explore to create new documents, reports, summaries, compilations, analyses, or datasets to explain its business practices, that do not exist in the ordinary course of its business.

43.     All data dictionaries, schemas, codebooks, file layouts, field definitions, table definitions, column definitions, dashboards specifications, API specifications, export specifications, transmission specifications, mapping documents, source-to-output mapping documents, and system documentation concerning Driver-Identification Services provided to GEICO.

44.     All documents sufficient to explain every code, field, value, abbreviation, match type, source identifier, output field, flag, score, category, indicator, or dashboard metric included in Driver-Identification Services outputs provided to GEICO.

45.     All documents sufficient to show how Explore maps, transforms, normalizes, cleanses, validates, deduplicates, suppresses, scores, or enriches data before providing outputs to GEICO.

46.     All documents sufficient to show the databases, tables, systems, applications, dashboards, platforms, vendors, or data environments used to store, process, analyze, transmit, or display Driver-Identification Services data for GEICO.

## XI.    Transmission Logs, Audit Logs, and Retention (Requests Nos. 47-51)

The parties' positions regarding this Topic mirror those discussed in Topic IX. Explore incorporates its Response.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 47 through 51, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust

enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Creation of Documents:** Explore objects to this Request to the extent it requires Explore to create new documents, reports, summaries, compilations, analyses, or datasets to explain its business practices, that do not exist in the ordinary course of its business.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

24

47.     All documents sufficient to show the method, format, frequency, timing, and content of each file, feed, API call, batch transmission, dashboard update, report, or other transmission of Driver-Identification Services data between Explore and GEICO.

48.     All transmission logs, audit logs, access logs, delivery confirmations, receipt confirmations, processing logs, exception logs, error logs, rejection logs, dashboard-access logs, and export logs relating to Driver-Identification Services data provided to or accessed by GEICO.

49.     All documents sufficient to identify each GEICO user, role, department, system, or account with access to Driver-Identification Services dashboards, reports, files, APIs, exports, or data.

50.     All documents sufficient to show Explore's retention policies, deletion policies, backup policies, archive policies, purge policies, disaster-recovery policies, and litigation-hold procedures for Driver-Identification Services data and GEICO-related outputs.

**RESPONSE:** Explore additionally objects to this request for "litigation-hold procedures" as attorney-client privileged and protected work product.

51.     All documents sufficient to show whether and how Explore can restore, recreate, regenerate, export, query, or produce historical Driver-Identification Services outputs provided to GEICO during the Relevant Period.

## XII.  FCRA, Consumer Reports, Disputes, and Adverse Action (Requests Nos. 52-58)

During Conferral, Plaintiff advised these requests would not be pursued at this time. To the extent Plaintiff seeks materials at a later date, and to preserve its objections to Request Nos. 52 through 58, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

25

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Privilege:** Explore objects to this request to the extent it encompasses attorney-client privilege and protected work product based upon the references to "disputes" and "adverse actions."

52.     All documents sufficient to show whether any Risk Alert, RiskAlert, Driver Discovery, household-driver-identification, undisclosed-driver, or related output provided by Explore to GEICO is treated by Explore as a consumer report, investigative consumer report, insurance-support-organization report, consumer-reporting-agency output, consumer-file disclosure, or information subject to the Fair Credit Reporting Act or any state analogue.

53.     All documents concerning permissible purpose, user certification, consumer-reporting-agency status, insurance-support-organization status, adverse-action notices, file disclosures, consumer disclosures, dispute procedures, reinvestigation procedures, correction notices, deletion notices, suppression procedures, consumer complaints, or consumer-reporting compliance relating to Driver-Identification Services provided to GEICO.

54.     All documents sufficient to identify the information Explore maintains in a consumer file for a person identified, matched, reported, monitored, scored, or classified through Driver-Identification Services for GEICO, including source fields, date stamps, source agencies, address-history fields, license or permit indicators, household indicators, match-confidence indicators, and monitoring or activity indicators.

55.     All documents concerning whether, when, and how consumers may request file disclosures, consumer reports, reinvestigations, corrections, deletions,

26

suppressions, or explanations of Driver-Identification Services outputs provided to GEICO.

56.    All communications with GEICO concerning FCRA compliance, adverse-action notices, consumer disclosures, dispute handling, file disclosures, permissible purpose, certification, user obligations, or GEICO's use of Driver-Identification Services outputs to add drivers, increase premiums, change rating variables, trigger notices, or take underwriting action.

57.    All documents concerning any dispute, complaint, correction, deletion, suppression, reinvestigation, or consumer inquiry involving Driver-Identification Services outputs provided to GEICO.

58.    All policies, procedures, manuals, training materials, scripts, templates, notices, forms, or standard communications used by Explore to respond to consumers identified in, affected by, or requesting information about Driver-Identification Services outputs provided to insurers.

## XIII.   Notices, Negative-Option Processes, and Policy Actions (Requests Nos. 59-62)

59.    All documents and communications concerning how GEICO uses, has used, may use, or was expected to use Explore outputs to send notices, letters, emails, adverse-action notices, premium notices, underwriting notices, driver-addition notices, driver-removal notices, or requests for information to insureds.

**RESPONSE:** None.

60.    All documents concerning any 15-day, negative-option, non-response, silence-as-confirmation, automatic-addition, automatic-rating, or similar process involving Driver-Identification Services outputs provided to GEICO.

**RESPONSE:** None.

61.    All documents sufficient to show whether Explore knew, understood, expected, intended, recommended, or was informed that GEICO would add drivers, increase premiums, change rating variables, or alter policies based on Driver-Identification Services outputs if an insured did not respond to a notice.

**RESPONSE:** None.

62.    All communications with GEICO concerning insured non-response, negative-option notices, automatic driver additions, premium changes, policy

27

changes, cancellation, non-renewal, driver exclusions, driver removals, or consumer complaints arising from Driver-Identification Services outputs.

**RESPONSE:** None.

## XIV.  Marketing, Sales, and ROI Materials (Requests Nos. 63-66)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff is seeking the same type of documents in Section VI above. Explore incorporates its Response to Section VI herein.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 63 through 66, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this

28

litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

63. All marketing, promotional, sales, pitch, proposal, business-development, or renewal materials concerning Driver-Identification Services provided or presented to GEICO.

64. All marketing, promotional, sales, pitch, proposal, business-development, or renewal materials concerning Driver-Identification Services that refer to ROI, premium increase, revenue generation, premium leakage, undisclosed drivers, youthful drivers, household discovery, conversion rates, accuracy claims, match quality, or competitive advantage.

65. All documents concerning revenue projections, ROI claims, premium-generation claims, accuracy claims, conversion claims, or financial benefits represented to GEICO or used to sell, renew, expand, price, or justify Driver-Identification Services for GEICO.

66. All documents concerning any case study, benchmark, success story, pilot result, expansion proposal, account review, or business review involving GEICO's use of Driver-Identification Services.

## XV. Training and Documentation Provided to GEICO (Requests Nos. 67-69)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks onboarding and training materials provided to GEICO concerning RiskAlert. Explore responds that it does not provide training to GEICO.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 67 through 69, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

67.    All documentation, manuals, user guides, training materials, webinars, slide decks, videos, FAQs, quick-reference guides, onboarding materials, field guides, dashboard guides, or interpretation guides provided to GEICO concerning Driver-Identification Services.

68.    All documents concerning how GEICO employees, representatives, vendors, agents, or systems were instructed to interpret match types, scores, confidence levels, source fields, monitoring indicators, dashboard metrics, conversion metrics, or other Driver-Identification Services outputs.

69.    All documents concerning training provided to GEICO about data quality, data limitations, FCRA compliance, adverse-action obligations, consumer disputes, dashboard use, output interpretation, or proper use of Driver-Identification Services outputs.

## XVI. Communications with GEICO (Requests Nos. 70-72)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks communications between Explore and GEICO concerning RiskAlert. Explore objects to this Topic request on the grounds set forth below.

In a good faith attempt to respond to the request in a manner narrowly tailored to this case, Explore responds that there are no communications with GEICO about the Marchand and Riddle matches to the Kane addresses.

30

Explore objects on the following grounds and additionally preserves its objections to Request Nos. 70 through 72:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

70.	All non-privileged communications between Explore and GEICO during the Relevant Period concerning Driver-Identification Services, including performance, data quality, match criteria, match logic, GEICO-specific configuration, complaints, disputes, FCRA compliance, adverse action, consumer disclosures, permissible purpose, driver additions, premium changes, conversion metrics, ROI, dashboard reports, field definitions, output fields, changes to methodology, or changes to services.

71.	All communications with GEICO concerning the accuracy, reliability, risks, limitations, consumer impact, regulatory compliance, legal compliance, or business impact of using Driver-Identification Services to identify drivers, add drivers, increase premiums, change policy terms, or send insured notices.

72.	All communications with GEICO concerning complaints, disputes, regulatory inquiries, litigation, threatened litigation, subpoenas, civil investigative demands, market-conduct examinations, insurance-department inquiries, attorney-general inquiries, or consumer-protection inquiries relating to Driver-Identification Services.

## XVII. Regulatory, Legal, and Compliance Materials (Requests Nos. 73-75)

During Conferral, Plaintiff advised these requests would not be pursued at this time. However, in a good faith response to eliminate potential discovery disputes, the specific responses to the Requests under this Topic are "none."

73.	All documents concerning any regulatory inquiry, market-conduct examination, insurance-department inquiry, attorney-general inquiry, consumer-protection inquiry, civil investigative demand, subpoena, lawsuit, arbitration, complaint, or threatened claim relating to Driver-Identification Services provided to GEICO or any insurer.

**RESPONSE:** None.

74.	All documents concerning legal, compliance, regulatory, FCRA, insurance-law, privacy, data-security, or consumer-protection analyses relating to Driver-Identification Services provided to GEICO.

**RESPONSE:** None.

32

75.    All documents concerning any state-specific restriction, approval, disapproval, limitation, guidance, regulation, statute, rule, bulletin, or legal requirement affecting Explore's provision of Driver-Identification Services to GEICO.

**RESPONSE:** None.

## XVIII.    Industry Comparisons and Other Carrier Materials (Requests Nos. 76-78)

During the Conferral, Plaintiff advised that in connection with this Topic, Plaintiff seeks industry comparison materials that Explore to provides to GEICO or that are made available to GEICO through any dashboard system. Explore responds that there are no such documents.

76.    All documents comparing GEICO's Driver-Identification Services performance, conversion rates, match rates, accuracy rates, dispute rates, premium generation, ROI, monitoring results, dashboard metrics, or other performance metrics to other carriers or industry averages.

**RESPONSE:** None.

77.    All documents sufficient to show how Explore benchmarks GEICO's Driver-Identification Services use against other insurers.

**RESPONSE:** None.

78.    All documents concerning whether GEICO's use of Driver-Identification Services differed from other insurers' use regarding automatic driver additions, negative-option notices, premium increases, match thresholds, source selection, or consumer-dispute handling.

**RESPONSE:** None.

## XIX.  Sampling / Structured Export (Requests No. 79)

The parties' positions regarding this Topic mirror those discussed in Topic II and IV above.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request No. 79, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach

33

of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**FLHSMV Confidentiality:** Pursuant to Explore's Data Exchange and Memorandum of Understanding with FLHSMV (produced in response to Topic III), Explore is prohibited from sharing information received from FLHSMV (MOU §§ IV.B.2, IV.B.4, IV.B.15, and V.A.) under appliable federal and state law.

**Personal Identifying Information:** The requests seek personal identifying information ("PII") of GEICO policy holders that is in the possession of Explore by virtue of Explore's business relationship with GEICO.

**Available from a More Convenient and Less Burdensome Source:** Explore objects because the materials Explore received from GEICO in the course of their business activities are in the possession, custody or control of GEICO, a party to this litigation. To avoid duplication, undue burden and expense to a non-party, this discovery request should be directed to GEICO.

**Unduly Burdensome:** Explore objects to the burdensome nature of the request and has served simultaneously herewith, the Declaration of Tom Eggenberger addressing the burdensome nature of the requests on Explore to collect, review, redact (including for PII) and produce materials.

34

**Creation of Documents:** Explore objects to this Request to the extent it requires Explore to create new documents, reports, summaries, compilations, analyses, or datasets to explain its business practices, that do not exist in the ordinary course of its business.

79.    Produce a structured export of all GEICO Driver-Identification Services records during the Relevant Period sufficient to show, for each reported or monitored driver: policy/account identifier or anonymized unique policy identifier, state, date reported, date transmitted, reported person identifier or anonymized unique person identifier, address fields, address type, source, source date, license or permit indicator, age or youthful-driver indicator, match type, match score, confidence indicator, monitoring indicator, other-carrier-monitoring indicator, conversion indicator, removal indicator, suppression indicator, dispute indicator, correction indicator, and any premium, ROI, or billing fields maintained by Explore.

## XX. Documents Sufficient to Identify Systems and Custodians (Requests Nos.80-81)

During the Conferral, Plaintiff advised that he is not pursuing the Requests contained within this Topic at this time.

To the extent Plaintiff seeks materials in addition to those discussed during Conferral, and to preserve its objections to Request Nos. 80 and 81, Explore objects as follows:

**Relevance:** Explore objects to this Request because it seeks information that is not relevant to any claim or defense in this action and is not proportional to the needs of the case. The Second Amended Complaint asserts claims against GEICO for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. These claims stem from Plaintiff's relationship with GEICO as an insured based on a policy issued by GEICO and the manner in which GEICO issues notifications to its insureds regarding potentially undisclosed youthful drivers, adds drivers to policies, and adjusts premiums under the policy. Plaintiff challenges GEICO's conduct, not Explore's business operations, pricing, customer relationships, products or services. Accordingly, information concerning Explore's commercial relationship with GEICO bears no relationship to the facts underlying the claims.

**Confidential and Sensitive Commercial, Trade Secret and Proprietary Information:** Explore further objects to this Request because it seeks information concerning its products, services, methodologies, transactions and business relationships. Explore competes with other companies that provide competing services to customers, including insurance carriers.

35

Also, information about Explore's relationship with GEICO, the services provided, and the terms under which those services are offered, constitutes confidential sensitive commercial and proprietary information that Explore protects from the public domain. There is no legitimate basis for Plaintiff to obtain from a non-party this type of information about its relationship with GEICO. The contract between GEICO and Explore contains a confidentiality clause and restricts use of the information.

**Creation of Documents:** Explore objects to this Request to the extent it requires Explore to create new documents, reports, summaries, compilations, analyses, or datasets to explain its business practices, that do not exist in the ordinary course of its business.

80.    Documents sufficient to identify all systems, databases, applications, dashboards, repositories, document-management systems, communication platforms, shared drives, cloud environments, data warehouses, archives, and backup systems likely to have responsive documents or data.

81.    Documents sufficient to identify all custodians likely to have responsive documents or communications, including account managers, product managers, data engineers, compliance personnel, legal personnel, sales personnel, analytics personnel, and technical-support personnel responsible for GEICO or Driver-Identification Services.

Dated: July 29, 2026                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By: */s/ Stacy M. Schwartz*
       Kenneth J. Joyce (FBN 986488)
       Ken.Joyce@lewisbrisbois.com
       kimberly.hill@lewisbrisbois.com
       Stacy M. Schwartz (FBN 520411)
       Stacy.Schwartz@lewisbrisbois.com
       ftlemaildesig@lewisbrisbois.com
       110 SE 6th Street, Suite 2600
       Fort Lauderdale, FL 33301
       Tel:     954.728.1280
       Fax:     954.678.4090

       *Attorneys for Non-Party Explore Information Services, LLC*

36

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of July, 2026, a true and correct copy of the Response and Objections of Non-Party Explore Information Services, LLC to Subpoena for Documents was served on the following:

Jesse B. Rochman
Martin L. Daesch
OnderLaw, LLC
110 E. Lockwood
Suite 2nd Floor
St. Louis, MO 63119
rochman@onderlaw.com
daesch@onderllaw.com

*Counsel for Plaintiff, Allison Kane*

Harvey W. Gurland, Jr.
Elisabeth Rabin
Duane Morris, LLP
201 S Biscayne Blvd Ste 3400
Miami, FL 33131-2318
hwgurland@duanemorris.com
erabin@duanemorris.com

*Counsel for Defendant Geico Casualty
Company*

Rachel Nicole Dapeer
Dapeer Law, P.A.
520 South Dixie Hwy., Suite 240
Hallandale Beach, FL 33009
rachel@dapeer.com

*Counsel for Plaintiff, Allison Kane*

/s/ *Stacy M. Schwartz*
Stacy M. Schwartz

37